1
2  RODERICK C. BOND, WSBA NO. 32172
3  RODERICK BOND LAW OFFICE, PLLC
4  601 108th Ave. NE, Suite 1900
5  Bellevue, WA  98004
6  Telephone: (425) 591-6903
7  Fax: (425) 321-0343
8  Email: rod@roderickbond.com
9  Attorney for Plaintiff Dale L. Miesen

10              UNITED STATES DISTRICT COURT
11              EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc.; | CASE NO.: 2:18-cv-270 **COMPLAINT** DEMAND FOR JURY TRIAL |
| Plaintiff, | |
| v. | |
| JOHN D. MUNDING and JANE DOE MUNDING, married individuals and the community property comprised thereof; JOHN OR JANE DOES I-III, unknown individuals; MUNDING, P.S., a Washington Professional Services Corporation; CRUMB & MUNDING, P.S., a Washington Professional Services Corporation; AIA SERVICES CORPORATION, an Idaho corporation and a nominal defendant; AIA INSURANCE, INC.; an Idaho corporation and a nominal defendant; | |
| Defendants. | |

**COMPLAINT - i**

1
2

# **TABLE OF CONTENTS**

I.   STATEMENT OF JURISDICTION ................................................................1

II.  STATEMENT OF VENUE.........................................................................1

III. PARTIES AND DEFINITIONS OF THE PARTIES .....................................1

IV.  STATEMENT OF FACTS .........................................................................5

V.   COMPLIANCE WITH FED. R. CIV. P. 23.1 ...........................................26

VI.  COUNT I—BREACHES OF FIDUCIARY DUTIES.................................28

VII. COUNT II—LEGAL MALPRACTICE ......................................................33

VIII. COUNT III—VIOLATIONS OF CONSUMER PROTECTION ACT ........34

IX.  COUNT IV—DECLARATORY JUDGMENT.............................................36

X.   JURY DEMAND........................................................................................37

XI.  PRAYER FOR RELIEF .............................................................................37

VERIFICATION OF DALE L. MIESEN ...............................................................39

3
4
5
6
7
8
9
10
11
12
13
14
15

**COMPLAINT - ii**

Plaintiff Dale L. Miesen alleges cumulatively, or when necessary and where applicable in the alternative, against the defendants as follows:

## I.    STATEMENT OF JURISDICTION

**1.**    This Court has diversity jurisdiction over the subject matter of this lawsuit under 28 U.S.C. § 1332(a)(1) because the amount in controversy presently exceeds $1,000,000 and this action is between citizens of different states.

**2.**    This Court has personal jurisdiction because the Defendants are citizens and residents of Spokane County, Washington and the Defendants engage(d) in the practice of law in Spokane County, Washington.

## II.    STATEMENT OF VENUE

**3.**    Venue is proper in the Eastern District of Washington under 28 U.S.C. § 1391(b)(2) & (c) because a substantial part of the acts, errors and omissions giving rise to the claims asserted in this Complaint occurred in, and the Defendants are citizens and residents of, Spokane County, Washington.

## III.    PARTIES AND DEFINITIONS OF THE PARTIES

**4.**    Plaintiff Dale L. Miesen (hereinafter referred to as "Plaintiff") is an individual, a resident of Tarrant County, Texas, and thus a citizen of the state of Texas. Plaintiff is, and has been, a common shareholder of AIA Services Corporation (hereinafter referred to as "AIA Services") during all relevant times and specifically at the time of the transactions, acts, omissions, malfeasance, and damages at issue in this lawsuit.

**COMPLAINT - 1**

**5.**    Defendant John D. Munding is an individual, the husband of Jane Doe Munding, a resident of Spokane County, Washington and thus a citizen of the state of Washington. All acts and omissions of John D. Munding were committed with the intent to benefit the community of John D. Munding and Jane Doe Munding.

**6.**    During all relevant times, the defendant John D. Munding was an attorney practicing law in Washington, an experienced bankruptcy attorney and an experienced bankruptcy trustee; thus, Mr. Munding had extensive knowledge of fiduciary duties, improper/unlawful acts and improper/unlawful agreements or transactions. Yet, the defendant John D. Munding, the lead attorney representing AIA, intentionally breached his fiduciary duties owed to AIA, including, without limitation, as described in part in this Complaint.

**7.**    Upon information and belief, defendant Jane Doe Munding is an individual, the wife of John D. Munding, a resident of Spokane County, Washington, and thus a citizen of the state of Washington.

**8.**    Defendant Munding, P.S., is a citizen of the state of Washington because it is a Washington corporation and its principal place of business is in Spokane County, Washington. Upon information and belief, defendant John D. Munding is a shareholder of the defendant Munding, P.S.

**9.**    Defendant Crumb & Munding, P.S. is a citizen of the state of Washington because it is a Washington corporation and its principal place of

**COMPLAINT - 2**

business is in Spokane County, Washington. Upon information and belief, John D. Munding is a shareholder of defendant Crumb & Munding, P.S. and thus personally liable for any acts, omissions or damages caused by defendant Crumb & Munding, P.S. because defendant Crumb & Munding, P.S. has been administratively dissolved.

10.     Defendants John or Jane Does I-III may be individuals, attorneys practicing law in the state of Washington, residents of Spokane County Washington, and thus citizens of the state of Washington. Defendants John or Jane Does I-III may be attorneys who, along with John D. Munding, also provided legal services and/or represented AIA Services and AIA Insurance on behalf of the defendants Munding, P.S. and/or Crumb & Munding, P.S. Plaintiff anticipates ascertaining the identities of John or Jane Does I-III (if they exist) in discovery.

11.     John D. Munding and John and Jane Does I-III provided the bulk of the representation and legal services which is the subject of this lawsuit from their offices in Spokane County, Washington. All acts and omissions of defendants John D. Munding and John or Jane Does I-III were also done on behalf of Munding, P.S. and Crumb & Munding, P.S. in the course of a valid agency relationship, and thus those entities are also liable for all damages, relief and attorneys' fees.

12.     Plaintiff will refer to John D. Munding, Jane Doe Munding, Munding, P.S., Crumb & Munding, P.S., and John or Jane Does I-III collectively herein as the "Defendants".

**COMPLAINT - 3**

**13.**    Defendant AIA Services Corporation (referred to herein as "<u>AIA Services</u>") is a citizen of the state of Idaho because it is an Idaho corporation and its principal place of business is in Lewiston, Idaho.

**14.**    Defendant AIA Insurance, Inc. (referred to herein as "<u>AIA Insurance</u>") is a citizen of Idaho because it is an Idaho corporation and its principal place of business is in Lewiston, Idaho. During all relevant times, AIA Insurance has been a wholly-owned subsidiary of AIA Services.

