1
2
3
4
5
6
7

JAMES B. KING, #8723
MARKUS W. LOUVIER, #39319
Evans, Craven & Lackie, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632
Attorneys for Defendant
jking@ecl-law.com
mlouvier@ecl-law.com

8
9
10

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DALE L MIESEN, an individual who is a
shareholder and who is also bringing this
action on behalf of and/or in the right of
AIA Services Corporation and its wholly
owned subsidiary AIA Insurance, Inc.

                 Plaintiffs,

vs.

JOHN D. MUNDING and JANE DOE
MUNDING, married individuals and the
community property comprised thereof;
JOHN OR JANE DOES I-III, unknown
individuals; MUNDING, P.S., a
Washington Professional Services
Corporation; AIA SERVICES
CORPORATION, an Idaho corporation
and a nominal defendant; AIA
INSURANCE, INC.; an Idaho corporation
and a nominal defendant;

                 Defendants.

Case No. 2:18-CV-270

DEFENDANTS JOHN
MUNDING, JANE DOE
MUNDING, MUNDING P.S.
AND CRUMB AND
MUNDING P.S.'S MOTION TO
DISMISS

**ORAL ARGUMENT
REQUESTED**

Date and Time to Be Determined
Upon Consultation With Counsel

29
30

MOTION TO DISMISS - page 1

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

COME NOW Defendants John D. Munding, Jane Doe Munding, Munding and Munding P.S. (collectively "Munding") and pursuant to Fed. R. Civ. P. 12(b)(1), (3), (6) move to dismiss the above-captioned action.

## I.    INTRODUCTION

This is the most recent iteration of a series of lawsuits spanning in excess of a decade. Attorney Roderick Bond has repeatedly sued AIA Insurance/AIA Services (hereinafter collectively, "the AIA entities"), their attorneys, officers and employees at the behest of clients including Reed Taylor ("Taylor"), Dale Miesen ("Miesen"), and Donna Taylor. Generally, the disputes have concerned Messrs. Taylor and Miesen as allegedly aggrieved minority shareholders.

In this suit, Miesen contends the AIA entities' board(s) of director(s) was/were improperly elected. ECF No. 1 at ¶ 21. He contends that the board of directors improperly obtained lines of credit from GemCap. *Id. at* 28. GemCap sued the AIA entities in connection with the line of credit and guarantees. *Id. at 29.* Defendant Munding represented AIA in the California-based litigation, his lone involvement in the transactions at issue. The case was settled in 2014 and a final judgment was entered on April 12, 2015. *See,* 2:13-CV-05504-SJO-MAN

MOTION TO DISMISS - page 2

ECF No. 324.[1] Miesen contends the guarantees and loans were unlawful pursuant to corporate bylaws. *Id. at 31-33.* Mr.

Mr. Miesen's current lawsuit must be dismissed where: (1) diversity jurisdiction does not exist, (2) Miesen's ultra vires claims are barred by *res judicata,* (3) defendants owed no duty to Mr. Miesen or the minority shareholders Mr. Miesen allegedly represents, and (4) the statute of limitations expired.

## II.    AUTHORITIES AND ARGUMENTS

### A.    Fed. R. Civ. P. 12 standards.

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must set forth factual allegations sufficient 'to raise a right to relief above the speculative level.'" *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't*, 911 F. Supp. 2d 1118, 1123 (E.D. Wash. 2012) (citation omitted). As the Court has recognized, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and a plaintiff must make "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citation omitted). In considering a 12(b)(6) motion, the Court may consider materials incorporated into the complaint or matters of public record.

---

[1] The facts giving rise to the loan, subsequent litigation, and settlement are described in the *Ellis* Declaration, filed herewith.

MOTION TO DISMISS - page 3

*Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). The "court may take judicial notice of adjudicative facts which are not subject to a reasonable dispute." *United States v. Elias*, No. CR-98-70-E-BLW, 2008 WL 4545192, at *5 (D. Idaho 2008) (citing F.R.E. 201).

