Case 2:18-cv-00270-BMR-ECF No. 8-15 filed 09/18/18 PageID.232 Page 1
Case 1:10-cv-00404-DCN-CWD Document 487-2 Filed 09/17/18 Page 1 of 29
of 29

Alyson A. Foster (ISBN 9719)
*aaf@aswblaw.com*
Benjamin A. Schwartzman (ISBN 6512)
*bas@aswblaw.com*
**ANDERSEN SCHWARTZMAN
WOODARD BRAILSFORD, PLLC**
101 S. Capitol Blvd., Suite 1600
Boise, ID 83702
Telephone: 208.342.4411
Facsimile: 208.342.4455

*Attorneys for Defendant GemCap Lending I, LLC*

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> HAWLEY TROXELL ENNIS & HAWLEY LLP, an Idaho limited liability partnership, et al., <br><br> Defendants. | Case No. 1:10-cv-00404-DCN <br><br> MEMORANDUM IN SUPPORT OF GEMCAP LENDING I, LLC'S MOTION FOR SUMMARY JUDGMENT |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7(b)(1),

Defendant GemCap Lending I, LLC ("GemCap"), through its undersigned counsel, submits this

Memorandum in Support of its Motion for Summary Judgment.

Case 2:18-cv-00270-BMR-ECF No. 8-15 filed 09/18/18 PageID.234 Page 2
Case 3:10-cv-00404-DCN-CWD Document 137-29 Filed 09/17/18 Page 2 of 29
of 29

# TABLE OF CONTENTS

Table of Authorities ............................................................................................... iii

Prior Litigations ...................................................................................................... vi

Introduction ............................................................................................................. 1

Relevant Procedural History ................................................................................... 3

Argument ................................................................................................................. 3

I.    All claims are barred by the doctrine of res judicata ...................................... 3

    A.    Legal Standards ................................................................................... 3

    B.    *Donna J. Taylor v. AIA Servs. Corp.* bars Plaintiff's claims .................................. 5

    C.    *GemCap Lending I, LLC v. Crop USA Ins. Agency, Inc.* bars Plaintiff's claims ................................................................................................................. 6

    D.    *Durant v. GemCap Lending I, LLC* bars Plaintiff's claims ....................................... 9

II.    Summary judgment should be granted on all claims because the Guarantee and Settlement cannot be challenged or set aside as *ultra vires* ................................ 10

    A.    Plaintiff may not bring a derivative *ultra vires* claim against GemCap ............... 11

    B.    The Guarantee and Settlement cannot be deemed an *ultra vires* act of the AIA Entities because they directly benefitted from both agreements .................. 13

III.    Summary judgment should be granted under equitable principles ........................ 15

    A.    Plaintiff's claims fail under the doctrine of laches ................................ 15

    B.    Plaintiff, on behalf of the AIA Entities, is judicially estopped from challenging the enforceability of the Guarantee and Settlement ........................... 18

IV.    All claims against GemCap must be dismissed due to an utter lack of evidence ............. 19

Conclusion ............................................................................................................. 20

Case 2:18-cv-00370-BMR-EJF No. 8-15 filed 09/18/18 PageID.235 Page 3
Case 1:10-cv-00404-DCN-CWD Document 187-2 Filed 09/17/18 Page 3 of 29
of 29

# TABLE OF AUTHORITIES

## Cases

*Andrus v. Nicholson*, 145 Idaho 774 (2008) ................................................................... 4

*Akin v. PAFEC Ltd.*, 991 F.2d 1550 (11th Cir. 1993) ....................................................... 7

*Antoine L. Garabet, M.D., Inc. v. Autonomous Techs. Corp.*, 116 F. Supp. 2d 1159 (C.D. Cal. 2000) ......................................................................................................................... 16

*Aruduini v. Hart*, 774 F.3d 622 (9th Cir. 2014) ........................................................... 4, 5

*Baker v. Spokane Sav. Bank*, 71 F.2d 487 (9th Cir. 1934) ............................................. 15

*Cohen v. Beneficial Loan Corp.*, 337 U.S. 541 (1949) ..................................................... 4

*Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221 (9th Cir. 2012) ......... 15, 17

*Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528 (9th Cir. 2000) ........................... 20

*Fremont Cty. v. Warner*, 7 Idaho 367, 63 P. 106 (1900) ............................................... 13

*Gagnon Co. v. Nevada Desert Inn*, 45 Cal. 2d 448, 289 P.2d 466 (1955) ...................... 5

*Goldman v. Northrop Corp.*, 603 F.2d 106 (9th Cir. 1979) ............................................ 4

*Helgeson v. Powell*, 54 Idaho 667, 34 P.2d 957 (1934) ................................................. 19

*In re Wal-Mart Stores, Inc. Delaware Derivative Litig.*, No. CV 7455-CB, 2016 WL 2908344 (Del. Ch. May 13, 2016), *supplemented*, 167 A.3d 513 (Del. Ch. 2017) ...................... 4

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829 (9th Cir. 2002) ............... 15

*Lewis v. Chiles*, 719 F.2d 1044 (9th Cir. 1983) .............................................................. 4

*Matsuchita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996) ....................................... 3-4

*Matter of L & S Indus., Inc.*, 989 F.2d 929 (7th Cir. 1993) ............................................ 5

*McCann v. McCann*, 138 Idaho 228, 61 P.3d 585 (2002) ............................................... 4

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983 (9th Cir. 2012) ........... 18

*Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 51 P.3d 297 (2002) ........................ 4

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ........................................................... 18

Case 2:18-cv-00370-BMR-ECF No. 8-15 filed 09/18/18 PageID.236 Page 4
Case 1:10-cv-00404-DCN-CWD Document 197-2 Filed 09/17/18 Page 4 of 29
of 29

*Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708 (9th Cir. 2001) ................................. 5-6

*Power Cty. v. Evans Bros. Land & Live Stock Co.*, 43 Idaho 158, 252 P. 183 (1926)........... 13-14

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 (9th Cir. 2006)..................................... v

*Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597 (9th Cir. 1996) ............................. 18

*Rodriguez v. Dep't of Correction*, 136 Idaho 90, 29 P.3d 401 (2001)........................................... 9

*Ross v. Berhard*, 396 U.S. 531 (1970) ........................................................................................... 4

*Scarbourough v. Briggs*, 81 Cal. App. 2d 161, 183 P.2d 683 (1947)......................................... 4-5

*Symmes v. Union Tr. Co. of New York*, 60 F. 830 (C.C.D. Nev. 1894)....................................... 16

*Taylor v. Riley*, 157 Idaho 323, 336 P.3d 256 (2014) ................................................................ 4-6

*Taylor v. Sturgell*, 553 U.S. 880 (2008)......................................................................................... 4

*Taylor v. Taylor*, No. 44833, Slip Op. (Idaho Sup. Ct. July 27, 2018) (appended).............. *passim*

*Todd v. Sullivan Const. LLC*, 146 Idaho 118, 125, 191 P.3d 196, 203 (2008) ............................ 19

*Torrey Pines Bank v. Super. Ct.*, 216 Cal. App. 3d 813, 265 Cal. Rptr. 217 (1989)................... 12

