**EXHIBIT 10**

**TO**

**DECLARATION OF ALYSON A. FOSTER**

FILED
2013 MAY 24 AM 9 26
PATTY O. WEEKS
CLERK OF THE DISTRICT COURT
[signature]
DEPUTY

RODERICK C. BOND, ISB No. 8082
RODERICK BOND LAW OFFICE, PLLC
800 Bellevue Way NE, Suite 400
Bellevue, WA 98004
Tel: (425) 591-6903
Fax: (425) 321-0343
Email: rod@roderickbond.com
Attorney for Plaintiff

IN THE DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF NEZ PERCE

| | |
|---|---|
| DONNA J. TAYLOR,<br><br>Plaintiff,<br><br>v.<br><br>AIA SERVICES CORPORATION, an Idaho corporation; R. JOHN TAYLOR; CONNIE TAYLOR HENDERSON; JAMES BECK; and MICHAEL W. CASHMAN, SR.,<br><br>Defendants. | Case No.: **CV13 01075**<br><br>**COMPLAINT**<br><br>Category: A<br>Fee: $96.00<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Donna J. Taylor, by and through her attorney of record, submits this Complaint alleging and, to the extent necessary, pleading in the alternative as follows:

### I. PARTIES, JURISDICTION AND VENUE

1. Plaintiff Donna J. Taylor ("Donna Taylor") is a resident of Clarkston, Asotin County, Washington.

2. Defendant AIA Services Corporation (AIA Services Corporation, together with its past and present subsidiaries are collectively referred to as "AIA Services") is an Idaho corporation with its principal offices located in Lewiston, Nez Perce County, Idaho.

COMPLAINT - 1

3.  Defendant R. John Taylor ("John Taylor") is an individual residing in Lewiston, Nez Perce County, Idaho. John Taylor has been a member of the board of directors of AIA Services since it was founded.

4.  Defendant Connie Taylor Henderson ("Connie Taylor") is an individual residing in the state of Washington.

5.  Defendant James Beck ("Beck") is an individual residing in the state of Minnesota, who transacts business in Idaho.

6.  Defendant Michael W. Cashman, Sr. ("Cashman") is an individual residing in the state of Minnesota, who transacts business in Idaho.

7.  Cashman, Beck, Connie Taylor and John Taylor are collectively referred to in this Complaint as the "individual defendants". When Donna Taylor refers to the foregoing "individual defendants" in this Complaint, she is alleging that more than two or more or all of the "individual defendants".

8.  Damages in this action exceed $10,000 and the defendants conduct business and/or reside in Nez Perce County, Idaho. Jurisdiction and venue are appropriate in Nez Perce County District Court. *See e.g.,* I.C. § 5-404; I.C. §5-514.

9.  This is not a derivative action and Donna Taylor will not be asserting any derivative claims in this lawsuit.[1] Donna Taylor is asserting the direct claims and requested relief in this lawsuit strictly for her own personal benefit, as the Series A Preferred Shareholder of AIA Services. To the extent that Donna Taylor is successful in obtaining personal liability from the

---

[1] Donna Taylor has a pending derivative lawsuit in United States District Court in Idaho under Case No. 1:10-cv-00404-MLB. Although she will continue to attempt pursue derivative claims in that lawsuit, the case has been presently stayed pending the resolution of *Taylor v. Riley, et al.*, a wholly unrelated case wherein Reed Taylor is pursuing negligence based claims against the authors of an opinion letter given to Reed Taylor in connection with the illegal purchase of his shares in AIA Services. *See Taylor v. Riley,* 2012 WL 7985412. That lawsuit will not resolve any of the claims or issues subject to this lawsuit nor will it recovery any money for AIA Services or its minatory shareholders.

COMPLAINT - 2

individual defendants in this lawsuit, she will be benefiting the innocent minority shareholders of AIA Services and participants of the AIA Services 401(k) Plan—all of whom have been cheated out of their fair share of the corporate assets, opportunities and funds by and through the defendants' acts and omissions.

