**EXHIBIT 16**

**TO**

**DECLARATION OF ALYSON A. FOSTER**

```
                                                                    1

 1      THE DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT

 2        STATE OF IDAHO IN AND FOR THE COUNTY OF NEZ PERCE

 3
        PAUL D. DURANT, et al.,           )
 4                                        )
                    Plaintiffs,           )
 5                                        )
        vs.                               )Case No. CV14-1444
 6                                        )
                                          )
 7      GEMCAP LENDING, LLC, et al.,      )
                                          )
 8                  Defendants.           )
        _____    )
 9

10
                          HEARING ON MOTIONS
11

12

13
                         SEPTEMBER 18, 2014
14

15

16

17
                THE HONORABLE JEFF BRUDIE, PRESIDING
18                         DISTRICT JUDGE

19

20

21

22

23

24

25
```

 ORIGINAL

**FOSTER DEC. EX. 16 pg. 1**

2

```
 1                    A P P E A R A N C E S

 2

 3      FOR THE PLAINTIFF:      Mr. Roderick C. Bond
                                Attorney at Law
 4                              800 Bellevue Way, NE Ste 400
                                Bellevue, Washington 98004
 5

 6      FOR THE DEFENDANT:      Mr. Thomas A. Banducci
        GEMCAP                  ANDERSON BANDUCCI, PLLC
 7                              101 S. Capitol Blvd, Ste 1600
                                Boise, Idaho 83702
 8
        FOR THE DEFENDANT:      Mr. John Taylor
 9      AIA                     Attorney at Law
                                P.O. Box 538
10                              Lewiston, Idaho 83501

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

```
 1                         I N D E X
 2                                                    Page
 3     September 18, 2014, Motion Hearings              4
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## Page 4

1  (September 18, 2014, 9:05 a.m.)
2  THE COURT: Good morning. We are on the
3  calendar this morning on a number of matters in
4  Case No. CV 2014-1444. This is entitled Paul Durant
5  and other Plaintiffs versus GemCap Lending, AIA
6  Services Corporation, AIA Insurance and AIA Services
7  Corporation. This matter was filed back in July and
8  has recently been the subject of many court filings.
9  On calendar this morning was first of all
10 Plaintiff's Motion for Partial Summary Judgment that
11 was originally filed seeking a short setting that
12 was denied by the Court, so it was noticed for
13 today's date. Also on calendar this morning are
14 motions from the Defendant GemCap Lending seeking
15 either dismissal or alternatively a stay of these
16 proceedings which arise evidently out of some
17 ongoing litigation in the State of California
18 between GemCap Lending and AIA.
19 There's also a motion from GemCap to
20 strike certain exhibits that Mr. Bond had presented
21 as part of the declaration of documents in support
22 of the partial summary judgment.
23 And, lastly, a request from GemCap for
24 this court to take judicial notice of, I think,
25 basically the related litigation in the State of

## Page 5

1  California.
2  Mr. Bond is present representing the
3  plaintiffs in these -- in this matter, Mr. Taylor is
4  present representing AIA.
5  MR. BANDUCCI: Your Honor, my name is
6  Tom Banducci. I'm here representing GemCap.
7  THE COURT: I believe we may have met,
8  Mr. Banducci, in Boise.
9  MR. BANDUCCI: I believe so, your Honor.
10 THE COURT: Mr. Banducci is present
11 representing GemCap.
12 Well, I have had the opportunity to review
13 the various filings information that's been
14 presented for purposes of today's hearing. I think
15 what I'm going to do, Mr. Banducci, I think probably
16 the most primary matter I have to address is whether
17 I am going to stay these proceedings, so that's the
18 first motion I'm going to take up at this time. It
19 was alternatively stated in your motion to either
20 dismiss or to stay the proceedings, so I will hear
21 from you first on that motion.
22 MR. BANDUCCI: Yes, your Honor. And, I
23 believe, although I do not have specific information
24 regarding the status of the California litigation, I
25 do understand that there has been some sort of