**15.**    AIA Services and AIA Insurance are also nominal defendants (rather than nominal plaintiffs as would normally be the case) in this lawsuit because the purported management of AIA Services and AIA Insurance (who are not properly elected or lawfully acting in any event) are antagonistic to the interests of AIA Services and AIA Insurance.

**16.**    AIA Services and AIA Insurance are also collectively referred to herein as "<u>AIA</u>". The definition of "<u>AIA</u>" includes AIA Services and AIA Insurance, or either of those corporations, for purposes of pleading in the alternative, and also includes the Plaintiff to the extent he is required to support any cause of action and/or any of the relief requested in this Complaint.

**17.**    Plaintiff is bringing this derivative action as a common shareholder and on behalf of AIA Services. In addition, Plaintiff is bringing this action as a double derivative action on behalf of AIA Insurance, which is a wholly-owned subsidiary

**COMPLAINT - 4**

of AIA Services.

18.    Plaintiff's assertions as to AIA's boards of directors and/or officers in this Complaint are not intended to be admissions or acknowledgements that such boards of directors and officers were able to take any action, that such boards of directors or officers were properly seated and elected, or that the necessary quorum was present for any AIA board meeting or resolution, and, indeed, Plaintiff asserts that such was not the case during all relevant times (which Defendants knew or should have known by exercising even the slightest due care).

## IV.    <u>STATEMENT OF FACTS</u>

19.    During all relevant times, Plaintiff owned 45,000 common shares in AIA Services and owned another 13,656 common shares that he held for the benefit of his children (after a 3 to 1 stock split in 1995, i.e., the shares issued to Plaintiff were originally 1/3 less), which cumulatively made the Plaintiff the second largest common shareholder of AIA Services. Plaintiff traded a book of business worth approximately $500,000 for his common shares in AIA Services. Plaintiff has owned his common shares for well over twenty years and during all relevant times necessary for the claims and relief requested in this lawsuit. Plaintiff has never received a single monetary dividend or any other compensation for any of these 58,656 shares.

20.    The ownership of AIA Services is divided among three different types of shares: **(a)** the Series A Preferred Shares (which have a face value of $10 per

**COMPLAINT - 5**

share, plus accrued interest, and payment priority over the Series C Shares and common shares); **(b)** the Series C Preferred Shares (which have a face value of $10 per share, plus accrued dividends, and payment priority over the common shares); and **(c)** the common shares. AIA Services owns all of the outstanding common shares of its subsidiary AIA Insurance.

21.    During the relevant times that the Defendants have represented and provided legal services to AIA (which is ongoing), AIA's board of directors were purportedly comprised of Connie Taylor Henderson (referred to herein as "Henderson"), James Beck (referred to herein as "Beck") and/or R. John Taylor (referred to herein as "John Taylor"). While the Plaintiff is not conceding that they were properly elected as directors of AIA (they were not) or the boards of AIA was properly seated (they were not), the foregoing parties were all interested directors in that they had an ownership interest in CropUSA Insurance Agency, Inc. (referred hereinafter as "CropUSA Agency"), among other conflicts of interest (including those set forth in this Complaint).

22.    During the time that the Defendants have represented and provided legal services to AIA (which is ongoing), there were 41,651.25 validly issued and outstanding Series A Preferred Shares in AIA Services with a value of $416,512.50, plus accrued prejudgment interest since May 30, 2008, which are held by non-party Donna J. Taylor (referred to herein as "Donna Taylor"). These Series A Preferred

**COMPLAINT - 6**

Shares were required to be redeemed in full no later than December 2, 2003, but all 41,651.25 shares remain outstanding to this day. John Taylor has purportedly recently issued himself 7,500 Series A Preferred Shares, but all such shares were unlawfully issued to him. In any event, Donna Taylor remains the largest and controlling Series A Preferred Shareholder to this day (assuming that the Series A Preferred Shares that John Taylor issued to himself were validly issued).

23.    During the time that the Defendants have represented and provided legal services to AIA (which is ongoing), the Defendants knew, or should have known by exercising even the slightest due care, that the Series A Preferred Shareholder, Donna Taylor, was entitled to appoint a director to the board of directors of AIA Services, but that her appointments have not been honored.

24.    During the time that the Defendants have represented and provided legal services to AIA (which is ongoing), the Defendants should have ensured that Donna Taylor's appointment was honored to ensure that the board of directors of AIA Services was properly seated. Thus, AIA Services' board was never properly seated and there was never a quorum because Donna Taylor's appointee was never provided notice of, or allowed to participate in, any board meetings (which would include for the appointment of any purported officers).

25.    During the time that the Defendants have represented and provided legal services to AIA (which is ongoing), there were at least 92,500 validly issued

**COMPLAINT - 7**

and outstanding Series C Preferred Shares in AIA Services with a value of $925,000, plus accrued and unpaid dividends in excess of $1,800,000, which are held by the AIA Services Corporation 401(k) Profit Sharing Plan.

26.    During the time that the Defendants have represented and provided legal services to AIA (which is ongoing), the Series C Preferred Shareholders were entitled to appoint a director to the board of directors of AIA Services, but no such director was ever appointed. Thus, AIA Services' board was never properly seated and there was never a quorum because the Series C Preferred Shareholders' appointee was never allowed to participate in any board meetings.

27.    Despite having not met the financial obligations owed to the Series A and Series C Preferred Shareholders and the lack of proper corporate governance (including the failure to hold shareholder meetings for AIA Services or make full disclosure to AIA's disinterested shareholders), the non-parties John Taylor, Beck, Connie Henderson, JoLee Duclos (referred to herein as "Duclos"), Michael Cashman (referred to herein as "Cashman") and/or other non-parties obtained a $5 million line-of-credit for non-parties CropUSA Agency and CropUSA Insurance Services, LLC (referred to herein as "CropUSA Services") from a lender, GemCap Lending I, LLC (referred to herein as "GemCap") and had AIA unlawfully guarantee a limited portion of that loan without obtaining the required consent from AIA's disinterested shareholders and Donna Taylor (consents that would have never been

**COMPLAINT - 8**

provided because AIA got nothing for the guarantees). John Taylor also guaranteed the entire line-of-credit. This "hard money" line-of-credit carried with GemCap an interest rate of 18.5% per annum and a default interest rate of 24% per annum.

28.    Over time, the $5 million line-of-credit with GemCap was subsequently increased on more than one occasion to ultimately be $10 million, and AIA's guarantee was also unlawfully increased to the entire amount of the indebtedness (even though AIA was not entitled to borrow or use any of the loan proceeds); again, without obtaining the required consent from AIA's disinterested shareholders and Donna Taylor (consents that would have never been provided because AIA received nothing for the guarantees). In addition, John Taylor reaffirmed his guarantee of the entire amount of the $10 million line-of-credit. However, AIA's guarantees were never properly authorized, and the guarantees violated applicable provisions of AIA's articles of incorporation and bylaws; AIA's guarantees were unlawful, and Defendants were fully aware that AIA's guarantees were unauthorized and unlawful.