**B.    Diversity jurisdiction does not exist.**

To establish subject matter jurisdiction pursuant to diversity of citizenship, the party asserting jurisdiction must show: (1) complete diversity of citizenship among opposing parties, and (2) an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(a); *Hertz Corp. v. Friend,* 559 U.S. 77, 130 S.Ct. 1181 (2010).

Plaintiffs contend that diversity jurisdiction exists over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1) "because the amount in controversy presently exceeds $1,000,000 and this action is between citizens of different states." ECF No. 1, pg. 1, at Section I, Paragraph 1. Plaintiffs' jurisdictional assertions are incorrect in that diversity is *not* complete where the AIA entities – each independently asserted to be Idaho residents – are both plaintiffs and defendants. Plaintiffs attempt to characterize the AIA entities as "nominal" defendants. The AIA entities are not "nominal" in a derivative shareholder suit seeking to invalidate corporate action.

The law concerning so-called "nominal defendants" for purposes of diversity jurisdiction can be summarized as follows:

MOTION TO DISMISS - page 4

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

The Ninth Circuit has held that a nominal defendant is "a person who 'holds the subject matter of the litigation in a subordinate or possessory capacity and to which there is no dispute.' " "The paradigmatic nominal defendant is 'a trustee, agent, or depositary ... [who is] joined purely as a means of facilitating collection.' " A nominal defendant's relation to an action is merely incidental and "it is of no moment [to him] whether the one or the other side in [the] controversy succeed [s]." "Because of the non-interested status of the nominal defendant, there is no claim against him and it is unnecessary to obtain subject matter jurisdiction over him once jurisdiction over the defendant is established."

*Prasad v. Wells Fargo Bank, N.A.,* No. C11-894-RSM, 2011 WL 4074300, at *2 (W.D. Wash. Sept. 13, 2011) (internal citations omitted).

"A corporation is a citizen of the state of its creation; and in a derivative action the corporation on whose behalf the action is brought, though only a nominal defendant, is, nevertheless, for the purpose of diversity jurisdiction treated as a true defendant." *Haymes v. Columbia Pictures Corp*, 16 F.R.D. 118, 120 (S.D.N.Y. 1954); *Khoury v. Oppenheimer,* 540 F.Supp. 737, 738–39 (D.Del. 1982)(citizenship of nominal defendant in shareholder derivative action must be considered because it is not a mere formal party and may not be realigned if "the corporation is under the control of management which is antagonistic to the plaintiff shareholders"). Miesen's suit places shareholders of AIA at odds with one another and therefore, the AIA entities are anything but "nominal" defendants.

MOTION TO DISMISS - page 5

**C.    Miesen's claims are barred by res judicata.**

Mr. Miesen, through Mr. Bond, has also brought suit in United States District Court for the District of Idaho. He again seeks to invalidate the judgment entered in GemCap's favor in the California litigation. As has been recently been explained by GemCap in its Motion for Summary Judgment, **four** efforts have been made by shareholders to invalidate GemCap's judgment (obtained in the California litigation). GemCap asserts that Miesen's claims are barred by res judicata. The facts and reasoning of GemCap's assertions are applicable to Miesen's claims against Munding here. *See, Louvier Affidavit Exhibits O, N and Foster Declaration with Exhibits.*

**D.    Mr. Miesen's Complaint has failed to state a claim upon which relief may be granted - Fed. R. Civ. P. 12(b)(6).**

Mr. Miesen's Complaint involves Mr. Munding's former representation of clients in California-based litigation. California law applies to Mr. Munding's actions. Under California law, Mr. Miesen's claims are: (1) barred by the applicable statute of limitations, and (2) substantively defective where Mr. Munding did not owe a duty to the plaintiffs.