*United States v. Elias*, No. CR-98-70-E-BLW, 2008 WL 4545192 (D. Idaho Oct. 9, 2008)......... v

*Zabriskie v. Cleveland, Ohio, C.C. & C.R. Co.*, 64 U.S. 381 (1859) ........................................... 15

**Rules**

Federal Rule of Civil Procedure 56 ......................................................................................... *passim*

Federal Rule of Evidence 201 ...................................................................................................... v

**Statutes**

I.C. § 30-1-304...................................................................................................................... 2, 11-12

I.C. § 30-1-7 ................................................................................................................................ 13

I.C. § 30-29-304 ............................................................................................................................ 2

I.C. § 30-29-740 ............................................................................................................................ 4

**Other Authorities**

Ultra Vires, Black's Law Dictionary 1755 (10th ed. 2014)......................................................... 11

Case 2:18-cv-00370-BMR-ECF No. 8-15 filed 09/18/18 PageID.237 Page 5
Case 3:10-cv-00404-DCN-CWD Document 437-29 Filed 09/17/18 Page 5 of 29
of 29

**Treatises**

Restatement (Second) of Torts § 876 (1979) ........................................................................ 19-20

*Ultra vires or illegal acts—General rules*, 12B Fletcher Cyc. Corp. § 5823 ............................. 15

of 29

<u>**PRIOR LITIGATIONS**</u>[1]

*GemCap Lending I, LLC v. Crop USA Insurance Agency, Inc.*, No. 2:13-cv-05504-SJOL-MAN (C.D. Cal.)

<u>Relevant pleadings and orders</u>:

Civil Docket, printed September 5, 2018 (Foster Dec. Ex. 7)

Dkt. 1, Complaint, filed July 30, 2013 (Foster Dec. Ex. 1)

Dkt. 114, Answer to Second Amended Complaint and Affirmative Defenses, by Crop USA Insurance Agency, Inc., CropUSA Insurance Services LLC, AIA Insurance Inc., AIA Services Corporation, R. John Taylor, Reinsurance Partners, LLC, Green Leaf Reinsurance Partners, LLC, And Sound Insurance Agency, filed November 14, 2013 (Foster Dec. Ex. 2)

Dkt. 232, Defendants' Crop USA Insurance Agency, Inc.; CropUSA Insurance Services, LLC; AIA Insurance Inc.; AIA Services Corporation, Memorandum of Contentions of Fact and Law Pursuant to Civil Local Rule 16-4, filed August 18, 2014 (Foster Dec. Ex. 3)

Dkt. 272, Civil Minutes – General, dated September 15, 2014 (Foster Dec. Ex. 4)

Dkt. 291, Notice and Motion to Intervene by Intervenor Donna J. Taylor, filed January 8, 2015 (Foster Dec. Ex. 20)

Dkt. 291, Notice and Motion to Intervene by Intervenor Donna J. Taylor, filed January 8, 2015 (Foster Dec. Ex. 20)

Dkt. 301, Civil Minutes – General, dated February 2, 2015. (Foster Dec. Ex. 21)

Dkt. 301, Civil Minutes – General, dated February 2, 2015. (Foster Dec. Ex. 21)

Dkt. 311, Intervenor and Appellant Donna J. Taylor's Notice of Appeal to the United States Court of Appeals for the Ninth Circuit, filed March 3, 2015. (Foster Dec. Ex. 22)

Dkt. 311, Intervenor and Appellant Donna J. Taylor's Notice of Appeal to the United States Court of Appeals for the Ninth Circuit, filed March 3, 2015. (Foster

---

[1] Relevant pleadings, discovery, and orders from those cases are attached as Exhibits to the Declaration of Alyson A. Foster, filed herewith. The "court may take judicial notice of adjudicative facts which are not subject to a reasonable dispute." *United States v. Elias*, No. CR-98-70-E-BLW, 2008 WL 4545192, at *5 (D. Idaho Oct. 9, 2008) (citing F.R.E. 201). "[C]ourts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings," *id.* (citation omitted), including for res judicata purposes, *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

Case 2:18-cv-00270-BMR-ECF No. 8-15 filed 09/18/18 PageID.239 Page 7
Case 1:10-cv-00404-DCN-CWD Document 437-29 Filed 09/17/18 Page 7 of 29
of 29

Dec. Ex. 22)

Dkt. 320, Proposed Stipulated Judgment as to Defendants AIA Insurance, Inc. and AIA Services Corporation, filed April 2, 2015 (Foster Dec. Ex. 5)

Dkt. 323, Order to Dismiss Complaint Without Prejudice of Defendant R. John Taylor, dated April 14, 2015 (Foster Dec. Ex. 8)

Dkt. 324, Order Regarding Proposed Stipulated Judgment as to Defendants AIA Insurance, Inc. and AIA Services Corporation, dated April 12, 2015 (Foster Dec. Ex. 6)

Dkt. 405, Civil Minutes – General, dated April 7, 2017 (Foster Dec. Ex. 9)

***GemCap Lending I, LLC v. Crop USA Insurance Agency, Inc., et al.*, No. 15-55332 (9th Cir.)**

Relevant pleadings and orders:

Dkt. 10, Appellant's Brief, filed on behalf of Intervenor-Appellant Donna J. Taylor, September 8, 2015 (Foster Dec. Ex. 23)

Dkt. 70, Memorandum, dated February 15, 2017 (Foster Dec. Ex. 24)

***Donna J. Taylor v. AIA Services. Corp.*, No. CV-2013-1075 (2d Dist. Idaho, Nez Perce County)**

Relevant pleadings and orders:

Civil Docket, printed July 18, 2018 (Foster Dec. Ex. 12)

Complaint, filed May 24, 2013 (Foster Dec. Ex. 10).

Plaintiff Donna J. Taylor's Motion to Amend and Supplement Complaint, filed February 28, 2014 (Foster Dec. Ex. 11)

Judgment, dated September 8, 2016 (Foster Dec. Ex. 13)

***Paul D. Durant, et al. v. GemCap Lending I, LLC, et al.*, No. CV-2014-01444 (2d Dist. Idaho, Nez Perce County)**

Relevant pleadings and orders:

Civil Docket, printed September 5, 2018 (Foster Dec. Ex. 19)

Verified Complaint for Declaratory Relief and Injunctive Relief, filed July 21, 2014 (Foster Dec. Ex. 14)

Answer of Defendants AIA Services Corporation and AIA Insurance, Inc., filed August 18, 2014 (Foster Dec. Ex. 15)

Case 2:18-cv-00270-BMR-ECF No. 8-15 filed 09/18/18 PageID.240 Page 8
Case 3:10-cv-00404-DCN-CWD Document 437-2 Filed 09/17/18 Page 8 of 29
of 29

Hearing on Motions, September 18, 2014 (Foster Dec. Ex. 16)

Plaintiffs' First Request for Production of Documents to GemCap Lending I, LLC, dated September 26, 2014 (Foster Dec. Ex 17)

Plaintiffs' First Request for Production to Defendants AIA Services Corporation and AIA Insurance, Inc., dated September 26, 2014 (Foster Dec. Ex. 17)