10. AIA Services, by and through the individual defendants, initiated a lawsuit against Donna Taylor and thirteen other shareholders of AIA Services in Nez Perce County District Court under Case No. CV-12-01483. Judge Kerrick dismissed that lawsuit wherein he ruled that the fourteen shareholders of AIA Services had complied with Idaho Code when they objected to the reverse stock split sought by AIA Services (which was really sought, upon information and belief, by and through the individual defendants). Judge Kerrick ruled that issues pertaining to the amount owed to Donna Taylor for her Series A Preferred Shares should be determined in the case *Donna Taylor v. John Taylor, et al.*, Nez Perce County District Court Case No. CV-08-01150.

11. Based upon Judge Kerrick's order granting summary judgment to the defendants in CV-12-01483 (one of whom was Donna Taylor), Donna Taylor will move to consolidate this lawsuit with Nez Perce County District Court Case No. CV-08-01150 (AIA Services, Beck and Cashman are not parties to that lawsuit).

## II. FACTUAL BACKGROUND

### A. Background On Donna Taylor's Series A Preferred Shares.

12. On December 14, 1987, Reed and Donna Taylor executed the Property Settlement Agreement for their divorce. Under the terms of that Agreement, Reed and Donna Taylor contributed their controlling interest in AIA Insurance, Inc. and other entities to AIA Services in exchange for 200,000 Series A Preferred Shares and 5,963 additional common shares in AIA

COMPLAINT - 3

**FOSTER DEC. EX. 10 pg. 3**

Services. Under the terms of Reed and Donna Taylor's Property Settlement Agreement, the 200,000 Series A Preferred Shares were transferred to Donna Taylor.

13. On December 29, 1987, AIA Services' Amended Articles of Incorporation were filed with the Idaho Secretary of State to protect the rights and interests of the Series A Preferred Shareholders (which was and only has been Donna Taylor) and to impose restrictions upon AIA Services.

14. On December 2, 1993, Donna Taylor exercised her right to require her Series A Preferred Shares to be purchased; however, AIA Services elected to purchase her shares at the price of $10 per share over 15 years with interest to accrue at the prime rate minus one and one-half percent (1.5%).

15. On January 11, 1995, AIA Services agreed to accelerate the purchase of Donna Taylor's Series A Preferred Shares by purchasing them over 10 years, with an upward adjustment to the interest rate of prime interest rate plus one-quarter percent (prime plus .25%). That Agreement was authorized by, and AIA Services was authorized to use capital surplus to purchase Donna Taylor's Series A Preferred Shares as provided in I.C. § 30-1-6, AIA Services Amended Articles of Incorporation.

16. On March 22, 1995, Cumer Green, on behalf of Donna Taylor, and Richard Riley, on behalf of AIA Services, confirmed that Donna Taylor's shares would be redeemed on that ten-year amortization schedule, or 107 more payments commencing on February 1, 1995. This confirmed that under the terms of the January 11, 1995 Agreement Donna Taylor's Series A Preferred Shares were required to be purchased no later than on or before December 1, 2003.

17. On July 18, 1995 and August 10, 1995, respectively, AIA Services and Donna Taylor agreed to other modified terms, although none of the modifications changed the ten-year

COMPLAINT - 4

amortization period or interest rate agreed to in the January 11, 1995 Agreement.

18. Almost one year later, on July 1, 1996, Donna Taylor and AIA Services executed the Series A Preferred Shareholder Agreement. The Series A Preferred Shareholder Agreement was drafted by AIA Services' counsel. Donna Taylor was not represented by counsel at that time. Under the terms of that Agreement, AIA Services confirmed that it would continue to purchase Donna Taylor's Series A Preferred Shares in accordance with the January 11, 1995 Agreement and AIA Services further agreed to accelerate payments to Donna Taylor through the Series A Preferred Shareholder Agreement by paying her an additional $100,000 every six months after Reed Taylor's $1.5 million down payment note was paid (which was paid in full in 2001), but she never received a single additional $100,000 payment as required.

19. On February 21, 2008, John Taylor testified that Donna Taylor was owed $443,478.47 in principal on her Series A Preferred Shares. On June 24, 2008, John Taylor wrote to Donna Taylor advising her that payments would be suspended to her. John Taylor admitted that the payments were suspended in retaliation for her filing a lawsuit against him for a personal guarantee of over $100,000 of the sums owed to her.