## Page 6

1  understanding reached, but I have not been able to
2  receive detailed information from California counsel
3  that represents GemCap. It may be that Mr. Bond or
4  Mr. Taylor has more information with respect to that
5  that may be of interest to this Court when it
6  relates to a stay.
7  If the Court has questions with respect to
8  the stay, that portion of our motion that relates to
9  the stay, I'd be happy to address them at this
10 point, otherwise I have just a few comments on top
11 of the briefing that is already before you.
12 THE COURT: Go ahead.
13 MR. BANDUCCI: Your Honor, this has been --
14 we have requested a stay here because the matter in
15 California relates to the enforcement of the
16 guarantee. The matter in California assumes that
17 the guarantee is enforceable. And I believe, as I
18 said a moment ago, that that matter has been
19 resolved, but I apologize to the Court, this is just
20 happened and I do not have what that resolution has
21 turned out to mean or, as is the case in many
22 circumstances, documents need to be drafted and
23 understandings need to be flushed out in those
24 documents.
25 Irrespective of the status of the

## Page 7

1  California litigation, should this Court allow this
2  matter to go forward, it would effectively create an
3  enormous potential for inconsistencies between
4  what's going on in California and what's going on in
5  Idaho.
6  This portion of our motion, this Motion to
7  Stay has been characterized as simply a 12(b)(8)
8  motion. That is not the case. What we have here --
9  12(b)(8), of course, is a motion to dismiss cases
10 pending in other courts that are substantially
11 similar nature involving the same parties, can be
12 dismissed under 12(b)(8). That's not what we are
13 asking for here. What we are asking for is a stay
14 because if the Court does not stay the proceedings,
15 what will happen here is a battle over the
16 enforceability of an agreement where enforcement is
17 assumed in California.
18 Now, the conundrum that the Plaintiffs
19 claim they have, which is that they need to have
20 resolution of the issue of enforceability here in
21 this matter before you, is a dilemma that they have
22 created for themselves. They are very well aware of
23 the California litigation and certainly could have
24 sought to intervene as parties to that litigation
25 under Rule 24.

**Page 8**

The debate regarding enforceability arises out of the same nucleus of facts and I'm not going to go into the standards for permissive and mandatory joinder. I'm sure the Court is well aware of those.

But the fact is that the Plaintiffs have chosen to sit on their rights to intervene and have now sought to kind of divide and concur. And that's not fair and that, frankly, is a waste of this Court's judicial resources and, frankly, creates potential for inconsistent decisions, rulings between this Court and the Federal Court in California. And so for that reason alone, your Honor, the Court has discretion to stay the matter. There is no question about that.

For that reason alone, your Honor, a stay should be granted so that this matter as it has proceeded for many months now in California, may come to completion. If this matter is resolved in California and judgment is entered, then the Plaintiffs may intervene into the California proceeding and try to set aside the judgment, that's their choice, or perhaps they may choose to intervene saying we didn't know about this action and we should have intervened sooner. That's their

**Page 9**

choice.

But to come into Idaho courts and challenge a contract which from GemCap's prospective is a debate between the shareholders who should be acting on behalf of the corporation or should be bringing this action derivatively, and the management of the board of directors of AIA is not GemCap's fight and it should not be brought separately here in Idaho.

If the Court has no further questions, I'm finished with that argument.

THE COURT: No, I understand. Thank you Mr. Banducci.

Mr. Bond.

MR. BOND: First of all, the Motion to Stay is brought under 12(b)(8), and what I think is really telling is the standard under 12(b)(8), as I go over in the briefing, is are my clients party to the California litigation, no; are they in privity with parties of that case, no.

Now, yeah, was intervention, could have that been a possibility, yes, but it's my client's position that the California court only has jurisdiction because of the illegal contract that says California has jurisdiction. For my clients to

**Page 10**

intervene in California, would be to give a fact to an illegal contract. The true jurisdiction is here, this is where AIA's property is, this is where AIA's incorporated. This is the true place.