29.    Later, GemCap filed suit against AIA, CropUSA Agency, CropUSA Services, John Taylor and other non-parties with respect to the $10 million line-of-credit ("Lawsuit"). GemCap asserted claims against AIA for the unlawful guarantees.

30.    Rather than insist upon AIA having their own independent counsel, the Defendants appeared as counsel and purportedly represented AIA and the other

**COMPLAINT - 9**

defendants in the Lawsuit (although John Taylor later retained his own counsel shortly before trial based on admitted and obvious conflicts of interest). Despite John Taylor having retained his own counsel in the Lawsuit based on his conflicts of interest, upon information and belief, the Defendants continued to take directions in the Lawsuit from John Taylor relative to AIA and they did not withdraw from representing AIA as required or take appropriate action to protect AIA's interests, even though John Taylor's conflicts of interest were even more serious and irreconcilable as to any decision he might make for AIA in the Lawsuit.

31.    After appearing as counsel for AIA in the Lawsuit, the Defendants were specifically advised that AIA's guarantees were unauthorized and unlawful because they, *inter alia*, violated AIA's amended articles of incorporation and bylaws, and thus any settlement would be unauthorized and unlawful for the same reasons. Despite having such knowledge and upon information and belief, the Defendants failed to take any action to extricate AIA from any liability under the guarantees.

32.    Upon information and belief, on the first day of trial in the Lawsuit and despite having full knowledge that AIA was unable to lawfully enter into to any settlement that obligated AIA to pay anything (*see, e.g.,* Paragraphs 49-51 below), the Defendants improperly and unlawfully advised AIA to enter into an initial settlement of the Lawsuit and represented AIA when that occurred, which such settlement was later completed and formalized in a final written agreement months

**COMPLAINT - 10**

later (individually or collectively referred to herein as the "Settlement Agreement"). The Settlement Agreement was purportedly signed by John Taylor on behalf of AIA, even though: **(a)** John Taylor had conflicts of interest that prevented him from entering into the Settlement Agreement (including for the reasons stated in this Complaint); **(b)** John Taylor failed to disclose the terms of the Settlement Agreement to, or obtain consent from, AIA's disinterested constituents or shareholders (including Donna Taylor); and **(c)** and the Defendants also failed to insist the necessary consents be obtained from AIA's shareholders prior to advising AIA to enter into the Settlement Agreement (of course, no reasonably informed disinterested shareholder of AIA would have voted for, or approved, AIA's entry into the Settlement Agreement).

33.    Defendants advice for AIA to enter into the Settlement Agreement, *inter alia*, impermissibly and unlawfully obligated AIA to pay over $12,000,000 to GemCap. Defendants' acts and omissions were, *inter alia*, a violation of the Defendants' fiduciary duties of loyalty owed to AIA. The Plaintiff only discovered the existence and terms of the Settlement Agreement when it was filed in another lawsuit. To this day, during the Defendants representation and legal services provided to AIA, the Defendants have failed to ensure, nor has John Taylor or anyone else ensured, that full disclosure of the Settlement Agreement and all of the terms of the Settlement Agreement be been made to AIA, their disinterested

**COMPLAINT - 11**

shareholders, and that the required consents were obtained to authorize the Settlement Agreement (i.e., from AIA Services' shareholders and Donna Taylor).

34.    After some of AIA Services' innocent minority shareholders were able to learn of the existence of, and the terms of, the Settlement Agreement because it was filed in a different lawsuit, another shareholder, Donna Taylor, sought to intervene in the Lawsuit to have the Settlement Agreement set aside. Instead of supporting Donna Taylor's intervention (as would any reasonable and honest attorney truly representing the interests of AIA), the Defendants opposed her intervention and thereby, once again, placed the Defendants' interests in earning fees and the interests of their other clients, including CropUSA Agency and CropUSA Services (along with John Taylor's interests), above the interests of AIA.

35.    As a result of AIA's improper and unlawful entry into the Settlement Agreement, the Defendants permitted, and stipulated to, the entry of judgments against AIA in excess of $12,000,000 (which included millions of dollars in so-called penalties, interest and attorneys' fees); Defendants' acts and omissions were, *inter alia*, a violation of the Defendants' fiduciary duties of loyalty owed to AIA.

36.    As a result of AIA's entry into the improper and unlawful Settlement Agreement, AIA unlawfully transferred its interest in the real property where its corporate headquarters had been located to GemCap. The value of AIA's headquarters was estimated to exceed $7,000,000. As a result of the Settlement

**COMPLAINT - 12**

Agreement, AIA's headquarters was later sold for a reduced amount and the net funds were paid to GemCap and others thereby damaging AIA; Defendants' acts and omissions were, *inter alia*, a violation of their fiduciary duties of loyalty to AIA.

**37.**    The Lawsuit is still pending, and the Defendants have never withdrawn from representing AIA (including for any subsequent appeal(s)). The Defendants have improperly represented AIA in other hearings and proceedings after the Settlement Agreement was purportedly executed, including, without limitation, by failing to take action to recover the entire net proceeds for the sale of AIA's headquarters. To this day and even though the Defendants still represent AIA in the Lawsuit, the Defendants have failed to take any action to extricate AIA from the guarantees or the Settlement Agreement in violation of their fiduciary duties (including the duty of loyalty) and other duties owed to AIA.

**38.**    During the time that the Defendants represented and provided legal services to AIA, the Defendants knew, or should have known by exercising even the slightest due care, that the Plaintiff and Donna Taylor had already sued CropUSA Agency (along with other non-parties named in this Complaint, including John Taylor) derivatively on behalf of AIA for: **(a)** having unlawfully transferred millions of dollars of funds, assets and trade secrets from, and belonging to, AIA; **(b)** having unlawfully taken CropUSA Agency from AIA, by and through the actions of John Taylor, Beck, Duclos, Michael Cashman, Sr., and other non-parties; and **(c)** seeking

**COMPLAINT - 13**

1  to recover such assets and other damages from CropUSA Agency, John Taylor,

2  Beck, Cashman, and other non-parties.

3      **39.**   During the time that the Defendants have represented and provided

4  legal services to AIA (which is ongoing), the Defendants were aware, or should have

5  been aware by exercising even the slightest due care, that CropUSA Agency, John

6  Taylor, Beck, Henderson, Duclos and other non-parties (including Michael

7  Cashman, Sr.) had been accused by other shareholders and in other lawsuits of

8  misappropriating millions of dollars of AIA's funds and assets, and unlawfully