**1.    California law applies to Mr. Miesen's claims.**

A federal court sitting in diversity applies the choice-of-law rules of its forum state to determine which substantive law

MOTION TO DISMISS - page 6

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

controls. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. Of Tex.,* 134 S.Ct. 568, 582 (2013). Washington uses a two-step approach to choice-of-law questions. *Kelley v. Microsoft Corp.,* 251 F.R.D. 544, 550 (W.D. Wash. 2008). First, courts determine whether an actual conflict between Washington and other applicable state law exists. *Id.* A conflict exists when the various states' laws could produce different outcomes on the same legal issue. *Id.* In the absence of a conflict exists, courts then determine the forum or fora that have the "most significant relationship" to the action. *Id.*

Under the most significant relationship test, the Court must determine which state has the most significant relationship to the cause of action. *See, e.g. Kelley v. Microsoft Corp.,* 251 F.R.D. 544, 551 (W.D. Wash. 2008). The Court must first evaluate the contacts with each interested jurisdiction. *Future Select Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.,* 180 Wn.2d 954, 968 (2014). The approach is not merely to count contacts, but rather to consider which contacts are the most significant and determine where these contacts are found. *Id.* Second, the Court must evaluate the interests and public policies of potentially concerned jurisdictions. *Id. (citing Southwell v. Winding Transp. Inc.,* 101 Wn.2d 200, 204 (1984). The extent of the interest of each potentially interested state should be

MOTION TO DISMISS - page 7

determined on the basis, among other things, of the purpose sought to be achieved by their relevant local law rules and the particular issue involved. *Id.*

The alleged legal malpractice relates to Defendants' representation of AIA Entities with respect to the complaint filed in California federal court, where all claims asserted in the complaint were governed by California law, where all actions complained of took place before the California federal court, including the "Settlement Agreement" governed by California law.

To determine which of two or more conflicting laws apply, "Washington courts use the methodology outlined in the Restatement (Second) of Conflicts of Laws § 6 (1971)." *Experience Hendrix,* L.L.C v. *HendrixLicensing.com,* LTD 766 F. Supp. 2d 1122, 1132 (W.D. Wash. 2011). The Restatement instructs courts to look to the state that has "the most significant relationship to the occurrence and the parties" of any tort claim. Restatement § 145(1). The "especially relevant contacts" to be considered include:

1. The place where the injury occurred;

2. The place where the conduct causing the injury occurred;

3. The domicile, residence, nationality, place of incorporation and place of business of the parties;

4. The place where the relationship, if any, between the parties is centered.

MOTION TO DISMISS - page 8

The first § 145(1) factor, the place of injury, supports application of California law. The injury alleged is premised upon an omitted defense in the California litigation, which resulted in a final judgement and court approval.

Most courts applying § 145 in analogous situations agree that negligent behavior in litigation injures the client in the forum state of the court, regardless of the client's presence in the state. See *Patton v. Cox*, 276 F.3d 493, 497 (9th Cir.2002) (considering the location of a quasi-judicial proceeding as the "most persuasive" factor in choice-of-law analysis); *ACE Am. Ins. Co. v. Sandberg, Phoenix & Von Gontard, PC*, 900 F.Supp.2d 887, 896 (S.D.Ill.2012) (place of litigation controlled: "[t]he gist of this action is that [defendant] bungled the defense of the case"); *Foulke v. Dugan*, 187 F.Supp.2d 253, 257 (E.D.Pa.2002) (injury resulting from legal malpractice was having case dismissed, and that injury occurred where litigation was pending); *In re Kaiser Grp. Int'l, Inc.,* Adversary No. 09–52317–MFW, 2010 WL 3271198, at *5 (Bankr.D.Del. Aug. 17, 2010), *David B. Lilly Co., Inc. v. Fisher*, 18 F.3d 1112, 1119–20 (3d Cir.1994).

The second factor of where the conduct causing the injury occurred favors application of California law. The Defendants performed legal services for AIA in California. The case was pending before the United States District Court for

MOTION TO DISMISS - page 9

Central District of California, all pleadings were filed in that Court under Defendant's California bar license, the majority of discovery and meetings took place in California, all hearings were in California, and the trial occurred in California. CV-13-05504 SJO MAN, ECF No. 272. The Settlement Agreement, which serves as the gravamen of the complaint, was negotiated in California with the assistance of presiding Judge Otero.  The Settlement was achieved and approved in Judge Otero's courtroom. The subsequent judgement was entered by Judge Otero against AIA. California has a strong interest in regulating attorney conduct in courts within its borders.

As to the third factor of §145, it is neutral at best. The Defendants are residents of the state of Washington. AIA is an Idaho corporation. AIA and the Defendants all have contacts with the State of California.