Opinion and Order on Plaintiffs' Motion to Lift Stay and Defendant GemCap's Renewed Motion to Dismiss, dated March 30, 2015 (Foster Dec. Ex. 18)

Case 2:18-cv-00270-BMR-ECF No. 8-15   filed 09/18/18   PageID.241   Page 9
Case 1:10-cv-00404-DCN-CWD   Document 197-29   Filed 09/17/18   Page 9 of 29
of 29

## INTRODUCTION

This is the fourth time a shareholder of AIA Services Corporation ("AIA Services") and its subsidiary, AIA Insurance Services, Inc. ("AIA Insurance") (together, "AIA Entities" or "AIA"), has brought a legal action to prevent GemCap from collecting for a $10 million loan that the AIA Entities guaranteed and that was never repaid. Two Idaho state courts and one California federal court already rejected these claims in earlier litigations. Indeed, the AIA Entities themselves—on whose behalf Plaintiff purportedly sues—had the opportunity to bring such a claim in *two* prior actions but did not do so: *GemCap Lending I, LLC v. Crop USA Insurance Agency, Inc.*, No. 2:13-cv-05504-SJO-MAN (C.D. Cal.) (the "California Action"), in which GemCap brought claims against (among others) the AIA Entities pursuant to the guarantee, and *Durant, et al. v. GemCap Lending I, LLC, et al.*, No. CV-2014-01444 (2d Dist. Idaho), in which Plaintiff and other AIA shareholders unsuccessfully filed claims against GemCap and the AIA Entities challenging the guarantee as *ultra vires*. Rather than challenge the Guarantee in those actions, the AIA Entities affirmatively denied all allegations of *ultra vires* in *Durant*, and, in the California Action, settled with GemCap on the first day of trial for the full amount owed. Based on that settlement, the California Court entered final judgment in GemCap's favor on April 12, 2015—nearly three and a half years ago.

At the time of that judgment, this Action had already been pending for five years, i.e. before GemCap had even entered the loan and guarantee. The original plaintiffs, Mr. Miesen and another AIA shareholder, Donna J. Taylor, had brought claims against individuals allegedly controlling the AIA Entities, as well as the outside attorneys of the AIA Entities, over entirely different alleged AIA conduct and transactions. (Dkt. 1.)[1] Now, over seven years into this

---

[1] Ms. Taylor was dismissed as a plaintiff on October 16, 2016. (Dkt. 178 at pgs. 12-13.)

Action, after three unsuccessful attempts in other courts, and despite the California final

judgment in GemCap's favor, Plaintiff expands this case to append the same claims brought in

prior actions, purportedly on behalf of the AIA Entities, challenging the enforceability of the

guarantee and settlement on which GemCap's April 2015 judgment is based. (Dkt. 211 ¶¶ 135-

159, 192-194, 225-230.) In so doing, Plaintiff asks this Court to collaterally attack the judgment

entered against the AIA Entities in the California Action. Plaintiff also claims that, despite

GemCap's judgment *against* the AIA Entities based on the guarantee and settlement, GemCap

should pay damages *to* the AIA Entities based on those contracts.

Plaintiff's claims all fail as a matter of law.

- <u>Barred by res judicata</u>. Plaintiff's claims against GemCap are barred by res judicata. Each claim is based on the same central allegation: that the AIA guarantee and the settlement with the AIA Entities are unenforceable as *ultra vires*. The AIA Entities' failure to raise these arguments in the California Action or in *Durant v. GemCap*, and the AIA shareholders' failed prior attempts to bring these claims, bar those claims here.

- <u>Barred by statute</u>. Idaho law is clear that a corporation cannot bring a derivative *ultra vires* claim against a third party like GemCap. I.C. § 30-1-304.[2] Such claims (if they exist) may only be brought against incumbent or former directors, officers, employees, or agents of the corporation. Moreover, under the Idaho Supreme Court's recent decision in *Taylor v. Taylor*, No. 44833, Slip Op. (Idaho Sup. Ct. July 27, 2018) (appended), the AIA Entities cannot use the *ultra vires* doctrine to avoid their obligations under contracts with GemCap because they already received the benefits of those contracts.

- <u>Barred on equitable grounds</u>. Even if Plaintiff's claims against GemCap were not legally defective, they must be dismissed as a matter of equity because they are untimely under the doctrine of laches. In addition, Plaintiff acting derivatively for the AIA Entities, is judicially estopped from taking the position that the guarantee and settlement are unenforceable—a position that is diametrically opposed to the AIA Entities' position in the California Action and *Durant v. GemCap*.

- <u>Lack of evidence</u>. Finally, there is no factual support (or common sense) for Plaintiff's argument that by enforcing its rights under the loan and settlement *against* the AIA Entities, GemCap was somehow "conspiring" *with* the AIA

---

[2] In 2015, the Idaho legislature renumbered this provision at I.C. § 30-29-304.

Entities.

Consequently, summary judgment should be granted in GemCap's favor on all claims.

## RELEVANT PROCEDURAL HISTORY

Plaintiff's proposed Third Amended Complaint set forth seven claims, within six counts, against GemCap: aiding and abetting breach of fiduciary duties (Count 2); fraud (Count 4); aiding and abetting fraud (Count 5); conspiracy of fraud (Count 5); declaratory judgment (Count 7); *ultra vires* (Count 8); and the Idaho Consumer Protection Act (Count 10). (Dkt. 182.) On April 21, 2017, the Court dismissed the fraud portion of Count 4, and Count 5 in its entirety, for failure to allege that GemCap made material misrepresentations to AIA or its shareholders, or facts showing that GemCap owed any fiduciary duty to AIA or its shareholders that could support a claim for fraud. (Dkt. 210 at pgs. 28-30.) On September 26, 2017, the Court dismissed five more counts as time-barred by the applicable statutes of limitations: Count 2 to the extent the breach of fiduciary duty is connected to tort rather than contract (Dkt. 263 at pg. 16); Count 5 (*id.*); Count 10 (*id.* at pgs. 16-17); Count 8 as to the Guarantee (*id.* at pgs. 17-18); and Count 7 except regarding aiding and abetting breach of fiduciary duty with respect to the Settlement (*id.* at pg. 18). What therefore remains against GemCap are claims of aiding and abetting breach of fiduciary duty (if the breach is based on tort), violation of the Idaho *ultra vires* statute, and declaratory relief with respect to the Settlement.

## ARGUMENT

## I.     All claims are barred by the doctrine of res judicata.

### A.     Legal Standards

Res judicata prevents the re-litigation of issues that were or could have been litigated in a

prior proceeding involving the same parties (or their privies) that resulted in final judgment.[3]

*Taylor v. Riley*, 157 Idaho 323, 330-33, 336 P.3d 256, 263-66 (2014); *Andrus v. Nicholson*, 145

Idaho 774, 777, 186 P.3d 630, 633 (2008); *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888,

896-97, 51 P.3d 297, 301-302 (2002).

      1.    <u>Same parties</u>. In derivative lawsuits, shareholders are in privity with each other.