20. Despite Donna Taylor allowing AIA Services, John Taylor and Connie Taylor almost five years to pay her since the last payment, Donna Taylor has not received a payment since May 30, 2008. On February 11, 2013, Donna Taylor wrote to AIA Services demanding payment in full, providing notice of acceleration and advising that she would not consent to the purchase of any common shares. Donna Taylor received no response to that letter and no payments were made by AIA Services.

21. The amount due to her as of June 6, 2013 is at least $492,346.54. The amount owed is governed by and confirmed through the unambiguous Series A Preferred Shareholder

COMPLAINT - 5

Agreement, and, to the extent that Agreement is successfully challenged, Donna Taylor's contractual rights revert back to previously executed Agreements, including the January 11, 1995 Agreement.

22. AIA Services and the individual defendants are expected to assert that the Agreements that they engineered and approved requiring the purchase of Donna Taylor's shares were illegal because the purchase of Reed Taylor's shares was illegal (the purchase that the individual defendants engineered and effectuated through AIA Services) and that Donna Taylor's rights revert back to the Amended Articles of Incorporation. Under this theory, AIA Services has already asserted that Donna Taylor is owed at least approximately $82,000. Thus, there is no dispute that Donna Taylor is owed a significant sum of money under any theory.

23. Despite numerous demands for payment, AIA Services and the individual defendants have refused to pay her the sums owed to purchase her remaining Series A Shares as required.

24. Despite having not paid Donna Taylor, AIA Services and the individual defendants have conspired to transfer millions of dollars from AIA Services for their benefit. For example, in recent years AIA Services has loaned Pacific Empire Radio Corporation (an entity partially owned and controlled by John Taylor and Connie Taylor) over $700,000 when such loans were barred by AIA Services' Amended Articles of Incorporation and engaged in other acts discussed below.

25. AIA Services and the individual defendants have intentionally and blatantly refused to complete the purchase of Donna Taylor's Series A Preferred Shares as required. AIA Services and the individual defendants have intentionally and blatantly acted in bad faith, vexatiously, maliciously, and in complete disregard for Donna Taylor's contractual rights and the

COMPLAINT - 6

provisions under AIA Services' Articles of Incorporation which were enacted to protect her.

B. <u>Background On the Operation of AIA Services and Unlawful Acts</u>.

26. From 1995 through the present time, John Taylor and Connie Taylor were majority shareholders of AIA Services' common shares.

27. From 1995 through the present time, John Taylor has been President and a director of AIA Services. As an officer and direct of AIA Services, John Taylor owes elevated fiduciary duties to Donna Taylor. John Taylor is a shareholder or part owner of at least one Idaho entity that has been the recipient of funds, assets and trade secrets which were unlawfully derived from AIA Services and/or its subsidiaries.

28. From 2007 to the present time, Connie Taylor has been a member of the board of directors of AIA Services. Connie Taylor is a co-owner of shares in AIA Services with John Taylor. Connie Taylor is a shareholder or part owner of at least one Idaho entity that has been the recipient of funds, assets and trade secrets which were unlawfully derived from AIA Services and/or its subsidiaries.

29. From 2007 through the present time, Beck has been a member of the board of directors of AIA Services. Beck was previously on the board of AIA Services for several years starting in 1995. Beck is or has purported to have been a shareholder of AIA Services from at least 1995 through 2012. Beck is a shareholder or part owner of at least one Idaho entity that has been the recipient of funds, assets and trade secrets which were unlawfully derived from AIA Services.

30. Cashman was previously on the board of AIA Services for several years starting in 1995. Cashman is or has purported to have been a shareholder of AIA Services from at least 1995 through 2012. Cashman is a shareholder or part owner of at least one Idaho entity that has

COMPLAINT - 7

been the recipient of funds, assets and trade secrets which were unlawfully derived from AIA Services.

31. While they were shareholders and/or directors of AIA Services, John Taylor, Connie Taylor, Beck and Cashman owned interests in other entities that received money, loans, services, trade secrets and other assets from AIA Services in violation of their fiduciary duties and in violation of AIA Services' Amended Articles of Incorporation and Bylaws.