And with respect to Counsel's argument that there is some obligation to intervene which no authority for that proposition, I do have authority. And AMJUR -- 59 Am Jur 2d, Parties, 156, quote, "There is no duty of mandatory intervention imposed upon nonparties. The Court cannot command a person to become an intervenor in a suit in which the person is neither a party nor is served. An intervention statute or rule imposes no duty to intervene; and a failure to intervene, works no estoppel." And there's cases that are in the notes that I will reply upon as well, but that ends that analysis. Like my clients have some obligation to go there.

The second point is --

THE COURT: Well, all right, I will agree with you that there is no obligation to go there, but it's an option, right? It was a means available to your client; correct?

MR. BOND: I mean, yeah, there's always options, I think, to sue them separately in

**Page 11**

California. They could have, you know -- you know, but that requires as well to go and seek California counsel, which I am not licensed in California, at a huge burden to them, and that's not fair to them. It's not fair to them at all. And that they have been struggling for years while the money goes from AIA out the door. But 12(b)(8) -- and what's important, your Honor, I have attached the pleadings, there's no dispute. I referenced the California action in the Complaint.

What do the pleadings show us, the issue of the legality is not being litigated there, it's the white elephant in the room. GemCap knew it was illegal when they entered into it. John Taylor knew it was illegal. John Taylor and AIA isn't asserting that as a defense in California; why, because that would mean John would be on the hook for that much more money. They want AIA on the hook.

GemCap, they did litigation reports, they knew about all this stuff. But they took the guarantee anyway, and they had copies of the articles of incorporation. It's attached to Mr. Ellis' declaration. He can't hardly say, "I didn't know." It --

THE COURT: Well, okay, you are off point

**Page 12**

again. All right.

MR. BOND: Well, the issue, your Honor, is what is stay going to do. So, I guess, what a stay would do is wait for the case to resolve in California. And let's just assume it results in a judgment; and then what do you do, then you lift the stay or you say we have to go sue them in California, or we have to go intervene in California. That goes against the -- then you are requiring my clients to intervene.

THE COURT: No, I'm not necessarily saying that they have to intervene. I don't think I would say that. That that's their only means of bringing a resolution, I don't think I would say that they have to go intervene.

MR. BOND: Well, there's going to be a ten million dollar judgment if that goes to trial and there's a judgment obtained, AIA has nothing close to satisfy that.

So then GemCap goes, they start executing, they start seizing property, and then we come back here and say, Well, your Honor, we need help or we go to -- I mean the issue is this court in Idaho has the -- this is a contract that involves Idaho law, Idaho corporation, Idaho law applies, and

**Page 13**

that's for this Court to decide, not a California court.

And this court can enter an order today on this issue and it's over, it's over for GemCap. But they knew when they took the guarantee, it was problematic. No sophisticated lender could look at the documents and say, We are relying on this.

And that would resolve the issue, your Honor, and that's what -- that's what we are here to say.

THE COURT: Well, I doubt that, Mr. Bond. I doubt that.

MR. BOND: Issue of legality. So the quandary I'm in -- I could see the point. Okay. If they were over here asserting, Hey, Counsel for AIA Services in California is asserting the same argument. They are trying to challenge the legality of it. Then I would say, okay, there could be some inconsistent results, but there's not because nobody is challenging that. And I have attached all of the pleadings, there's no mention of it. Nobody's addressing it. And as Mr. Banducci states, which I think is dispositive, it's assumed that it's enforceable over there.

The only issue in California is the

**Page 14**

original loan for Crop USA in default. That's what they are litigating. If that's found to be the case, then the guarantee is there, AIA Services is then road kill along with AIA Insurance because they are looking at a ten million plus dollar judgment at 24 percent interest is what it's been accruing.

And so what are my clients left to do and I -- I personally struggle with this on what to do, your Honor. I mean I didn't like -- my clients didn't like having to come and -- come back with another court, I mean there's enough going on already, but what are they supposed to do, let the judgment get entered, AIA be devastated and destroyed and gone, and then they are left with nothing. And that's the dilemma.