9  having AIA guarantee other loans for CropUSA Agency (and, indeed, stealing

10  CropUSA Agency from AIA). Defendants knew, or should have known by

11  exercising even the slightest due care, that AIA was being operated unlawfully,

12  including as to AIA's retention and continued use of the Defendants as counsel for

13  AIA in the Lawsuit, when AIA's interests were materially adverse other defendants.

14      **40.**   During the time that the Defendants represented and provided legal

15  services to AIA (which is ongoing), the Defendants knew, or should have known by

16  exercising even the slightest due care, that John Taylor, Henderson and Beck had

17  purportedly executed two board resolutions for the guarantees as purported directors

18  for AIA even though the guarantees violated AIA's articles of incorporation and

19  bylaws and when the guarantees were not in the best interest of AIA (and that the

20  boards were never properly seated). Thus, the Defendants knew, or should have

**COMPLAINT - 14**

known by exercising even the slightest due care, that AIA should be asserting defenses to void any obligations under the guarantees and to assert claims against John Taylor, Henderson and Beck in the Lawsuit, and that the execution of the two board resolutions, alone, created conflicts of interest that prevented them from being involved in making any decision on behalf of AIA relative to the Lawsuit (including retaining or keeping the Defendants as counsel for AIA) or relative to the subsequent Settlement Agreement. The Defendants knew, or should have known by exercising even the slightest due care, that the facts and conflicts of interest set forth in this Paragraph alone warranted AIA retaining separate and independent counsel for the Lawsuit and to refuse to have AIA enter into the Settlement Agreement.

41.     In addition to other conflicts of interest set forth in this Complaint, during the time that the Defendants represented and provided legal services to AIA (which is ongoing), the Defendants also knew, or should have known by exercising even the slightest due care, that John Taylor had other conflicts of interest that prevented him from being involved in making any decisions on behalf of AIA relative to the Lawsuit (including retaining or keeping the Defendants as counsel for AIA) or the subsequent Settlement Agreement because, *inter alia*: **(a)** John Taylor was simultaneously serving as the Presidents of AIA and CropUSA Agency,  while also simultaneously serving as the governing person of CropUSA Services and other entities that were defendants in the Lawsuit; **(b)** John Taylor was a shareholder of

**COMPLAINT - 15**

AIA Services and CropUSA Agency, and a part owner of CropUSA Services and other entities that were defendants in the Lawsuit; **(c)** John Taylor had personally guaranteed the entire $10 million loan and he was acting in his self-interests, including to have AIA be bound by the Settlement Agreement and to have judgments entered against AIA when AIA's articles of incorporation and bylaws barred AIA from doing so, and to allow John Taylor to defer entry of any judgment against him; **(d)** John Taylor was not ensuring that the board of AIA Services was properly seated, including honoring the appointment of a board member by the Series A Preferred Shareholder Donna Taylor, thereby resulting in all purported board action being null and void; **(e)** John Taylor did not seek to extricate AIA from any liability under the guarantees when AIA should have had no obligation under the guarantees whatsoever or the Settlement Agreement; **(f)** John Taylor was being sued in multiple lawsuits for millions of dollars in corporate malfeasance occurring at AIA and the improper corporate governance of AIA; **(g)** John Taylor was also serving as the Trustee of the AIA Services 401(k) Plan, which held 92,500 Series C Preferred Shares in AIA Services, and that John Taylor was not proceeding in a manner to protect the 401(k) Plan or to properly discharge his fiduciary duties as the trustee under ERISA (the 401(k) Plan's interests was to prevent AIA from having any liability under guarantees or the Settlement Agreement); and **(h)** John Taylor had a long and documented history of <u>not</u> looking after the best interests of AIA.

**COMPLAINT - 16**

**42.**    In addition to other conflicts of interest set forth in this Complaint, during the time that the Defendants represented and provided legal services to AIA (which is ongoing), the Defendants also knew, or should have known by exercising even the slightest due care, that Henderson and Beck had conflicts of interest that prevented them from being involved in making any decisions on behalf of AIA relative to the Lawsuit (including retaining or keeping the Defendants as counsel for AIA) or the subsequent Settlement Agreement because, *inter alia*: **(a)** Henderson and Beck were shareholders in CropUSA Agency (and Henderson was also a shareholder of AIA Services); **(b)** Henderson and Beck were being sued in at least two other lawsuits for millions of dollars in corporate malfeasance occurring at AIA and the improper corporate governance of AIA; **(c)** Henderson and Beck were not ensuring that the board of AIA Services was properly seated, including honoring the board member appointed by the Series A Preferred Shareholder Donna Taylor (Ex. A, Section 4.2.8), thereby resulting in all purported board action being null and void; **(d)** Henderson and Beck, as purported directors of AIA Services, had control over the appointment of John Taylor as trustee of the AIA Services 401(k) Plan and they knew that John Taylor was not properly discharging his fiduciary duties as trustee or as a director or officer of AIA; and **(e)** Henderson and Beck had a long and documented history of <u>not</u> looking after the best interests of AIA.

///

**COMPLAINT - 17**

**43.**    During the time that the Defendants represented and provided legal services to AIA (which is ongoing), the Defendants also knew, or should have known by exercising even the slightest due care, that Duclos had conflicts of interest that prevented her from being involved in making any decisions on behalf of AIA relative to the Lawsuit (including retaining or keeping the Defendants as counsel for AIA) or the subsequent Settlement Agreement because, *inter alia*: **(a)** Duclos was a shareholder of CropUSA Agency; **(b)** Duclos simultaneously served as an officers of AIA, CropUSA Services and other entities partially owned by John Taylor; **(c)** Duclos has been sued in at least two other lawsuits for millions of dollars in corporate malfeasance occurring at AIA and improper corporate governance of AIA; **(d)** Duclos served as John Taylor's "lieutenant" and she had intimate knowledge of the extensive corporate malfeasance that had been inflicted upon AIA; and **(e)** Duclos had a long and documented history of <u>not</u> looking after the best interests of AIA.

**44.**    During the time that the Defendants represented and provided legal services to AIA, the Defendants also knew, or should have known by exercising even the slightest due care, that any other non-parties (including Bryan Freeman or Aimee Gordon) also had conflicts of interest that prevented them from being involved in making any decision on behalf of AIA relative to the Lawsuit (including retaining or keeping the Defendants as counsel for AIA) or the subsequent Settlement Agreement because, *inter alia*: **(a)** such non-parties (including Freeman

**COMPLAINT - 18**

and Gordon) were officers, directors or employees of CropUSA Agency and AIA; **(b)** such non-parties (including Freeman and Gordon) had intimate knowledge of the extensive corporate malfeasance that had been inflicted upon AIA and the improper corporate governance of AIA; and **(c)** such non-parties (including Freeman and Gordon) had a long history of <u>not</u> looking after the best interests of AIA.