The fourth factor of § 145, the center of relationship of the parties, also supports application of California law. There is no evidence that Defendants represented AIA in any capacity other than in the California litigation. No actions were taken by the Defendants in the representation of AIA other than in the California litigation. The choice of law test, however, looks for the state with the most significant relationship to the claim; the test thus focuses not on the magnitude of the relationship between the parties, but on the state where the

MOTION TO DISMISS - page 10

relevant relationship existed and that state's interest in the claim. *See Brayant v. Silverman,* 703 P.2d 1190, 1195 (Ariz.1985). The engagement of Defendants was for the sole purpose of providing a defense to the claims in the California litigation. Defendants did not represent AIA in Washington or Idaho or any legal matters. The Settlement Agreement was reached in California and governed by California law. The Settlement Agreement resulted in a valid final judgement entered by the California Federal Court under California law. Each of the § 145 factors either supports application of California law or is neutral.

## 2.  Plaintiff Miesen's claims are time barred under California law.

After determining California law applies to this case, the Court determines the appropriate statute of limitations under the Uniform Conflict of Law - Limitations Act. RCW 4.18.020, which states:

(1)  Except as provided by RCW 4.18.040, if a claim is substantively based:

    (a) Upon the law one other state, the limitation period of that state applies; or

    (b) Upon the law of more than one state, the limitation period of one of those states, chose by the law of conflict of laws of this state, applies.

The applicable statute of limitations for all claims derivative of alleged legal malpractice is governed by California Code of Civil Procedure Section 340.6, which provides that in any action against attorney for a wrongful act or omission, "arising in performance of professional services

MOTION TO DISMISS - page 11

shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered the facts constituting the wrongful act or omission…". Cal. Code Civ. Proc. §340.6 Under Section 340.6, the applicable limitations period begins to run as soon as "the plaintiff suspects or should suspect that his injury was caused by wrongdoing." *Jolly v. Eli Lilly & Co.,* 44 Cal. 3d. 1103, 1110 (1988).   The California Supreme Court has previously stated, "The statute of limitations for legal malpractice actions commences on the entry of adverse judgment or final or of dismissal." *See, Laird v. Blacker*, 828 P. 2d 691, 696 (Cal.1992).  *See also Tchorbadjian v. Western Home Ins. Co.,* 39 Cal App. 4th 1211, 1219 (1995) (The actual injury occurs in litigation malpractice when the malpractice results in an adverse judgment or settlement in the underlying action). Furthermore, subjective belief is irrelevant to the question of whether action has been sustained. *Britton v. Girard;* 235 Cal App. 4th 721, 733 (2015) (The fact of injury or damage need not be recognized or noticed by the plaintiff). In this case, the Settlement Agreement was approved by the Court at the first day of trial on September 15, 2014. *See,* 2:13-CV-05504 SJO MAN at ECF 272.  An adverse judgment was entered by the Court on April 12, 2015. 2:13-CV-05504-SJO-MAN at ECF No. 324.  Attorney Bond and his client shareholders had

MOTION TO DISMISS - page 12

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

notice of this event: Miesen sued GemCap in July of 2014 in a verified complaint seeking to set aside the loans and vacating any settlements. *Louvier Affidavit, K.*

The statute of limitations is not dependent upon actual discovery but is based on a "reasonable person" standard. "The test is whether the plaintiff has information of circumstances sufficient to put a reasonable person on inquiry or has the opportunity to obtain knowledge from sources open to his or her information." *McGee v. Weinberg* 97 Cal. App. 3d 798, 803 (1979). Plaintiff does not need to consult with an attorney or know the legal basis for his claims to trigger the statute. *Gutierrez v. Mofid*, 39 Cal. 39 892, 89 (1985); McGee, supra, 97 Cal. App.3d at 803 ("The statute of limitations is not tolled by belated discovery of legal theories, as distinguished from belated discovery of facts."). As stated by the California Supreme Court: "We look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." *Fox v. Ethicon Endo-Surgery, Inc.* 35 Cal. 4th 797, 807 (2005).