*See Goldman v. Northrop Corp.*, 603 F.2d 106, 109 (9th Cir. 1979) ("Res judicata applies to the

settlement of a derivative action. The parties are the same, although represented by different

shareholders.").[4] Shareholder plaintiffs in derivative lawsuits also are in privity with the

corporation for the purpose of res judicata. As the U.S. Supreme Court has explained, in a

derivative suit, the real party in interest is the corporation. *Ross v. Berhard*, 396 U.S. 531, 583

(1970). Thus, a derivative shareholder plaintiff "step[s] into the corporation's shoes . . . to seek

in its right the restitution he could not demand on his own." *Cohen v. Beneficial Loan Corp.*, 337

U.S. 541, 548 (1949), *cited in Lewis v. Chiles*, 719 F.2d 1044, 1047 (9th Cir. 1983). Consistent

with these principles, both Idaho and California recognize that shareholder suits assert the right

of a *corporation*, where the corporation is the real party in interest and the stockholders who

bring the suit are nominal parties. *McCann v. McCann*, 138 Idaho 228, 233, 61 P.3d 585, 590

(2002) (citation omitted); I.C. § 30-29-740 ("'derivative proceeding' means a civil suit in the

---

[3] In determining the preclusive effect of a prior state court judgment, federal courts apply the law of the state in which the prior judgment was rendered. *See Matsuchita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996). Where a federal court sitting in diversity issued the precluding opinion, the court applies the preclusion rules of the state in which that court sits. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). Here, prior state court decisions were issued in Idaho and California, and the federal court in the California Action sat in diversity. The relevant res judicata principles of Idaho and California are the same in all pertinent respects.

[4] *Cf. Aruduini v. Hart*, 774 F.3d 622, 634 (9th Cir. 2014) (Nevada law); *In re Wal-Mart Stores, Inc. Delaware Derivative Litig.*, No. CV 7455-CB, 2016 WL 2908344, at *13 (Del. Ch. May 13, 2016), *supplemented*, 167 A.3d 513 (Del. Ch. 2017) (listing cases holding same).

right of a domestic corporation"); *Scarbourough v. Briggs*, 81 Cal. App. 2d 161, 166, 183 P.2d

683, 686 (1947). Courts in California explicitly recognize that, in the absence of fraud,

shareholders acting derivatively are in privity with the corporation and bound to judgments

rendered against it. *Id.*[5]

      2.   <u>Same claims</u>. "The central criterion in determining whether there is an identity of

claims between the first and second adjudications is 'whether the two suits arise out of the same

transactional nucleus of facts.'" *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714

(9th Cir. 2001). Res judicata bars not only claims actually brought in a prior action, but claims

that "could have been asserted" because they arise out of the "same transactional nucleus of

facts." *Id.*; *see also Taylor*, 157 Idaho at 333, 336 P.3d at 266; *Torrey Pines Bank v. Super. Ct.*,

216 Cal. App. 3d 813, 821, 265 Cal. Rptr. 217, 221 (1989).

**B.**    ***Donna J. Taylor v. AIA Servs. Corp.* bars Plaintiff's claims.**

      In this Nez Perce District Court action, fellow AIA shareholder Donna J. Taylor (the

original plaintiff in this case) sought to bring pursue claims against the AIA Entities to invalidate

the Guarantee as "illegal and/or *ultra vires*" because of purported violation of AIA organizing

documents and Idaho law.

      1.   <u>Same parties</u>. Although Ms. Taylor is no longer the plaintiff in this action, both

she and Mr. Miesen are shareholders of AIA and thus in privity for res judicata purposes.

*Aruduini*, 774 F.3d at 634.

      2.   <u>Same claims</u>. Ms. Taylor sought in 2014 to amend her complaint in Idaho state

---

[5] Idaho courts have not specifically ruled on the issue of privity between a derivative-acting
shareholder and the corporation, but the principles governing both res judicata and shareholder
derivative suits in Idaho and California are the same. Other courts have regularly found that
shareholders are bound by prior judgments of the corporation. *See, e.g.*, *Matter of L & S Indus.,
Inc.*, 989 F.2d 929, 934 (7th Cir. 1993) (Illinois law); *Gagnon Co. v. Nevada Desert Inn*, 45 Cal.
2d 448, 453, 289 P.2d 466, 471 (1955) (Nevada law).

Case 2:18-cv-00270-BMR-EJCN-ECF No. 8-15 filed 09/18/18 PageID.246 Page 14
Case 1:17-cv-00404-DCN-CWD Document 47-09/17/18 Page 14 of 29
of 29

court to include allegations that the AIA Entities entered the Guarantee with GemCap in
violation of the "AIA Services' amended articles of incorporation, restate[d] bylaws and the
law." (Facts[6] ¶ 26.) These allegations precisely mirror the "transactional nucleus of facts" that
Plaintiff here alleges: "The Guarantees are illegal and/or *ultra vires* because they violated AIA
Services' amended articles of incorporation, AIA's bylaws and numerous Idaho Code sections."
(Dkt. 211 ¶ 140.) Ms. Taylor could have pursued her claim challenging the Guarantee in that
action, but chose not to do so. (Facts ¶¶ 27-28.)

Ms. Taylor also could have pursued a claim in that action challenging the enforceability
of the Settlement. The crux of Plaintiff's claim here is that the AIA Entities' Guaranty is
unenforceable because it was allegedly *ultra vires*; the Settlement (and resultant Stipulated
Judgment) is the enforcement of that Guarantee. The claims therefore arise from the same
"transactional nucleus of facts" as those challenging the Guarantee. *Owens*, 244 F.3d at 714. Ms.
Taylor also had two years to pursue claims based on the Settlement. The Settlement was entered
on September 15, 2014 (Facts ¶ 16); Ms. Taylor through her counsel knew of the agreement
within days of its entry (¶¶ 33-34); and final judgment in *Donna Taylor v. AIA Services Corp.*
was not entered until September 8, 2016—almost two years after the Settlement (¶ 28). "Having
chosen to bring that lawsuit, M[s]. Taylor was required to raise every matter which might and
should have been litigated in that suit." *Taylor*, 157 Idaho at 333, 336 P.3d at 266. Because she
failed to do so, those claims are now barred.

3.   Final judgment. Final judgment was entered on September 8, 2016. (Facts ¶ 28.)

**C.** ***GemCap Lending I, LLC v. Crop USA Ins. Agency, Inc.* bars Plaintiff's claims.**

In the original lawsuit that GemCap filed in California federal court to enforce the

---

[6] "Facts" refers to the Statement of Undisputed Material Facts filed herewith.

Case 2:18-cv-00370-RMP  ECF No. 8-15  filed 09/18/18  PageID.247  Page 15
Case 1:17-cv-00404-DCN-CWD  Document 187-29  Filed 09/17/18  Page 15 of 29
of 29

Guarantee (and other aspects of the loan), both the AIA Entities and another AIA shareholder, Donna Taylor, could have raised Plaintiff's claims against GemCap. The AIA Entities were defendants. Ms. Taylor—at that time still a plaintiff in this case—attempted to intervene in the California Action to bring precisely the claims that Mr. Miesen later brought here, *see* Dkt. 178 at pgs. 12-13.) Plaintiff's claims are barred by *res judicata* because they were or should have been raised by Plaintiff's privies in the California Action and final judgment was entered.