32. During times in which Beck, Cashman and/or Connie Taylor were not members of the board of directors, they were involved with, or aided in, making decisions for AIA Services and/or acquiesced in decisions made by others, including John Taylor.

33. From 1995 through the present time, the individual defendants have unlawfully operated AIA Services for their benefit, failed to comply with AIA Services' Restated Bylaws, failed to comply with AIA Services' Amended Articles of Incorporation, failed to conduct annual shareholder meetings, failed to provide full disclosure to shareholders and have operated AIA Service in complete disregard of its corporate structure.

34. In 1995, the individual defendants desired to redeem Reed Taylor's shares to obtain control of AIA and bring in a new management team to shift AIA Services' focus to selling other products. To carry out this new plan, the individual defendants sought to purchase Reed Taylor's shares in AIA Services through a leveraged stock redemption.

35. The individual defendants entered into a voting agreement to ensure that they maintained control over AIA Services.

36. In a 1995, John Taylor and Connie Taylor (both attorneys licensed to practice law from 1995 through the present time) became the majority shareholders in AIA Services.

COMPLAINT - 8

FOSTER DEC. EX. 10 pg. 8

37. Since obtaining operational and financial control of AIA Services in 1995, the individual defendants have engaged in the following unlawful acts in disregard of AIA Services' corporate structure, its Amended Articles of Incorporation, Restated Bylaws and proper and lawful corporate governance: (a) ownership of CropUSA Insurance Agency, Inc. ("CropUSA") was transferred from AIA Services; (b) AIA Services subsidized CropUSA and other entities; (c) none of John Taylor's compensation was allocated to CropUSA; (d) there was over $500,000 of identified expenses paid by AIA Services that were never allocated or billed to CropUSA; (e) CropUSA was capitalized with over $1.5 Million cash from AIA Services in just one of many transfers of assets; (f) AIA Services guaranteed a $15 Million loan for CropUSA for no consideration; (g) CropUSA's sale of $10 Million in assets that were derived from AIA Services; (h) AIA Services purchased over $400,000 of shares in Pacific Empire Radio Corp. ("PERC") and then transferred those shares to John Taylor and Connie Taylor; (i) AIA Services transferred a $95,000 receivable owed by PERC to CropUSA; (k) AIA Services has loaned PERC over $700,000 in recent years in violation of AIA Services' Articles of Incorporation; (l) AIA Services has provided labor and services at no cost for other entities owned by the individual defendants; (m) AIA Services has paid millions of dollars in excessive compensation to John Taylor and Connie Taylor in exchange for receiving nothing in return; (n) AIA Services was illegally paying millions of dollars to present and former common shareholders to purchase their shares and/or make payments on those purchases; (o) John Taylor and Connie Taylor purchased a parking lot, using AIA's line-of-credit, and promptly increased the $5,000 yearly rent paid by AIA Services to $15,000 per year; (p) AIA Services purchased vehicles from John Taylor; (q) attempt to effectuate a reverse stock split and termination of the ESOP to eliminate those shareholders in violation of AIA Services' Amended Articles of Incorporation; and (r) engaged

COMPLAINT - 9

Case 2:18-cv-00370-RMP-ECS No. 9-11 filed 09/13/18 PageID 561 Page 11
Case 1:10-cv-00404-DCN-CWD Document 440-11 Filed 09/17/18 Page 11 of 16
of 16

in other acts and/or omissions that were illegal, unlawful and/or violated AIA Services' Articles of Incorporation and Restated Bylaws.

38. Many of the acts and omissions set forth in the foregoing paragraph occurred during times in which AIA Services was not current on its obligations to Donna Taylor.

39. By their own admissions, the individual defendants have operated AIA Services for their own benefit with complete disregard for AIA Services' corporate structure and the interests of the Series A Preferred Shareholder.

40. After taking millions of dollars from AIA Services, the individual defendants now seek to deprive Donna Taylor of the sums rightfully owed to her. Under the circumstances of this case, the individual defendants should be liable for all sums owed by AIA Services under the doctrines of alter-ego and piercing the corporate veil.