And so Rule 12(b)(8) just simply doesn't apply here. It just doesn't. You can't even -- and I would point out that the judgment in California, even if one was obtained, there is no jurisdiction. AIA doesn't do business in California. They have them as in that case based upon a jurisdiction consent in the contract. Any judgment would be void. But to go and make that argument to that court, I think we need the finding that it's illegal. They kind of work together.

**Page 15**

So to me if -- even if we were going to go to California to go attack it, we need the finding that it's illegal by the Court that's supposed to render that finding. And I think it's -- if we get to the motion, your Honor, I mean, it's -- granted, I asserted a couple of issues, but we don't even have to get to most of them. There's one real narrow issue that it's cut and dry that they couldn't do the guarantee.

So I just would urge that your Honor not stay this case. It's just not going -- it's going to prejudice my clients. If you have any questions, your Honor, I'm happy to -- I mean I know this is complicated --

THE COURT: Well, it is. It's an unusual situation. This litigation gets filed in July when evidently the GemCap and Crop USA litigation has been pending in California at least since 2013. I'm sure -- I'm sure you have thought it through on your available options, Mr. Bond, but I just have to tell you that I'm uncomfortable with somebody coming to me asking me to make an order that potentially impacts ongoing litigation in another jurisdiction, especially to do it on this kind of schedule that this matter has followed. So that's kind of where

### Page 16

1 I'm at.
2 Mr. Banducci, anything else?
3 MR. BANDUCCI: No, your Honor. The only
4 thing that I'm hearing is that what Mr. Bond is
5 suggesting is that our system here between the State
6 and Federal Courts would allow litigants to come
7 into one state and challenge another district's
8 decision, Federal Court District's decision or
9 entertaining of a case.
10 Mr. Bond just said something I think is
11 really very significant, he said the Federal
12 District Court has no jurisdiction. If that's true,
13 then they should have gone in and protected their
14 rights and argued no jurisdiction of Federal Court,
15 this puts it -- this Court in a very difficult spot
16 because now you are not only ruling in a way that
17 may supersede what's going on in the Federal Court,
18 but you are also perhaps being put in place to tell
19 the Federal Court that it's -- doesn't have
20 jurisdiction over this matter.
21 These are all matters that should have
22 been brought up to the Federal District Court. It's
23 not mandatory that you intervene, but woe unto you
24 if you want to show up in another court, ask another
25 judge to do something, and you haven't protected

### Page 17

1 your rights before the court where this is all going
2 on.
3 And so the Plaintiff's here asking you to
4 do an impossible thing, or at least a very dangerous
5 thing all at the expense of the Defendants. And
6 this Court has the discretion to stay this matter.
7 And certainly it is not an abuse of this Court's
8 discretion to stay this matter pending the outcome;
9 and then when that matter is resolved, however it is
10 resolved, then a challenge, since it wasn't made
11 before, can be made then.
12 And, your Honor, that's all I have. Thank
13 you very much.
14 THE COURT: Mr. Taylor, I'm not sure if
15 you wanted to illuminate this Court as to anything
16 that's gone on in the State of California on that
17 pending litigation.
18 MR. TAYLOR: Your Honor, I can say that the
19 trial has been canceled, and that we have an outline
20 of a stipulated judgments -- of judgments -- or
21 excuse me, of settlement which includes stipulated
22 judgments, and those will be worked out in the next
23 30 days and filed. And the case -- the case is
24 expected to be dismissed in California.
25 THE COURT: So the matter was set to start