45.    Despite the other conflicts of interest set forth in this Complaint or proven at or before trial, the Defendants failed to ethically and properly represent AIA in the Lawsuit and failed to seek the required disinterested consent from AIA's shareholders for any of their representation, actions taken in this Lawsuit and AIA's subsequent entry into the subsequent Settlement Agreement (again, a consent that the Defendants knew would never be provided by a disinterested and fully information shareholder of AIA, let alone the Series A Shareholder Donna Taylor).

46.    Upon information and belief, during the time that the Defendants have represented and provided legal services to AIA (which is ongoing), the Defendants failed to disclose the conflicts of interest that prevented them from representing AIA and the conflicts of interest that prevented them from advising AIA to enter into the Settlement Agreement; such conflicts of interest were irreconcilable and unwaivable under the circumstances, including for the reasons described in this Complaint.

47.    Upon information and belief, during the time that the Defendants have represented and provided legal services to AIA (which is ongoing) and based on the

**COMPLAINT - 19**

conflicts of interest of John Taylor, Beck, Henderson, Duclos and other non-parties relative to the management of AIA, the Defendants further failed to obtain proper consent from disinterested constituents of AIA for their representation (assuming a conflict waiver was even permissible and not unreasonable under the circumstances, which neither would have been permissible under the circumstances) or allowing them to advise AIA to enter into the Settlement Agreement.

48.     During the time that the Defendants have represented and provided legal services to AIA (which is ongoing), there were restrictions regarding the operation and corporate governance under AIA Services' amended articles of incorporation (a true and correct copy of applicable provisions is attached as ***Exhibit A***, which is incorporated by reference herein) and Restated Bylaws (a true and correct copy is attached as ***Exhibit B***, which is incorporated by reference herein) that barred certain transactions or actions from occurring at AIA; Defendants knew, or should have known through exercising even the slightest due care, of such restrictions. Even if the Defendants were not aware of such restrictions when the first began representing AIA, they were advised of them by Plaintiff's counsel after they began representing and providing legal services to AIA; yet the Defendants ignored and intentionally violated such restrictions in their representation of AIA.

49.     For example, under the definitions and restrictions set forth under Section 4.2.9 of AIA Services' amended articles of incorporation (Ex. A, p. 5-10),

**COMPLAINT - 20**

AIA Services and its subsidiary AIA Insurance were barred from, *inter alia*: **(a)** guaranteeing, assuming or remaining liable for any "Indebtedness" under the guarantees for CropUSA Agency and CropUSA Services and the subsequent Settlement Agreement because none of the permitted exceptions are present, i.e., AIA could not guarantee CropUSA Agency and CropUSA Services' line-of-credit with GemCap because CropUSA Agency and CropUSA Services were not wholly owned subsidiaries of AIA nor could AIA incur an over $12,000,000 indebtedness (Ex. A, Section 4.2.9(c)); **(b)** entering into the Settlement Agreement was separately barred because it required AIA to transfer its interest in its headquarters to GemCap, which was a sale of a material part of AIA's business (the headquarters was by far AIA's largest asset and generated substantial rental income) (Ex. A, Section 4.2.9(e)); **(c)** entering into the guarantees and Settlement Agreement because they constituted impermissible transactions with shareholders and affiliates since the terms were unfavorable to AIA (no reasonable officer or director of AIA would have entered into the guarantees or Settlement Agreement under the terms of those instruments) (Ex. A, Section 4.2.9(g)); **(d)** entering into the guarantees and Settlement Agreement because they resulted in AIA Services' consolidated net worth being less than the over $416,000 owed to Donna Taylor for her Series A Preferred Shares (Ex. A, Section 4.2.9(h)); **(e)** entering into the guarantees and the Settlement Agreement because they resulted in AIA Services' ratio of "Consolidated

**COMPLAINT - 21**

Long Term Debt" to "Consolidated Net Worth" to exceed a ratio of 3.6 to 1.0 (Ex. A, Section 4.2.9(j)); and **(f)** entering into the guarantees or the Settlement Agreement because they caused the ratio of "Debt Service Coverage" for AIA to be less than .8 to 1.0 (Ex. A, Section 4.2.9 (k)).  Donna Taylor, the Series A Preferred Shareholder, also never consented to any of the foregoing violations nor did AIA's shareholders.

50.     By way of another example, under the restrictions of AIA Services' Restated Bylaws (Ex. B), AIA Services was barred from, *inter alia*: **(a)** entering into the guarantees and the Settlement Agreement because it violated the "Director Conflict of Interest" provision because John Taylor, Henderson, Beck were interested and conflicted directors (as described in detail in this Complaint) and no disinterested directors, nor a disinterested committee on the board, approved the guarantees or Settlement Agreement and the guarantees and Settlement Agreement were never submitted to, or approved by, AIA Services' common shareholders (Ex. B, Section 4.14); and **(b)** there is no way that the guarantees and Settlement Agreement were reasonably expected to benefit AIA Services since it was not able to draw on the loan and received no benefit from becoming indebted to over $12,000,00 under the Settlement Agreement and having to transfer its corporate headquarters (assuming that the board of directors did not have conflicts and were properly seated and approved the guarantees and the Settlement Agreement, i.e., Donna Taylor's board designee was seated and the board was properly elected after

**COMPLAINT - 22**

proper shareholder vote and assuming that no other restrictions under the bylaws or articles of incorporation barred them) (Ex. B, Section 14.1).

51.    During the time that the Defendants have represented and provided legal services to AIA Insurance (which is ongoing), there were also restrictions regarding the operation and corporate governance under AIA Insurance's applicable articles of incorporation and Bylaws like those set forth in Paragraph 50, and Defendants knew, or should have known through exercising even the slightest due care, of such restrictions. Even if the Defendants were not aware of such restrictions when they first began representing AIA Insurance, they were advised of them after they began representing and providing legal services to AIA Insurance; yet the Defendants ignored and intentionally violated such restrictions in their representation of AIA Insurance.

52.    During the time that the Defendants have represented and provided legal services to AIA (which is ongoing) and despite demands by Plaintiff and other AIA Services' shareholders, AIA Services has failed to hold any shareholder meetings or seek shareholder approval for any decision or transaction (including for the Settlement Agreement or any purported representation agreement or conflict of interest waiver pertaining to the Defendants) and Defendants knew, or should have known through exercising even the slightest due care, that no shareholder meetings had been held for AIA Services and no proper consent was ever obtained. Indeed,

**COMPLAINT - 23**

the Defendants had been advised prior to the execution of the Settlement Agreement that proper shareholder consent had not been obtained and would not be given (including the required consent from Donna Taylor, the Series A Preferred Shareholder).