In this case, the Plaintiff and his counsel absolutely knew about the transactions with GemCap, the litigation in California, the settlement, and the judgment:

- On 8/31/2013, Mr. Bond wrote: "GemCap should not have lent the money in the first place and it [sic] improper to do so." *Louvier Aff. at A.*

MOTION TO DISMISS - page 13

- On 2/17/2014 Bond wrote: I've been monitoring the California lawsuit and I don't see any pleadings or filings in which you are seeking invalidate AIA's illegal guarantee…All of these acts are in violation of AIA's articles of incorporation and a clear breach of John Taylor and the other AIA's directors' and officers' fiduciary duties…" *Id. at Exhibit B.*

- On 8/13/2014, Bond wrote to Munding: I have noticed that AIA has paid attorneys' fees to you in recent filings in the California case. **While my clients are taking action in Nez Perce County District Court to have the guarantee declared illegal (something you should have asserted and filed a dispositve motion no long ago), I wanted to give you the fair heads up that my clients will be serving a derivative demand upon the boards of AIA Services and AIA insurance to assert legal malpractice claims against you. The damages would include, but not be limited to, disgorgement of fees and any damages sustained by AIA Services or AIA Insurance in that case." *Id. at Exhibit E.***

Indeed, on July 21, 2014, Mr. Miesen, along with two others filed a Verified Complaint for Declaratory Relief and Injunctive Relief. *Louvier Affidavit, Exhibit K.* They alleged:

- GemCap entered into security agreements and guarantees. *Id. at ¶ 13.*

- John Taylor had no authority to enter the guarantee for GemCap. *Id. at 14.*

- The lawsuit sought invalidation of the guarantee and that any settlement agreements be declared "unlawful, illegal, void, and unenforceable." *Id. at 37.*

Mr. Bond wrote to Mr. Munding, attaching a copy of the complaint, stating, "I can tell you that my clients are not happy that they are doing your job." *Louvier Affidavit, Exhibit D.* Mr. Bond asserted that he received a copy of the settlement

MOTION TO DISMISS - page 14

agreement which was dated effective September 15, 2014 in December of 2015. *Louvier Affidavit, Exhibit L, pg. 3.* The fact of the settlement was publicly available on September 14, 2014. *Louvier Affidavit, Exhibit F.* Indeed, shortly after entry of the settlement agreement, one of Mr. Bond's clients, Donna Taylor, sought to intervene in the California litigation. *Louvier Affidavit, Exhibit H.* Her motion was denied because, among other reasons, it was untimely.

Plaintiff Miesen and his counsel were on notice of the potential claims against Defendants and were under a legal duty to investigate and file any claim they wish to assert against Defendants within one year.

## E.    Even if Idaho Law applied, Miesen's claims must be dismissed.

### 1. Miesen's claims are barred by Idaho's statute of limitations.

If Idaho law were determined by this court to be the choice of law, the two-year statute of limitations found at IC §5-219(4) applies to all claims asserted against Defendants. All claims that accrued prior to August 21, 2016, are barred.[2]

Similar to California law, the appropriate statute of limitations in Idaho is determined by the substance, not the form, of the action. *Trimming v. Howard*, 52 Idaho 412, 416, 16 P.2nd 661 (1932). If the gravamen of a complaint is

---

[2] Even to the extent they could be considered separately, Miesen's breach of fiduciary duty claims accrued in September of 2014 and are time barred.

MOTION TO DISMISS - page 15

professional negligence/malpractice, it makes no difference what label the plaintiff uses. *See Nerco Minerals Company v Morrison Knudson Corporation*, 140 Idaho 144,148, 90 P.3d 894, 898 (2004) (rejecting attempt to plead engineering malpractice claim as fraudulent misrepresentation and concealment); *Bishop v. Owens,* 152 Idaho 616, 621, 272 P.3d 1247, 1252 (2012) ("legal malpractice has traditionally been treated as the proper claim where an attorney breaches his or her duty, which arises from the attorney-client relationship").