1.      <u>Same parties</u>. As a shareholder bringing claims derivatively on behalf of the AIA Entities, Plaintiff is in privity with both other AIA shareholders and the AIA Entities, both of which brought or could have brought challenges to the Guarantee and Settlement in the California Litigation. *See supra pp.* 4-5. The AIA Entities, on whose behalf Plaintiff here brings claims, were defendants in the California Action and could have challenged the enforceability of the Guarantee and Settlement on numerous occasions but did not. (Facts ¶¶ 15, 20.) Their failure to do so is binding on Plaintiff here. (¶¶ 14-15.)[7]

Likewise, another shareholder, Ms. Taylor, did attempt to bring claims and defenses challenging the enforcement of the Guarantee and Settlement as *ultra vires*—the precise claims alleged here. (¶ 35.) Ms. Taylor sought to intervene for the explicit purpose of bringing affirmative claims challenging the Guarantee and Settlement as well as lodging an "Additional Affirmative Defense" *on behalf of the AIA Entities*, all asserting that the Guarantee and Settlement were "ultra vires, illegal, and unenforceable." (¶ 37.) Although she did not attempt to style her claims as derivative, she sought relief *for* the AIA Entities, including by seeking to present an affirmative defense on their behalves. (¶¶ 37(b).) Thus, Plaintiff here is bound by Ms.

_____

[7] *Cf. Akin v. PAFEC Ltd.*, 991 F.2d 1550, 1560-61 (11th Cir. 1993) (Georgia law) (res judicata barred shareholders in derivative action from bringing claims that corporation had failed to bring as compulsory counterclaims in prior action against the same defendant).

Case 2:18-cv-00270-RMP  ECF No. 8-15  filed 09/18/18  PageID.248  Page 16
Case 1:17-cv-00401-DCN-CWD  Document 137-29  Filed 09/17/18  Page 16 of 29
of 29

Taylor's actions in that case as well.

2.      <u>Same claims</u>. Here, Plaintiff challenges the enforceability of the Guarantee and

Settlement—claims that derive from precisely the same "transactional nucleus of facts" at issue

in the California Action: enforcement of the Guarantee and, then, the Settlement. (¶¶ 12, 20.)

The AIA Entities and the Crop Entities were represented by the same legal counsel, who had

every opportunity to challenge the Guarantee and adjudicate its validity or enforceability. (¶¶ 14-

15.) Indeed, Plaintiff's counsel admits that, during the California Action, he repeatedly

encouraged the AIA Entities' counsel to bring these claims. (¶¶ 13-15.)

Moreover, as described, another AIA shareholder—Ms. Taylor—attempted to bring these

claims through intervention and, for the benefit of the AIA Entities, to obtain a declaration that

both the Guarantee and Settlement were unenforceable as *ultra vires*. (¶ 37.) The status of the

Settlement formed the basis of the Court's determination of untimeliness, and therefore the Court

implicitly considered both the Guarantee and the Settlement in denying the motion. (¶ 40.)

Ms. Taylor appealed to the U.S. Court of Appeals for the Ninth Circuit asking that court

to determine whether the Guarantee and Settlement were "illegal, unenforceable and void

contracts as to AIA Services and AIA Insurance." (¶ 42.) The court affirmed the denial of Ms.

Taylor's motion to intervene and did not rule on the enforceability of those contracts. (¶ 43.)

In addition, after the Settlement was entered, the California court continued to exercise

jurisdiction over disputes related to the Settlement. (¶ 18.) The AIA Entities could have

challenged the enforceability of both of these agreements but did not do so. (¶¶ 13, 18.) Thus,

this Action and the California Action include the "same claims" for purposes of res judicata.

3.      <u>Final judgment</u>. The court in the California Action ordered judgment in

GemCap's favor on April 12, 2015, and it was not appealed. (¶ 17.) That judgment is binding on

Plaintiff here.

**D.     *Durant v. GemCap Lending I, LLC* bars Plaintiff's claims.**

In this second Nez Perce County District Court action, Mr. Miesen and other AIA shareholders represented by his counsel—Mr. Taylor and Paul D. Durant—sued GemCap and the AIA Entities, again to obtain a declaration that the Guarantee and Settlement are *ultra vires* because of purported violations of AIA organizing documents and Idaho law.

1.     <u>Same parties</u>. Mr. Miesen was a plaintiff in *Durant*. Although there he asserted direct, non-derivative claims, the court held that those claims were derivative in nature. (¶¶ 29-31.) Moreover, although Mr. Miesen styled his claims as non-derivative ones, he sought declaratory relief for the benefit of the AIA Entities, including a declaration that GemCap could not recover any funds from those entities under the Guarantee or any settlement. (¶ 29.) In addition, the AIA Entities were defendants in that case and could have brought the same challenge, as the claims in that case likewise challenged the enforceability of the Guarantee and Settlement. As such, Mr. Miesen was the "same party" for purposes of res judicata.

2.     <u>Same claims</u>. In *Durant*, Mr. Miesen brought claims against GemCap and the AIA Entities alleging that the Guarantee is "unlawful, illegal, void, and/or unenforceable" because it "violates AIA Services and AIA Insurance's amended articles of incorporation, bylaws and/or the law." (¶ 29.) Again, these allegations precisely mirror the allegations here. (Dkt. 211 ¶ 140.) In addition, the AIA Entities were defendants and therefore could have raised the same claim or allegation, but instead disputed the plaintiffs' allegations that those contracts were *ultra vires* or otherwise unenforceable under the AIA organizing documents. (Facts ¶ 32.)

3.     <u>Final judgment</u>. Although the *Durant* court's dismissal was without prejudice, such dismissal can have res judicata effect when "sufficiently firm to be accorded conclusive effect." *Rodriguez v. Dep't of Correction*, 136 Idaho 90, 94, 29 P.3d 401, 405 (2001). This

Case 2:18-cv-00270-DMR-ECG No. 8-15 filed 09/18/18 PageID.250 Page 18
Case 1:10-cv-00404-DCN-CWD Document 437-2 Filed 09/17/18 Page 18 of 29
of 29

occurs when the parties have been fully heard, the court issued a reasoned decision, and the decision was not appealed. *Id.* Here, the parties were fully heard in *Durant* (Facts ¶ 33) and the court issued a well-reasoned decision dismissing the claims for lack of standing and failure to bring as derivative claims. (¶ 35) Mr. Miesen did not seek to finalize and appeal that order, or to amend his complaint to bring a derivative action. (¶ 36.) The case has been closed. (*Id.*)

\*    \*    \*

In sum, res judicata bars all claims against GemCap challenging the Guarantee and Settlement, and summary judgment should be granted in GemCap's favor on that basis alone.

## II. Summary judgment should be granted on all claims because the Guarantee and Settlement cannot be challenged or set aside as *ultra vires*.