41. However, even if AIA Services and the individual defendants are successful in reducing the amount owed to Donna Taylor, the individual defendants are liable for the difference based upon their breach of fiduciary duties, aiding and abetting breach of fiduciary duties and/or unjust enrichment for improperly operating AIA Services to deprive Donna Taylor of the sums rightfully owed to her. To this day, the individual defendants could have and should have taken all necessary corporate acts to comply with AIA Services' obligations to Donna Taylor.

### III. FIRST CAUSE OF ACTION – BREACH OF CONTRACT
(Against AIA Services Only)

42. Donna Taylor re-alleges and incorporates each and every allegation contained in other paragraphs of this Complaint necessary to support this cause of action.

43. AIA Services owed Donna Taylor contractual obligations under the Series A Preferred Shareholder Agreement and/or the previously executed Agreements (including the

COMPLAINT - 10

January 11, 1995 Agreement) and/or AIA Services' Amended Articles of Incorporation to purchase and/or redeem Donna Taylor Series A Preferred Shares in AIA Services and make certain payments to her and other obligations. AIA Services has breached its contractual obligations owed to Donna Taylor, including, without limitation, the obligations to timely pay her and to purchase and/or redeem her shares.

44. AIA Services, Beck, Cashman, John Taylor and Connie Taylor were and are required to comply with AIA Services' Amended Articles of Incorporation and owe Donna Taylor contractual obligations to comply with the Amended Articles of Incorporation; and they have breached those contractual obligations by, among other things, loaning money to other parties, attempting to or taking corporate action in violation of AIA Services' in violation of those Articles and failing to appoint Donna Taylor's designee to the Board of AIA Services.

45. As a direct and/or proximate result of foregoing breaches, Donna Taylor has been damaged, and, is therefore entitled to judgment and/or relief on this claim in an amount to be proven at or before trial. Donna Taylor also requests specific performance and/or injunctive relief of AIA Services' obligations.

## IV. SECOND OF ACTION – BREACH OF FIDUCIARY DUTIES
### (Against Individual Defendants Only)

46. Donna Taylor re-alleges and incorporates each and every allegation contained in other paragraphs of this Complaint necessary to support this cause of action.

47. Beck, Cashman, John Taylor and/or Connie Taylor owe and/or owed fiduciary duties to Donna Taylor, which include, but are not limited to, the duty of loyalty, duty of care and duty to deal in good faith. Beck, Cashman, John Taylor and/or Connie Taylor have breached their fiduciary duties owed to Donna Taylor.

COMPLAINT - 11

48. As a direct and/or proximate result of Beck, Cashman, John Taylor and/or Connie Taylor's acts and/or omissions, Donna Taylor has been damaged, and, is therefore entitled to judgment and/or relief on this claim in an amount to be proven at or before trial.

## V. THIRD CAUSE OF ACTION – AIDING AND ABETTING BREACH OF FIDUCIARY DUTIES
### (Against Individual Defendants Only)

49. Donna Taylor re-alleges and incorporates each and every allegation contained in other paragraphs of this Complaint necessary to support this cause of action.

50. Beck, Cashman, John Taylor and/or Connie Taylor have intentionally aided, assisted, covered up, and encouraged the individual defendants and/or other parties in breading their fiduciary duties owed to Donna Taylor. Beck, Cashman, John Taylor and/or Connie Taylor's acts and/or omissions constitute aiding and abetting in the breach of fiduciary duties of other parties, including the individual defendants.

51. As a direct and/or proximate result of Beck, Cashman, John Taylor and/or Connie Taylor's acts and/or omissions, Donna Taylor has been damaged, and, is therefore entitled to judgment and/or relief on this claim in an amount to be proven at or before trial.

## VI. FOURTH CAUSE OF ACTION – UNJUST ENRICHMENT
### (Against Individual Defendants Only)

52. Donna Taylor re-alleges and incorporates each and every allegation contained in other paragraphs of this Complaint necessary to support this cause of action.

53. Beck, Cashman, John Taylor and Connie Taylor have been conferred the benefit by Donna Taylor of obtaining operational and financial control over AIA Services. Through that conferred benefit, Beck, Cashman, John Taylor and Connie Taylor have looted AIA Services to their benefit and to the detriment of Donna Taylor. It would be unjust to allow Beck, Cashman, John Taylor and Connie Taylor to retain the benefits without justly compensating Donna Taylor.