### Page 18

1 trial earlier this week?
2 MR. TAYLOR: Yes.
3 THE COURT: Did it get under way or was it
4 resolved prior to even beginning?
5 MR. TAYLOR: It was resolved 38 minutes
6 before the trial started.
7 THE COURT: All right.
8 MR. TAYLOR: Mr. -- your Honor, I would
9 like to -- may I speak?
10 THE COURT: Go ahead.
11 MR. TAYLOR: You know, I concur with
12 Mr. Banducci's remarks, but I think it is
13 appropriate that this you -- that this case be
14 dismissed as filed by Mr. Banducci -- or by GemCap's
15 Counsel.
16 Let me say that there are -- this is --
17 there are two other cases that have been
18 consolidated in this court, what I could refer to as
19 the Donna consolidated case. In that case the same
20 plaintiff has asked for and mentioned in its filings
21 this particular case, and that's the subject matter
22 of a jury -- of a trial next June set by your Honor.
23 Secondly, your Honor, you are well aware
24 that this -- that the same defendant, this same
25 plaintiffs have filed a derivative action in Federal

### Page 19

1 Court challenging the authority of AIA generating
2 any type of guarantee including the predecessor loan
3 on this transaction, and that has been stayed
4 pending the outcome of the case that's in Lewiston.
5 Your Honor, this is the 13th time these
6 Defendants -- these Plaintiffs have filed a claim
7 against either AIA, myself, our attorneys or
8 advisors including in one case their own attorney.
9 And the facts and circumstances of subject matter of
10 this case has been identified in two other cases
11 that are still pending and they should resolve in
12 those cases. So we would support the Motion for
13 Dismissal.
14 MR. BOND: Your Honor, may I briefly
15 address Mr. Taylor's comments?
16 THE COURT: Go ahead.
17 MR. BOND: First of all, I object that
18 Mr. Taylor on behalf of AIA even joining GemCap's
19 motion.
20 I would also think that since Mr. Taylor
21 is here, maybe your Honor could ask him more about
22 what the terms of the settlement are so that we know
23 what is the deal, what is going to happen. I mean
24 they inferred that I know something. I don't
25 represent any of the parties to that litigation,

## Page 20

1  Mr. Banducci does, Mr. Taylor knows all the details,
2  so what is going on?
3  　　　As far as the other lawsuits go, yes, in
4  Donna's personal lawsuit this loan has been
5  mentioned but mentioned because of just proof that
6  the unlawful conduct going on. She's not taken any
7  action to have a loan invalidated.
8  　　　As far as the Federal Court case, that
9  case was stayed pending the outcome of Taylor V
10 Riley which now is going to be resolved as to those
11 parties, so that -- that case would be lifted
12 obviously, the stay. But it's irrelevant because it
13 involves all facts pre-dating what we are talking
14 about here.
15 　　　I think it's -- it seems to me
16 your Honor's inclined to stay the case. There is
17 nothing I can probably say or do to change your mind
18 on that. I'm doing the job that I have to do for my
19 clients, and I don't think anything will be resolved
20 by staying the case. They just admitted there is a
21 settlement, so that means there is not going to be a
22 California case, so it's going to be a judgment or
23 whatever it is. Well, what are my clients supposed
24 to do next?
25 　　　THE COURT: Mr. Bond, I'm not faulting you

## Page 21

1  for using this option that was available to you
2  also. I'm not faulting you for that. But you are
3  asking me to make a decision. Okay. And with
4  everything that is in the air at this point in time,
5  I'm unwilling to make that decision and potentially
6  have to undue it later. I'm just not willing to do
7  that.
8  　　　I think this is rushed for whatever
9  reason. I mean it was filed here in July, I
10 understand that, I'm sure you thought it through and
11 you made the decision to not pursue any intervention
12 in the State of California. I don't think that was
13 required. I think it was an option, very
14 inconvenient, expensive, I'm sure, for your clients,
15 so I'm not faulting you for looking at different
16 options that were available to you and your clients.
17 　　　At this point in time I'm only aware of
18 the status of the California litigation through what
19 Mr. Taylor's informed me of which is that it's no
20 longer being tried and evidently is reached
21 resolution that is inevitably going to require some
22 pretty substantial documentation, I presume.
23 　　　Depending upon what those documents
24 indicate, Mr. Bond, there may very well be a time
25 when something becomes relevant for this Court to