**53.**    Based on the conflicts of interest of John Taylor, Beck, Henderson and other non-parties as set forth in this Complaint, the Defendants have never made any disclosure whatsoever to AIA and the knowledge held by those parties may <u>not</u> be imputed upon AIA. *E.g.,* ***Martin Marietta Corp. v. Gould, Inc.***, 70 F.3d 768, 774 (4th Cir. 1995); ***Ray v. Karris***, 780 F.2d 636, 641-642 (7th Cir. 1985). In other words, Plaintiff and AIA have yet to discover the specific facts and claims pertaining to the specific documents, agreements, and communications involving the Defendants' representation and legal services provided to AIA in the Lawsuit and for entry into the Settlement Agreement or for any actions taken thereafter.

**54.**    In short, the Defendants cannot point to a single action taken by them to truly benefit AIA in the Lawsuit or for the entry into the Settlement Agreement; they simply improperly represented AIA to generate fees and disregarded the applicable Rules of Professional Conduct, the restrictions under AIA's articles of incorporation and bylaws, and their fiduciary duties owed to AIA. Rather than independently and ethically represent AIA in the Lawsuit, the Defendants purported to represent AIA and other defendants with interests materially adverse to AIA and

**COMPLAINT - 24**

advised AIA to enter into a Settlement Agreement obligating AIA to pay over $12,000,000 and to transfer its multi-million-dollar interest in its corporate headquarters, which were separately illegal and ultra-vires acts and in clear violation of the Defendants' fiduciary duties of loyalty owed to AIA, thereby causing millions of dollars of damages to AIA.

55.    After conducting discovery and obtaining information from the Defendants (including representation agreements, purported conflict waivers (if any), communications, billing records, and other relevant documents, Plaintiff anticipates discovering additional facts to support such other claims such as fraud, aiding and abetting non-parties in the breaches of their fiduciary duties, etc., which will enable Plaintiff to amend this Complaint and assert such new facts and claims.

56.    One of Plaintiff's expert witnesses for this lawsuit will be Professor Richard T. McDermott, who is also an experienced practitioner and an author (including an author of a corporate law casebook used at a number of law schools). Indeed, Division One of the Washington Court of Appeals recently held that Professor McDermott was "eminently qualified to testify as an expert" in Washington. *Taylor v. Bell*, 185 Wn. App. 270, 287, 340 P.3d 951, 960 (2014), *review denied*, 183 Wn.2d 1012, 352 P.3d 188 (2015). Professor McDermott will testify that, *inter alia*, there is no doubt that the Defendants breached their fiduciary duties of loyalty owed to AIA (among breaches of other duties and violations of

**COMPLAINT - 25**

applicable Rules of Professional Conduct) relative to the facts in this Complaint.

**57.**    While Plaintiff is presently seeking to have the Settlement Agreement to be set aside (nothing herein shall be an admission that the guarantees or Settlement Agreement are valid and enforceable) and recover damages against GemCap, John Taylor, Beck, and Henderson in a different lawsuit (the Plaintiff offered to stipulate to the Plaintiff brining his claims in this lawsuit in that other lawsuit, but the Defendants never responded), this lawsuit will nevertheless be necessary because the net amounts recovered from the other lawsuit, if any, will be diminished by attorneys' fees and costs, and AIA would likely never be made whole (Plaintiff is also separately seeking to obtain disgorgement all of the fees and costs paid to the Defendants, as well as other distinct relief).

**58.**    Despite requests by the Plaintiff to enter into a tolling agreement to prevent the filing of this lawsuit at this time, the Defendants refused to do so. Nevertheless, the Defendants continue to represent AIA in the Lawsuit thereby continuing to toll all applicable statutes of limitations.

## V.    COMPLIANCE WITH FED. R. CIV. P. 23.1

**59.**    As stated above, Plaintiff has been a common shareholder of AIA Services during all relevant times for the claims and relief asserted in this Complaint.

**60.**    Plaintiff made two separate written derivative demands upon the boards of directors of AIA Services and AIA Insurance. The purported boards of directors

**COMPLAINT - 26**

of AIA Services and AIA Insurance did not respond within 90 days to the first written demand and later belatedly responded stating in general and vague terms that AIA was allegedly not willing to pursue legal action against the Defendants, even though AIA's boards of directors were not properly seated or elected.

61.    AIA's boards of directors never requested any further information in response to Plaintiff's two written derivative demands, and the boards of directors separately had the conflicts of interest set forth in the Complaint and other conflicts that prevented them from even considering Plaintiff's derivative demands. However, it was not surprising that AIA refused to take action since John Taylor purports to be the President and sole director of AIA Services and AIA Insurance and he would never take any action that could implicate himself or the Defendants because he purported to retain them, and keep them, as counsel for AIA to benefit his self-interests, including obligating AIA to pay over $12,000,000 for a loan that he personally guaranteed.

62.    Over ninety days have elapsed since the written derivative demands set forth above were made to the boards of directors of AIA, no action has been taken by AIA whatsoever, and all of Plaintiff's claims and requested relief asserted in this lawsuit flow from those derivative demands.

63.    As the second largest common shareholder of AIA Services (who traded a book of insurance business worth approximately $500,000 to AIA Services

**COMPLAINT - 27**

in exchange for his common shares), the Plaintiff fairly represents the interest of AIA and their innocent shareholders (including the preferred shareholders, 401(k) Plan shareholders, and former ESOP shareholders) and lawful creditors (to the extent that AIA have any bona fide creditors that have not been paid). Plaintiff has never received a return on his investment in AIA Services. Plaintiff is not pursuing this lawsuit in a collusive manner in order to obtain jurisdiction where it does not otherwise exist, but instead to only pursue *bona fide* claims on behalf of, for the benefit of, AIA and ultimately their innocent shareholders. At this time, AIA's major and only assets are claims in lawsuits, including this lawsuit.

64.     Plaintiff is pursuing this derivative action in an effort to help make AIA whole and recover the millions of dollars in damages inflicted upon them by the Defendants. Upon obtaining judgment in this lawsuit and the other lawsuit, the funds will allow AIA to continue to operate as a going concern or, alternatively, to be dissolved with the funds used to pay lawful creditors and the remaining funds to be distributed to the Series A Preferred Shareholder, the Series C Preferred Shareholders and then to the common shareholders (likely the latter).

## VI.     COUNT I—BREACHES OF FIDUCIARY DUTIES

65.     Plaintiff re-alleges and incorporates by reference herein each and every allegation asserted elsewhere in this Complaint to the extent necessary to support this cause of action.