In *Griggs v. Nash,* 116 Idaho 228, 775 P.2d 120 (1989) the Idaho Supreme Court ruled that an action against an attorney for damage resulting from the manner in which the attorney represented the client constitutes an action for malpractice, regardless of whether predicated on tort (i.e. fiduciary duty) or contract and whether for direct damage or indemnification. *Id. at 232, 124.*

Miesen's demand letter serving as the basis for the present suit was dated June 13, 2016, two years and sixty-seven (67) days prior to filing this suit. Miesen's declaration proclaiming he was going to sue all of AIA's attorneys was dated August 12, 2016, two years and nine days prior to filing this suit. *Louvier Affidavit, Exhibit M.* Mr. Miesen knew about the settlement, knew about the amount, and asserted Munding had improperly represented AIA.

MOTION TO DISMISS - page 16

In a cause of action for professional negligence/malpractice, the statute of limitations begins to run when the plaintiff sustains "some damage." *Bonz v. Sudweeks,* 119 Idaho 539, 542, 809 P.2d 876, 879 (1991). In legal malpractice, incurring attorney fees is often the event that demonstrates that the plaintiff has incurred "some damage." For instance, in *Griggs,* a third-party complaint was filed against an attorney alleging malpractice for releasing loan proceeds without ascertaining that all liens against real property had been released. *Griggs*, 116 Idaho at 125, 775 P.2d at 233. The Third-party plaintiff wrote a letter to the attorney alleging that he had incurred approximately $1,500 in attorney fees preparing to file an action against the attorney. *Id.* The Idaho Supreme Court held that "some damage" was incurred not later than the date of the letter. *Griggs*, 116 Idaho at 125, 775 P.2d at 233. See also *Elliott v. Parsons,* 128 Idaho 723, 725, 918 P.2d 592, 594 (1996) ("some damage" suffered when party incurred attorney fees to pursue action against attorney for alleged malpractice); *B&K Fabricators, Inc. Button,* 126 Idaho 934, 938, 894 P.2d 167, 171 (Ct. App. 1995).

Mr. Miesen's causes of action – if they existed at all – unquestionably accrued at the time of the settlement in 2014.

**2.      Idaho corporation law warrants dismissal of Miesen's case.**

MOTION TO DISMISS - page 17

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

It is fundamental that a corporation is a legal entity that is distinct from its shareholders. *See, Swope v. Swope,* 112 Idaho 974, 739 P.2d 273 (1987). The authority to manage the business and affairs of a corporation is vested in the board of directors, not in its shareholders. IC § 30-29-801. This includes the authority to commence, defend, and control actions on behalf of the corporation. *Id., Weatherhead v. Griffin,* 123 Idaho 697, 851 P.2d 993 (Idaho 1992), *See Also,* ECF No. 1-2, Exhibit B, pg. 7 at 4.4 ("Powers"). Because a corporation exists as a separate legal entity, the shareholders have no direct cause of action or right of recovery against those who have harmed it. *McCann v. McCann,* 152 Idaho 809, 275 P.3d 824 (Idaho 2012). The shareholders may, however, bring a derivative suit to enforce the corporation's rights and redress its injuries when the board of directors fails or refuses to do so. *Id.*

A derivative action is distinguishable from an individual action. Idaho Courts have described a derivative action as follows:

> A stockholder's derivative action is an action brought by one or more stockholders of a corporation to enforce a corporate right or remedy a wrong to the corporation in cases where the corporation, because it is controlled by the wrongdoers or for other reasons fails and refuses to take appropriate action for its own protection.

*McCann,* 152 Idaho at 814.

MOTION TO DISMISS - page 18

In order for a shareholder to advance a derivative action on any claim, a proper demand under I.C. § 30-29-741 must be provided to the corporation and the mandates of Fed. Rule Civ. Pro. 23 (f)'s stringent requirements regarding the form and allegations of the complaint must be met.  In *Orrock v. Appelton,* 147 Idaho 613, 213 P.3d 398 (2009), the Supreme Court explained the important policy underlying the demand requirement:

> To prevent abuse of [shareholder derivative suit] … equity courts establish as a precondition for the suit that the shareholder demonstrates that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions" *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95-96 (19910] (quoting *Ross v. Bernhard*, 396 U.S. 531, 534 (1970).  The demand requirement affords the directors an opportunity to exercise their reasonable business judgment. *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 533 (1984).  The function of the demand doctrine in delimiting the respective powers of the individual shareholder and of the directors to control corporate litigation clearly is a matter of "substance", no procedure.  Kamen, 500 U.S. at 96-97.