Summary judgment also should be granted in GemCap's favor because, as a matter of law, the Guarantee and Settlement cannot be found to be *ultra vires*. Plaintiff asserts two causes of action against GemCap: aiding and abetting breach of fiduciary duty and *ultra vires*.[8] The aiding and abetting claim, however, is predicated entirely on the allegation that the Guarantee and Settlement were entered without the proper corporate authority—i.e., that they were *ultra vires*. Accordingly, both claims must be dismissed because neither agreement may be found *ultra vires* as a matter of Idaho law.

Here, Plaintiff alleges that GemCap substantially assisted R. John Taylor in committing the tortious act of breaching his fiduciary duties to the AIA Entities by entering into two "illegal" agreements,[9] namely the Guarantee and the Settlement. This Court has already ruled that

---

[8] The remaining portion of Count 7, declaratory judgment, relates only to the claim for aiding and abetting breach of fiduciary duty connected to breach of contract. (Dkt. 263 at pg. 18.)

[9] An act which is beyond the scope of that authorized by the articles of incorporation is *ultra vires* under the ultra vires statute, but is not "illegal" unless it violates a statute. *See Taylor*, Slip Op. at *8-9. To the extent Plaintiff's claims allege "illegality," they also must be dismissed because Plaintiff identifies no statute violated.

Case 2:18-cv-00370-BMP-ECF No. 8-15 filed 09/18/18 PageID.251 Page 19
Case 1:17-cv-00404-DCN-CWD Document 187-29 Filed 09/17/18 Page 19 of 29
of 29

challenges to enforceability of the Guarantee are time-barred in its September 26, 2017

Memorandum Decision and Order dated Sep. 26, 2017. (Dkt. 263 at pg. 18.) Therefore,

Plaintiff's arguments must of necessity be confined to the Settlement.

**A.      Plaintiff may not bring a derivative *ultra vires* claim against GemCap.**

Plaintiff's basis for asserting an aiding and abetting claim against GemCap is that

GemCap commissioned a tort upon the AIA Entities by entering into the Guarantee and

Settlement with the AIA Entities. An *ultra vires* act is an act that is "[u]nauthorized; beyond the

scope of power allowed or granted by a corporate charter or by law." *Taylor*, Slip Op. at *9

(quoting Ultra Vires, Black's Law Dictionary 1755 (10th ed. 2014)). The Idaho Supreme Court

recently affirmed "that the doctrine of *ultra vires*, when invoked for or against a corporation,

should not be allowed to prevail where it would defeat the ends of justice or work a legal

wrong." *Id.* (citation omitted). "Especially is this true where the contract has been executed in

good faith by the party seeking to enforce it." *Id.* (citation omitted).

The Idaho *ultra vires* statute in force at the time the Guarantee and Settlement was Idaho

Code section 30-1-304:

> 30-1-304. *Ultra vires*. (1) Except as provided in subsection (2) of this section, the validity
> of corporate action may not be challenged on the ground that the corporation lacks or
> lacked power to act.
>
> (2) A corporation's power to act may be challenged:
>
> > (a) In a proceeding by a shareholder against the corporation to enjoin the act;
>
> > (b) In a proceeding by the corporation, directly, derivatively or through a receiver,
> > trustee or other legal representative, against an incumbent or former director,
> > officer, employee or agent of the corporation; or
>
> > (c) In a proceeding by the attorney general under section 30-1-1430, Idaho Code.
>
> (3) In a shareholder's proceeding under subsection (2)(a) of this section to enjoin an
> unauthorized corporate act, the court may enjoin or set aside the act, if equitable and if all
> affected persons are parties to the proceeding, and may award damages for loss, other

Case 2:18-cv-00270-BMR-ECF No. 8-15 filed 09/18/18 PageID.252 Page 20
Case 1:17-cv-00404-DCN-CWD Document 437-29 Filed 09/17/18 Page 20 of 29
of 29

than anticipated profits, suffered by the corporation or another party because of enjoining
the unauthorized act.

I.C. 30-1-304 (added 1997, ch. 366, sec. 2, p. 1094). *Ultra vires* generally must be raised as an

affirmative defense and "specially pleaded and proven." *Taylor v. Taylor*, Slip Op. at *9 (citation

omitted). Under this statute, corporate acts are presumed valid and cannot be challenged except

as enunciated by the legislature.

Because there is no attorney general action (§ 2(c)) or direct shareholder action seeking

injunctive relief (§ 2(a)), only subsection 2(b) could have any possible application here: a claim

brought by the corporation derivatively. I.C. § 30-1-304(2)(b); Dkt. 211. However, subsection

2(b) does not allow such an action to be brought against a third party such as GemCap. Under the

plain language of the statute, a corporation may only assert *ultra vires* in a derivative action

against "an incumbent or former director, officer, employee or agent of the corporation." I.C.

§ 30-1-304(2)(b). The statute allows addition of a third party only in an action brought under

subsection 2(a)—an action by a shareholder against a corporation—to ensure that "all affected

persons are parties to the proceeding" before the court enjoins or sets aside a corporate act. I.C.

§ 30-1-304(2)(a). (The court also must ensure that the third party is compensated for any losses

caused by an enjoinment or set aside. *Id.*) This is not, however, an action by a shareholder

against a corporation; it is a derivative action brought on behalf of the corporation. Accordingly,

Plaintiff cannot bring an *ultra vires* claim against GemCap.

The Idaho Supreme Court's recent decision in *Taylor v. Taylor*—wherein a corporation

(AIA) raised *ultra vires* as a defense—illustrates the logic of this legislative structure.[10] The

court explained that a corporation cannot escape its obligations under a contract by asserting it

---

[10] This Idaho Supreme Court case is another AIA lawsuit brought by Plaintiff's counsel on
behalf of Ms. Taylor.

lacked the authority to enter it:

> The 1995 Letter Agreement was entered into in good faith by competent parties, and AIA received the benefit of the agreement in that it allowed AIA the opportunity to reorganize. AIA cannot now assert *ultra vires* to "escape the consequences of this contract[.]"

Slip Op. at *10 (citing *Power Cty. v. Evans Bros. Land & Live Stock Co.*, 43 Idaho 158, 168, 252 P. 183, 184 (1926)). Allowing a corporation acting derivatively to "escape the consequences of [a] contract" with a third party would defeat this principle. *Id.* The legislature's limitation on the avenues for derivative assertion of *ultra vires* is designed to uphold it.

Accordingly, because this Action does not qualify under any of the three enumerated proceedings in which a corporation's power to act may be challenged, the validity of the AIA Entities' decision to enter into the Guarantee and the Settlement are presumptively valid and are not subject to legal challenge.

**B.      The Guarantee and Settlement cannot be deemed an *ultra vires* act of the AIA Entities because they directly benefitted from both agreements.**

Even if those agreements were *ultra vires*, the AIA Entities cannot, through a derivative claim, escape their enforcement. In *Taylor v. Taylor*, the Idaho Supreme Court held that, even though the contract at issue there, a stock agreement between the shareholder and the corporation that allowed AIA to reorganize, was in fact not authorized by the corporate articles of incorporation and was therefore *ultra vires*, it was still enforceable. Slip Op. at * 9 ("Because the 1995 Letter Agreement was an ultra vires act, rather than an illegal act, the 1995 Letter Agreement is enforceable.") (citing I.C. § 30-1-7). A contrary result would allow AIA to "receive[] the benefit of the agreement" but "escape [its] consequences." *Id.* at *9-10.