COMPLAINT - 12

As a result, Beck, Cashman, John Taylor and Connie Taylor liable to Donna Taylor under the theory of unjust enrichment.

54. As a direct and/or proximate result of the acts and/or omissions of Beck, Cashman, John Taylor and Connie Taylor, they have been unjustly enriched and Donna Taylor has been damaged, and, is therefore entitled to judgment and/or relief on this claim in an amount to be proven at or before trial.

### VII. FIFTH CAUSE OF ACTION – DECLARATORY RELIEF/SPECIFIC PERFORMANCE

55. Donna Taylor re-alleges and incorporates each and every allegation contained in other paragraphs of this Complaint necessary to support this cause of action.

56. Donna Taylor requests a declaratory judgment and/or specific performance against the defendants, to the extent necessary, to grant her the relief requested in this Complaint (including, without limitation, a declaratory judgment ordering the defendants to comply with AIA Services' Bylaws, Amended Articles of Incorporation (and to rescind/revoke/void unlawfully filed Amendments thereto and any stock purchases made in violation of the Amended Articles of Incorporation), contractual obligations, and to compel the purchase of Donna Taylor's remaining Series A Preferred Shares) and/or such relief as may be requested at or before trial.

### VIII. PRAYER FOR RELIEF

WHEREFORE, Donna Taylor prays for the following relief:

1. For a judgment against AIA Services for all sums owed to Donna Taylor in an amount to be proven at or before trial, plus prejudgment and post judgment interest;

2. For a judgment against John Taylor, Connie Taylor, Beck and Cashman, jointly and severally, in an amount to be proven at or before trial, plus prejudgment and post judgment interest;

COMPLAINT - 13

3. For judgment against AIA Services compelling it to purchase and/or redeem Donna Taylor's remaining Series A Preferred Shares;

4. For judgment against the individual defendants compelling them to purchase and/or redeem Donna Taylor's remaining Series A Preferred Shares;

5. For a judgment finding that John Taylor, Connie Taylor, Beck and Cashman are the alter-egos of AIA Services, its subsidiaries and/or that their corporate veil should be pierced requiring John Taylor, Connie Taylor, Beck and Cashman to be personally liable for all sums and damages owed by AIA Services to Donna Taylor and for judgment to be entered against them in the amount to be proven at or before trial, plus prejudgment and post judgment interest;

6. For a judgment barring AIA Services, Beck, Cashman, John Taylor and Connie Taylor from effectuating a reverse stock split, voiding the termination of the ESOP and voiding the Amending Articles of Incorporation filed on July 17, 2013;

7. For a judgment of any other declaratory relief requested and/or contemplated by the allegations in this Complaint and/or otherwise sought or requested at or before trial based upon the facts and circumstances of this case;

8. For a preliminary and permanent injunction against AIA Services, Beck, Cashman, John Taylor and Connie Taylor barring them from effectuating a reverse stock split until this lawsuit has concluded and all sums owed to Donna Taylor for her Series A Preferred Shares have been paid in full;

9. For a preliminary and permanent injunction seeking any temporary relief requested by Donna Taylor based upon the facts and circumstances of this case;

10. For an award of prejudgment interest based upon the statutory rate of 12% because the Agreements requiring the purchase of Donna Taylor's shares do not specify an

COMPLAINT - 14

interest rate after the obligations matured;

11. For an award of compound interest because sums have been intentionally, vexatiously and maliciously withheld from Donna Taylor;

12. For an award of attorneys fees and costs incurred in this action pursuant to Idaho Law, including, without limitation, I.C. § 12-120 and/or I.C. § 12-121; and

13. For such other relief that Donna Taylor may request at or before trial and/or such relief as the Court deems just and equitable.

DATED this 24th day of May, 2013.

RODERICK BOND LAW OFFICE, PLLC

By: _____
Roderick C. Bond
Attorney for Donna J. Taylor

## IX. DEMAND FOR JURY TRIAL

Donna J. Taylor demands a trial by jury of not less than twelve (12) on all claims and damages so triable.

DATED this 24th day of May, 2013.

RODERICK BOND LAW OFFICE, PLLC

By: _____
Roderick C. Bond
Attorneys for Donna J. Taylor

COMPLAINT - 15