## Page 22

1  determine along the lines that you are seeking. I'm
2  just not willing to do it at this point. I think I
3  want this litigation, like all litigation, to
4  proceed in an ordinarily fashion, and I just do not
5  want to act in haste. It may or may not be
6  necessary, I may reach that point, but at this point
7  in time the Motion for Stay is going to be granted.
8  　　　MR. BOND: Your Honor, could I add one
9  quick thing?
10 　　　THE COURT: Go ahead.
11 　　　MR. BOND: Could you condition that on
12 John Taylor and GemCap submitting the documentation
13 for any settlement to the Court and to my clients,
14 or at minimum to the Court under seal and to my
15 clients so that we know what is happened and where
16 and -- I mean otherwise it's just going to, you
17 know, where is the end? What do we do?
18 　　　THE COURT: I understand what you are
19 asking.
20 　　　Mr. Banducci, what's your position on
21 that?
22 　　　MR. BANDUCCI: Your Honor, my immediate
23 reaction is that personally I have no objection to
24 that; but, again, I didn't negotiate this. I don't
25 know what the agreements were between the parties

## Page 23

1  relative to confidentiality, and so I can't -- I
2  certainly can't bind my client to an agreement.
3  　　　In that regard, I assume that all of these
4  matters are subject to being compelled under law if
5  there is a need to. So it would seem to me --
6  　　　THE COURT: That's my thought.
7  　　　Mr. Bond, I think the -- I think it would
8  be discoverable for purposes --
9  　　　MR. BOND: Where though, the case --
10 　　　THE COURT: Right here. Okay.
11 　　　MR. BOND: So I can still pursue discovery
12 on that --
13 　　　THE COURT: You can still pursue discovery
14 as to that limited issue, the terms of the agreement
15 of any settlement. If Defendants wish to express
16 any objection to that being provided as part of the
17 litigation, I'll certainly hear that; but I will
18 allow you to continue during the pendency of the
19 stay, you will be allowed to pursue discovery as to
20 the terms of the settlement agreement in the State
21 of California -- excuse me, the Federal litigation
22 in California.
23 　　　MR. BOND: Your Honor, could -- so would
24 that include, just to be clear, could we get the
25 information regarding what they knew and the due

24

1  diligence and all that into the loan so that we have
2  -- we know whether they knew about this before?
3      THE COURT: No, it's going to be pursuant
4  of the settlement agreement --
5      MR. BOND: Okay. Okay.
6      THE COURT: -- itself.
7      MR. BOND: Okay. Thank you.
8      THE COURT: Then we will decide how much
9  further we have to go once that's determined.
10     Mr. Banducci, it was your motion, I would
11 like you to pursue an order granting the motion to
12 stay, and also include that the stay does not extend
13 to Mr. Bond's ability to pursue discovery as to the
14 terms of the settlement in the California
15 litigation.
16     MR. BANDUCCI: I will. Thank you,
17 your Honor.
18     THE COURT: All right. Thank you,
19 Counsel. We are in recess.
20     (Hearing concluded at 9:35 a.m.)
21
22
23
24
25

**FOSTER DEC. EX. 16 pg. 9**

25

1  REPORTER'S CERTIFICATE

2

3  I, Linda L. Carlton, a Certified Shorthand
4  Reporter, do hereby certify;
5  That the testimony and all objections made
6  were recorded stenographically by me and were
7  thereafter transcribed by me or under my direction;
8  That the foregoing is a true and correct
9  record of all testimony given to the best of my
10 ability;
11 That I am not a relative or employee of any
12 attorney or of any of the parties, nor am I
13 financially interested in the action.
14 Dated this 8TH day of January,
15 2015.

16
17
18
19
20
21
22 *Linda L. Carlton*
   LINDA L. CARLTON, C.S.R., #336
23 Official Shorthand Reporter
   Second Judicial District
24 Of the State of Idaho

25

**FOSTER DEC. EX. 16 pg. 10**