**COMPLAINT - 28**

**66.**    As attorneys for AIA, the Defendants owed fiduciary duties to AIA (including the undivided duties of loyalty, trust, honesty and to speak) to properly and loyally represent AIA or not represent AIA at all. Defendants also owed duties and obligations to properly comply with, and make all necessary disclosures required by, the Rules of Professional Conduct and their duties to speak.

**67.**    Defendants had conflicts of interest when they undertook to represent AIA, CropUSA Agency, CropUSA Services, John Taylor and other non-parties in the Lawsuit, and when they improperly proceeded in the manner directed by John Taylor, thereby improperly representing the interests of John Taylor and other non-parties, instead of proceeding solely in the best interests of AIA, which would have been to, *inter alia*, prevent AIA from being liable for the unlawful guarantees and prevent AIA from signing or being liable under the terms of the Settlement Agreement because all of those instruments were never properly authorized by AIA or its disinterested constituents (and separately violated AIA's articles of incorporation and bylaws).

**68.**    Defendants were never retained to represent AIA by authorized, disinterested and unconflicted officers and directors of AIA. The Defendants placed their self-interests in earning fees ahead of, and in direct conflict with, AIA's interests in having loyal, undivided and unconflicted representation. The Defendants allowed the self-interests of CropUSA Agency, CropUSA Services, John Taylor and

**COMPLAINT - 29**

other non-parties to be placed above AIA's interests during the representation and for the entry into the Settlement Agreement (and thereafter).

**69.** As a result of the Defendants the acts and/or omissions set forth in this Complaint and/or those facts proven at or before the time of trial, the Defendants have breached their fiduciary duties owed to AIA (including, without limitation, their undivided duties of loyalty, obedience, care, good faith, trust, confidence and duty to speak owed to AIA) and/or engaging in collusive acts and behavior against AIA. The Defendants have also breached their fiduciary duties by concealing facts from AIA and their shareholders in violation of their duties to speak. Many of the Defendants' breaches of their fiduciary duties owed to AIA were intentional.

**70.** For example, the Defendants have also breached their fiduciary duties and violated the Rules of Professional Conduct (which also constitute breaches of fiduciary duties as a matter of law), including, without limitation the Washington Rules of Professional Conduct 1.1, 1.2, 1.3, 1.7, 1.9, 1.13, 1.14 and 1.16, when they, *inter alia*: **(a)** simultaneously represented AIA, CropUSA Agency, CropUSA Services and other non-parties in the Lawsuit (including for the Settlement Agreement) and when the representation of AIA was materially adverse to the representation of the Defendants' other clients because AIA should not have been liable under the guarantees or the Settlement Agreement; **(b)** failed to proceed in the best interests of AIA, i.e., to take all action or steps to ensure that AIA was not

**COMPLAINT - 30**

obligated under the guarantees or the Settlement Agreement, when AIA's interests were materially adverse to the Defendants' other clients and John Taylor; **(c)** failed to provide full disclosure and obtain informed consent to represent AIA, and continued representing AIA, without authorization or direction from authorized, unconflicted and disinterred constituents of AIA; **(d)** placed their interests in retaining AIA as clients and keeping them as clients solely to earn significant attorneys' fees above the interests of AIA in being loyally, properly and ethically represented in the Lawsuit; **(e)** prepared and/or entered into Agreements and/or waivers that were not in the best interest of AIA and without making full disclosure to AIA or obtaining consent from disinterested and unconflicted constituents of AIA; **(f)** engaged in representation and advised AIA to enter into the Settlement Agreement when it was not in AIA's best interests and in violation of AIA's articles of incorporation and bylaws; **(g)** continued representing AIA and taking directions from John Taylor in the Lawsuit when John Taylor had conflicts of interest that disqualified him from making any decisions for AIA and even after John Taylor admitted that he had conflicts of interest that required him to retain independent counsel; **(h)** failed to withdraw from representing AIA rather than allow AIA to enter into, and be bound by the terms of, the Settlement Agreement; **(i)** simultaneously represented AIA, CropUSA Agency, CropUSA Services and other non-parties when the Defendants should have been asserting claims against those parties and John

**COMPLAINT - 31**

Taylor, Beck and Henderson for having signed the board resolutions purporting to authorize AIA to enter into the guarantees for the line-of-credit; **(j)** at a minimum, failed to treat AIA as a diminished client since John Taylor's conflicts of interest and tortious conduct against AIA prevented him or any of the other non-parties (they had conflicts, too) from making any litigation decisions for AIA or even permitting the Defendants to represent AIA; **(k)** failed to terminate or withdraw as counsel for AIA when the Defendants knew that the guarantees and Settlement Agreement violated AIA's articles of incorporation, bylaws and various sections of Idaho Code; **(l)** failed to terminate or withdraw as counsel for AIA rather than allow AIA to enter into the Settlement Agreement, which was a fraud upon AIA and its innocent shareholders (nothing has yet been disclosed to AIA based on the John Taylor's conflicts of interest); **(m)** entered into an unreasonable limited scope of representation of AIA (assuming that the Defendants limited their scope of representation of AIA in some fashion) and, of so, such limited scope of representation was unreasonable under the circumstances; **(n)** failed to diligently and competently represent AIA and communicate with, and make full disclosure to, AIA (including disinterested constituents of AIA); **(o)** advised AIA to enter the Settlement Agreement when that Agreement unlawfully assigned legal malpractice claims and unlawfully purported to prevent AIA from filing bankruptcy; and **(p)** engaged in other acts and omissions described or contemplated in this Complaint or

**COMPLAINT - 32**

which may be presented at or before the time of trial.

71.     As a direct and/or proximate cause of the Defendants' breaches of their fiduciary duties (or a substantial factor thereof), AIA has been damaged in the amount to be proven at or before trial, including, without limitation, that the Defendants be required to disgorge all compensation and consideration received from, or on behalf of, AIA because they are faithless fiduciaries.

## VII.    COUNT II—LEGAL MALPRACTICE

72.     Plaintiff re-alleges and incorporates by reference herein each and every allegation asserted elsewhere in this Complaint to the extent necessary to support this cause of action.

73.     The Defendants owed duties to AIA (including, without limitation, duties of care and good faith), and the Defendants breached those duties by, *inter alia*, representing AIA in the Lawsuit and for entry into the Settlement Agreement, along with the representation and legal services provided in connection with, or related to, the Lawsuit and Settlement Agreement.

74.     The Defendants have breached their duties of care and good faith owed to AIA, including, without limitation, the breached duties attributable to the acts and omissions described in this Complaint, concealing facts from AIA and their shareholders, and the acts and omissions proven at or before the time of trial. The Defendants have further breached their duties owed to AIA by improperly

**COMPLAINT - 33**

simultaneously representing AIA, CropUSA Agency, CropUSA Services and other non-parties and when the Defendants advised and permitted AIA to enter into the Settlement Agreement that later led to the transfer of AIA's interest in its headquarters.