*Orrock*, 147 Idaho at 618, 213 P.3d. at 403.

To advance this policy, both IRCP 23(f) and Fed. R. Civ. P. 23(f) mandate the complaint shall allege with particularity the efforts, if any, made by the plaint to obtain the action which plaintiff desires from the directors or comparable authority, and if necessary from the shareholders.

The Complaint at issue alleges that two demand letters were served upon the Board of Directors of AIA, but does not attach

MOTION TO DISMISS - page 19

either demand letter. The operative demand letter is dated June 13, 2016, which consists of 11 pages and 44 paragraphs of demands against over 20 individuals, law firms, and attorneys. As to the Defendants in this case, the demand letter states:

16.    "…all possible claims against…Crumb & Munding…and any other law firm…"

22.    "…all possible claims against John Munding…"

The Board of Directors declined to take any action under the June 13, 2016 demand letter. A demand letter "must state facts, note mere general conclusions." *McCann*, 61 P.3d at 592. A demand letter must (1) identify the alleged wrongdoers; (2) describe the factual basis for the allegations; (3) describe the harm caused to the corporation; and (4) describe the request for relief. *See, e.g. Levner v. Saud*, 903 F. Supp. 452, 456 (S.D.N.Y. 1994), aff'd 61 F. 3d 8 (2nd Cir. 1995); *Seidel v. Allegis Corp,* 702 F. Supp. 1409, 1412 (N.D. Ill. 1989); *Lewis ex rel. Nat'l Semiconductor Corp. v. Sporck*, 646 F. Supp. 574, 578 (N.D. Cal. 1986).

When viewed objectively, paragraph 16 of the June 13, 2016 demand letter is vague and ambiguous with respect to the actual firm providing legal services, the dates upon which legal services where preformed, the actual legal services performed, and the actual actions or amounts for which redress is sought.  See

MOTION TO DISMISS - page 20

Paragraph 16, June 23, 2016 letter. Paragraph 16 of the June 13, 2016 was legally insufficient and cannot be a basis to pursue the claims alleged in the complaint.

In Paragraph 22 of the letter the factual basis for harm allegedly caused to AIA are stated as arising from the defense provided by the Defendants in the "California Lawsuit" and "improperly failing to assert that the guarantees and the settlement agreements enter into by AIA were not authorized and were thus illegal or ultra-vires..."

**F.     Miesen's Consumer Protection Act claim fails.**

Consumer Protection Act claims are governed by a four (4) year statute of limitations. All actions undertaken by Mr. Munding prior to August 21, 2014 are time-barred. Mr. Miesen fails to allege any action by Mr. Munding after August 21, 2014. Thus, his CPA claims must be dismissed.

DATED this 18th day of September, 2018.

> By _____/s/ Markus W. Louvier_____
> MARKUS W. LOUVIER, #39319
> JAMES B. KING, #6732
> Attorneys for Munding Defendants
> Evans, Craven & Lackie, P.S.
> 818 W. Riverside Ave., Ste. 250
> Spokane, WA 99201
> (509) 455-5200
> (509) 455-3632 facsimile
> mlouvier@ecl-law.com
> jking@ecl-law.com

MOTION TO DISMISS - page 21

# CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

**Counsel for Plaintiffs**
Roderick C. Bond
Roderick Bond Law Office, PLLC
601 108th Avenue NE, Suite 1900
Bellevue, Washington 98004
rod@roderickbond.com

By _____/s/ Markus W. Louvier_____
MARKUS W. LOUVIER, #39319
Attorney for Defendant
Evans, Craven & Lackie, P.S.
818 W. Riverside Ave., Ste. 250
Spokane, WA 99201
(509) 455-5200
(509) 455-3632 facsimile
mlouvier@ecl-law.com

MOTION TO DISMISS - page 22