This holding corresponds with long-held equitable principles of Idaho law, which finds it unfair for a party who has reaped the benefits of an agreement to later challenge its validity through a claim of *ultra vires*. *Taylor*, Slip Op. at *9-10; *Power Cty.*, 43 Idaho at 168, 252 P. at

184; *Fremont Cty. v. Warner*, 7 Idaho 367, 370, 63 P. 106, 107 (1900) ("the defendants were competent parties, and, having received the benefits of the contract, they are now estopped from setting up the defense of ultra vires."). The Idaho Supreme Court long ago held that "the doctrine of *ultra vires*, when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong." *Power Cty.*, 43 Idaho at 166, 252 P. at 183. In other words, when a corporation enters into business relations not authorized by its corporate grant of power, the doctrine of *ultra vires* cannot be used by it or by the person with whom it assumes to deal as a means of defeating the obligations assumed. *Id.* A party who has received the benefit of a contract is estopped from asserting a defense *ultra vires* against the contract. *Taylor*, Slip Op. at *9-10.

Here, Plaintiff asserts its claims against GemCap as a derivative action on behalf of the AIA Entities. Because Plaintiff stands in the shoes of the AIA Entities, the AIA Entities through Plaintiff cannot challenge the enforceability of the Guarantee after having signed it (Facts ¶ 3), having confirmed its enforceability through independent legal opinion letters (¶ 3), having reaped substantial benefits through use of the GemCap loan proceeds (¶ 10), having participated in the California Action (¶¶ 12-15), and having settled that litigation through a Stipulated Judgment for the sums due and owing under the Guarantee (¶¶ 16-19). It would be inequitable (and likely against public policy) to promote default by debtors by declaring their debt invalid as *ultra vires*. Consistent with Idaho law governing *ultra vires* relief, neither the AIA Entities nor shareholders on behalf of them may circumvent their obligations to GemCap by invoking a claim of *ultra vires*. *E.g.*, *Taylor*, Slip Op. at *9 (citation omitted) ("competent parties who have received the benefit of the contract are estopped from asserting a defense of *ultra vires*").

In sum, the AIA Entities received the benefit of the loan proceeds expended by GemCap,

Case 2:18-cv-00270-RMP  ECF No. 8-15  filed 09/18/18  PageID.255  Page 23
Case 1:17-cv-00404-DCN-CWD  Document 137-09/17/18  Page 23 of 29
of 29

and received the benefit of the Settlement as well, having received a dismissal from that action.

They cannot now attempt to escape their obligation to repay them. Summary judgment should

therefore be entered on all claims.

**III.    Summary judgment should be granted under equitable principles.**

    **A.    Plaintiff's claims fail under the doctrine of laches.**

 "Laches is an equitable time limitation on a party's right to bring suit," resting on the

maxim that "one who seeks the help of a court of equity must not sleep on his rights." *Jarrow*

*Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002) (citations omitted). To

prove laches, the "defendant must prove both an unreasonable delay by the plaintiff and

prejudice to itself." *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1226 (9th Cir.

2012). Summary judgment may be granted under the doctrine of laches where no question of fact

exists on unreasonable delay and prejudice. *Id.*

    The doctrine of laches applies to *ultra vires* claims. *Ultra vires* is available as relief to a

shareholder (in a direct action against the corporation) only where application or diversion of the

assets of the corporation are to a purpose that is beyond its objects or the powers conferred upon

it by its charter, or any unauthorized surrender of rights or property by it. *See Ultra vires or*

*illegal acts—General rules*, 12B Fletcher Cyc. Corp. § 5823. Such relief is in equity. *Id.*; *see also*

*Taylor*, Slip. Op. at *9.

    A party seeking to challenge a corporate decision on the basis of *ultra vires* "requires the

utmost vigilance and promptitude." *Zabriskie v. Cleveland, Ohio, C.C. & C.R. Co.*, 64 U.S. 381,

389-90 (1859). Vigilance to ensure corporate compliance is the duty of the corporation. *Id.*

Where such vigilance is not exercised and third parties are harmed, no relief is available. *Id.* ("If

they neglect this, they, and not innocent third persons, must suffer the consequence of their

laches."). Therefore, lack of vigilance is a defense a shareholder action to set aside corporate acts

as *ultra vires*. *Baker v. Spokane Sav. Bank*, 71 F.2d 487, 492-93 (9th Cir. 1934).

Requisite vigilance has been called by many names throughout the years, including laches, equitable estoppel, and other names. In one of the earliest iterations of the doctrine, a federal district court in the Ninth Circuit refused the relief of *ultra vires* to the shareholders because they did not act with diligence. *Symmes v. Union Tr. Co. of New York*, 60 F. 830, 863-64 (C.C.D. Nev. 1894) ("We suppose acquiescence or tacit assent to mean the neglect to promptly and actively condemn the unauthorized act, and to seek judicial redress, after knowledge of the committal of it, whereby innocent third parties have been led to put themselves in a position from which they cannot be taken without loss."). The court recognized that protection against the consequences of an *ultra vires* act must be sought with sufficient promptness to enable the court to do justice without doing injustice to others. *Id.* Underpinning this jurisprudence is the gravity of injustice which follows from unwinding the parties' actions and transactions—and adjudications—late in the game. *Symmes*, 60 F. at 855-56.

Even in modern times, this requirement of vigilance or diligence persists. In *Antoine L. Garabet, M.D., Inc. v. Autonomous Techs. Corp.*, 116 F. Supp. 2d 1159 (C.D. Cal. 2000), plaintiffs filed antitrust claims months after they had become aware of the underlying act at issue, a corporate merger. *Id.* at 1172. The court found that plaintiffs' claims were barred by laches because they were aware of an impending transaction, and even had threatened suit, yet delayed filing suit for several month. *Id.* In so holding, the court held that the costs and complexities of unwinding a merger may be considered in evaluating prejudice to the affected parties: "Moreover, the practical difficulty, if not impossibility, of unscrambling and returning the intermingled assets of the merged Long Beach and Equitable associations, would be seriously prejudicial to Equitable." *Id.* at 1173.

The present case illustrates starkly the reasons for vigilance in pursuing *ultra vires* claims. All that has transpired since the Guarantee was signed demonstrates the "practical difficulty" and prejudice "of unscrambling" the transfer of assets and subsequent proceedings that have occurred. GemCap extended millions of dollars in loan proceeds to Crop USA, which was then transferred to and used by the AIA Entities. (Facts ¶¶ 9-10.) The AIA Entities became involved in a lawsuit, which proceeded to trial and settled, and a judgment was entered against them. (¶¶ 12-19.) Material aspects of the Settlement have already been undertaken, including the sale of real property to third parties, all under the supervision of the judge in the California Action. (¶ 21.) All these events transpired between the date the Guarantee was executed in October 2012 and Plaintiff's filing of the Third Amended Complaint in April 2017.