75.    AIA has suffered damages as a direct, foreseeable and/or proximate result of the breaches of duties and the acts of the Defendants, including, without limitation, those acts described in this Complaint and/or proven at the time of trial. At a minimum, the Defendants were also a substantial factor in the harm and damages inflicted upon AIA. Had the Defendants properly discharged their duties, AIA would never have been liable under the guarantees or be bound or potentially liable under the Settlement Agreement nor would AIA have transferred its multi-million-dollar interest in its headquarters.

76.    As a direct and/or proximate cause of the Defendants' acts and/or omissions, the Defendants are liable to AIA for damages in the amount to be proven at or before the time of trial.

## VIII.    COUNT III—VIOLATIONS OF CONSUMER PROTECTION ACT

77.    Plaintiff re-alleges and incorporates by reference herein each and every allegation asserted elsewhere in this Complaint to the extent necessary to support this cause of action.

///

**COMPLAINT - 34**

**78.**    During all relevant times, the Defendants engaged in the trade and profession of practicing law in Spokane County, Washington.

**79.**    Defendants engaged in unfair and deceptive acts or practices in the entrepreneurial aspects of the practice of law in their dealings with AIA.

**80.**    The Defendants unfair or deceptive acts or practices include those acts and/or omissions described in the Complaint and specifically that the Defendants, *inter alia*: **(a)** failed to disclose and concealed conflicts of interest from AIA in order to initially obtain AIA as clients; **(b)** failed to disclose and concealed conflicts of interest from AIA in order to retain AIA as clients; **(c)** continued representing AIA (despite having irreconcilable conflicts of interest and concealing those conflicts of interest from AIA and its disinterested constituents) in order to retain AIA as clients to earn fees and costs; **(d)** allowed AIA to enter into the Settlement Agreement (despite having irreconcilable conflicts of interest and while concealing those conflicts of interest) in order to retain AIA as clients to earn fees and costs; and **(e)** allowed John Taylor, CropUSA Agency and CropUSA Services to place their interests above AIA's interests by allowing AIA to enter into the Settlement Agreement in order to retain AIA as clients to earn fees and sweep under the carpet the claims asserted in this Complaint. The foregoing acts, along with other acts in this Complaint and other acts that Plaintiff may submit at or before trial (including acts that may be learned through discovery), were unfair and deceptive acts and

**COMPLAINT - 35**

practices in the entrepreneurial aspects of practicing law in violation of RCW 19.86.020, *et seq*.

**81.**    As a direct and/or proximate cause of the Defendants' unfair or deceptive trade practices, AIA Services and AIA Insurance have been damaged in the amount to be proven at or before trial, including, without limitation, treble damages and an aware of attorneys' fees as provided under RCW 19.86.090.

## IX.    COUNT IV—DECLARATORY JUDGMENT

**82.**    Plaintiff re-alleges and incorporates by reference herein each and every allegation asserted elsewhere in this Complaint to the extent necessary to support this cause of action.

**83.**    The Defendants have violated numerous duties and Rules of Professional Conduct (including Washington Rules of Professional Conduct 1.1, 1.2, 1.3, 1.7, 1.9, 1.13, 1.14 and 1.16). As a result, Plaintiff seeks a declaratory judgment against Defendants, including, without limitation, for the following relief: **(a)** declaring void or unenforceable any purported representation/fee agreements, conflict waivers, limited scopes of representation, common interest or joint defense agreements, any other agreement relating to Defendants and AIA, and voiding any sums that the Defendants may claim is owed by AIA; and **(b)** such other declaratory relief as may be requested at or before trial, any declaratory relief related to any other acts and/or omissions described in, or contemplated by, this Complaint (including

**COMPLAINT - 36**

setting aside any agreements or conflict waivers for being ultra-vires and illegal), and any declaratory relief based on any facts which may be learned in discovery.

## X.    JURY DEMAND

**1.**    Plaintiff, through the signature of his attorney below, hereby respectfully demands a trial by jury of no less than the maximum number of jurors permitted on all causes of action for which a jury trial is allowed by law.

## XI.    PRAYER FOR RELIEF

Wherefore, Plaintiff prays for the following relief:

**1.**    For a judgment against the Defendants, jointly and severally, for all damages in an amount to be proven at or before trial, including, without limitation, consequential damages, incidental damages, lost profits, and all other damages, plus prejudgment interest;

**2.**    For a judgment or order requiring the Defendants to disgorge all attorneys' fees and costs received from, or on behalf of, AIA Services and AIA Insurance in the amount to be proven at or before trial, plus prejudgment interest;

**3.**    For a judgment requiring the Defendants to indemnify AIA for, or pay, all sums purportedly owed to GemCap (assuming Plaintiff is unsuccessful in setting aside AIA's obligations under the Settlement Agreement);

**4.**    For judgment against the Defendants, jointly and severally, for all damages, treble damages, other relief (including injunctive relief), and the award of attorneys' fees as provided or available under RCW 19.86.090;

**COMPLAINT - 37**

**5.**    For a declaratory judgment for the relief specified, or contemplated, in this Complaint and any other declaratory relief requested at or before trial, including, without limitation, voiding any purported agreements or purported conflict waivers;

**6.**    For judgment for this Court to retain jurisdiction to deposit any funds recovered into this Court's registry, or the registry of another court, pending the ultimate dissolution of AIA at which such time the funds may be distributed (Plaintiff is not seeking to recover damages only to allow John Taylor or other non-parties to obtain control or otherwise utilize them);

**7.**    For an award of the attorneys' fees and costs incurred in this action as allowed by statute (including for derivative actions), contract, or recognized grounds of equity; and

**8.**    For any such further relief or remedy, including preliminary and/or permanent injunctive relief, that Plaintiff may request at or before trial and/or as this Court may find just and equitable.

DATED:  This 21st day of August 2018.

RODERICK BOND LAW OFFICE, PLLC


By:    */s/ Roderick C. Bond*
        Roderick C. Bond
        Attorney for Plaintiff Dale L. Miesen

**COMPLAINT - 38**

# VERIFICATION OF DALE L. MIESEN

STATE OF TEXAS                     )
                                   )  ss.
COUNTY OF TARRANT                  )

I, Dale L. Miesen, declare:

I am the Plaintiff in the above-entitled action. I have read the contents of this Complaint, know the contents of this Complaint, and believe that the facts set forth in this Complaint are true and accurate to the best of my knowledge and belief.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND THE STATE OF WASHINGTON THAT THE FOREGOING IS TRUE AND CORRECT.

*August 21, 2018, Fort Worth, Texas*          */s/ Dale L. Miesen*
Date and City and State Signed          Dale L. Miesen

**COMPLAINT - 39**