The obvious prejudice occasioned by Plaintiff's delay also arises from the more than two years between when the AIA Entities entered into the Settlement with GemCap and the filing of the Third Amended Complaint, during which time the final judgment against the AIA Entities was entered in the California Action. Plaintiff's failure to seek to intervene into the California Action for 18 months was sufficient for both the judge in the California Action and the Ninth Circuit to determine that Plaintiff unreasonably delayed asserting these claims at an earlier point in the litigation. (Facts ¶¶ 40, 43); *Evergreen*, 697 F.3d at 1226.

In sum, allowing the AIA Entities through Plaintiff to challenge a Guarantee and Settlement that have already been reduced to a judgment, under which GemCap already has commenced collection, would create unreasonable prejudice to GemCap (and others). Accordingly, this Court should hold that Plaintiff's lack of diligence in pursuing these claims earlier in the proceeding bars him from asserting those claims now.

Case 2:18-cv-00270-RMP-ECF No. 8-15 filed 09/18/18 PageID.258 Page 26
Case 1:19-cv-00404-DCN-CWD Document 437-29 Filed 09/17/19 Page 26 of 29
of 29

### B.    Plaintiff, on behalf of the AIA Entities, is judicially estopped from challenging the enforceability of the Guarantee and Settlement.

Summary judgment also should be granted because Plaintiff, acting here on behalf of the AIA Entities, cannot pursue a position that contradicts the AIA Entities' position in prior litigation. Judicial estoppel applies when a party takes inconsistent positions in legal proceedings. Although judicial estoppel generally "bars only inconsistent positions taken by the same party in two different matters," courts have invoked the doctrine to bar parties who stand in privity to another litigant. *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 996-98 (9th Cir. 2012). When determining whether judicial estoppel applies, courts consider (i) whether the positions are "clearly inconsistent"; (ii) whether the party succeeded in persuading a court to accept the earlier position such that judicial acceptance of a later inconsistent position would create a perception that either the first or second court was misled; and (iii) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (citations omitted).[11]

Here, any allegation of unenforceability regarding the underlying Guarantee and Settlement has been presented for adjudication in the past and cannot be contradicted now. Plaintiff, standing in the shoes of the AIA Entities, attempts to claim that the Guarantee and Settlement are unenforceable. In direct contradiction, the AIA Entities as defendants in the California Action took the position that the Guarantee and Settlement were valid. They never challenged the enforceability or validity of the Guarantee, refused to bring an affirmative defense of *ultra vires*, and ultimately acknowledged the validity by entering into a stipulated settlement

---

[11] Federal law governs the application of judicial estoppel in federal court. *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 603 (9th Cir. 1996).

Case 2:18-cv-00270-BMR-ECF No. 8-15 filed 09/18/18 PageID.250 Page 27
Case 1:17-cv-00404-DCN-CWD Document 187-09/17/18 Page 27 of 29
of 29

before the court. (¶¶ 14-16.) Likewise, the AIA Entities as defendants in *Durant* denied the

plaintiff's allegation, and refuted the claim, that the Guarantee and Settlement were

unenforceable as *ultra vires*. (¶ 32.) The AIA Entities have never challenged the enforceability or

validity of the Settlement, and instead have taken the position that the agreement does not violate

the AIA governing documents or law.

The prior courts accepted and relied on those positions. Indeed, the court in the California

Action accepted the terms of the Settlement when the AIA Entities (and other parties) entered

them on the record, entered a stipulated judgment based on it, and continued to exercise

jurisdiction over disputes related to it. (¶¶ 17-20.) Allowing the AIA Entities, through Plaintiff,

to pursue a contrary position would create the perception that the California court was wholly

misled by the AIA Entities about the validity and enforceability of the Guarantee and Settlement.

In sum, Plaintiffs are judicially estopped from asserting contradictory positions in this

Action. Summary judgment should be granted in GemCap's favor for this reason as well.

## IV.    All claims against GemCap must be dismissed due to an utter lack of evidence.

Finally, even if summary judgment were not warranted on the grounds explained above,

summary judgment should be granted because there are insufficient facts from which a jury

could find in Plaintiff's favor. Under Idaho law, liability based on aiding and abetting a

tortfeasor occurs when an abettor (a) commits a tortious act in concert with the other or pursuant

to a common design with him, (b) knows that the other's conduct constitutes a breach of duty

and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives

substantial assistance to the other in accomplishing a tortious result and his own conduct,

separately considered, constitutes a breach of duty to the third person. Restatement (Second) of

Torts § 876 (1979); *see also Helgeson v. Powell*, 54 Idaho 667, 682, 34 P.2d 957, 963 (1934);

*Todd v. Sullivan Const. LLC*, 146 Idaho 118, 125, 191 P.3d 196, 203 (2008). For liability to

attach, some plan of cooperation to commit a tort must have occurred. Conversely, where no

such intent or plan exists, liability cannot attach. The Restatement further clarifies that

tortfeasors act in concert when they act in accordance with an agreement, whether explicit or

implied, to cooperate in a particular line of conduct or to accomplish a particular result. *See*

Restatement (Second) of Torts § 876 (1979).

Here, there is not a scintilla of evidence of record, or even in existence, that GemCap had

any intent or plan, implied or express, to cooperate with John Taylor, the AIA Entities, or their

counsel to commission any unauthorized or improper act. In fact, the terms of the Guarantee and

the Settlement clarify that GemCap's interests demanded that valid and actionable contracts be

established so that GemCap's interests can be protected. (Facts ¶¶ 4-5.) GemCap obtained

multiple opinion letters of borrower's counsel confirming the corporate validity of the

Guarantee, as well as an officer's certificate and board resolution confirming the same. (¶¶ 6-7.)

With respect to the Settlement, the terms of that were placed on the record and the AIA Entities,

represented by counsel at that hearing, confirmed those terms. (¶ 17.)

In contrast, Plaintiff has been unable to derive any evidence that establishes or suggests a

conspiring act or requisite knowledge or intent on the part of GemCap to promote a breach of

duty by an officer of the AIA Entities. Consequently, the Plaintiffs' claims of aiding and abetting

must be dismissed for lack of evidence. *See* Fed. R. Civ. P. 56(c) (summary judgment movant

may meet burden by pointing to lack of evidence); *Fairbank v. Wunderman Cato Johnson*, 212

F.3d 528, 531 (9th Cir. 2000) (same).

## CONCLUSION

For the foregoing reasons, summary judgment should be granted in GemCap's favor on

all claims.

Case 2:18-cv-00270-RMP   ECF No. 8-15   filed 09/18/18   PageID.261   Page 29
Case 1:17-cv-00404-DCN-CWD   Document 137-2   Filed 09/17/18   Page 29 of 29
of 29

DATED this 17th day of September, 2018.   **ANDERSEN SCHWARTZMAN**
**WOODARD BRAILSFORD, PLLC**

/s/ Alyson A. Foster
Alyson A. Foster
Attorneys for Defendant GemCap Lending I, LLC