**EXHIBIT 21**

**TO**

**DECLARATION OF ALYSON A. FOSTER**

```
                         UNITED STATES DISTRICT COURT              Priority        ___
                         CENTRAL DISTRICT OF CALIFORNIA             Send           ___
                                                                    Enter          ___
                            CIVIL MINUTES - GENERAL                 Closed         ___
                                                                    JS-5/JS-6      ___
                                                                    Scan Only      ___
```

CASE NO.: **CV 13-05504 SJO (MANx)**          DATE: **February 2, 2015**

TITLE:     **Gemcap Lending I LLC v. Crop USA Insurance Agency Inc. et al.**

========================================================================
PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz                                  Not Present
Courtroom Clerk                                   Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**               **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                       Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER DENYING DONNA J. TAYLOR'S MOTION TO INTERVENE** [Docket No. 291]

This matter is before the Court on Donna J. Taylor's ("Movant") Motion to Intervene ("Motion"), filed January 8, 2015. Plaintiff Gemcap Lending I, LLC ("Gemcap") filed an opposition to the Motion ("Gemcap Opposition") on January 16, 2015. The same day, Defendants Crop USA Insurance Agency, Inc. ("Crop Agency") and Crop USA Insurance Services ("Crop Services"), LLC (collectively, "Crop USA"), AIA Insurance, Inc. ("AIA Insurance") and AIA Services Corp. ("AIA Services") (collectively, "AIA"), and R. John Taylor ("Taylor") jointly filed a second opposition to the Motion ("Crop Opposition"). Movant filed a Reply on January 23, 2014. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for February 9, 2015. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **DENIES** the Motion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Gemcap is an asset-based commercial lender that provides loans to small to medium-sized businesses. (Pl.'s *Ex Parte* Appl. for Entry of J. & Release of Enjoined Funds ("Appl.") 3, ECF No. 278; Decl. of William E. Adams in Supp. of [Gemcap Opp'n] ("Williams Decl.") ¶ 2, Ex. A ("Ellis Decl.") ¶ 3, ECF No. 295-1.) Defendant Crop USA is a general insurance agent that sells multiple peril crop insurance, a federally subsidized insurance product that protects against the risk of crop failure or the collapse in commodity prices. (Appl. 3; *see also* Ellis Decl. ¶ 4.) Defendant Taylor is the managing member of Crop Services and the president of Crop Agency. (Appl. 3; Decl. of R. John Taylor in Supp. of [Crop Opp'n] ("Taylor Decl.") ¶ 2, ECF No. 296-1.) Taylor is also the president of AIA Services and its subsidiary AIA Insurance, which are in the business of health care insurance. (Appl. 3; Taylor Decl. ¶¶ 3-4.) AIA and Crop USA are both Idaho corporations that run their business operations out of the same building in Lewiston, Idaho. (Appl. 3; *see also* Taylor Decl. ¶ 4; [Movant's]: (1) Additional Affirmative Defenses to

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: CV 13-05504 SJO (MANx)        DATE: February 2, 2015

Second Am. Compl.; and (2) Intervenor-Compl. for Decl. J. & Inj. Relief ("Movant's Compl.") ¶¶ 2-3, ECF No. 291-3.)

In 2011, Taylor approached Gemcap seeking a commercial loan for Crop USA. (Appl. 3-4; Ellis Decl. ¶ 4.) On November 23, 2011, Gemcap and Crop USA entered into a loan agreement for a $5 million revolving loan facility (the "Loan Agreement"). (Appl. 4; Movant's Compl. ¶ 8; Ellis Decl. ¶ 6.) On October 1, 2012, Gemcap, AIA, and Taylor entered into a security agreement for the purpose of guaranteeing the Loan Agreement up to $10 million. (Mot. 2-3, ECF No. 291-1; *see generally* Second Am. Compl. ¶ 49, ECF No. 102, Ex. 7 (the "Guarantee" or "Guarantee Agreement"), ECF No. 102-2.) The was Guarantee executed by Gemcap, AIA Services, and AIA Insurance, and signed by Taylor in his capacity as president of the AIA entities. (*See generally* Guarantee.)

On July 30, 2013, Gemcap filed the instant action alleging that the defendants, including Taylor, Crop USA, and AIA, had breached the Loan Agreement. (Appl. 5; *see generally* Compl., ECF No. 1.) The matter proceeded to trial on September 12, 2014. (Appl. 5; *see also* Mins. of Pretrial Conference & Trial, ECF No. 271.) On September 15, 2014, before their opening statements to the jury, Gemcap, Crop USA, AIA, and Taylor (collectively, the "Parties") reached a confidential settlement agreement (the "Settlement Agreement"). (Appl. 5; *see also* Mins. of Trial ("Trial Mins."), ECF No. 272; Term Sheet Regarding Settlement Between GemCap Lending I, LLC and Crop USA Insurance Agency Inc., John Taylor, et al. (the "Term Sheet"), ECF No. 273[1].) Thus, the case settled between all remaining parties on September 15, 2014, and any disputes between the Parties adjudicated in this Court since that time, (*see, e.g.,* ECF Nos. 278-283, 288), have pertained to the terms of the Settlement Agreement.

Movant, the ex-wife of Taylor's brother, filed the instant Motion to Intervene on January 8, 2015. (*See generally* Mot.; Taylor Decl. ¶ 5). In the Motion, Reply, and attached exhibits, Movant alleges the following. Movant is the owner of 41,651.25 Series A Preferred Shares (the "Shares") in AIA Services. (Movant Compl. ¶ 7; Decl. of Donna J. Taylor in Supp. of [Mot.] ¶ 3 ("Movant Decl."), ECF No. 298-1.) Movant has held the AIA Shares since 1987, but has not received payment on the Shares since May 30, 2008. (Movant Compl. ¶ 7; Movant Decl. ¶ 3.) The Shares have a principal value of $416,512, not including interest. (Movant Compl. ¶ 7; Movant Decl. ¶ 3.)

Movant maintains that she has never been asked to consent, nor would she consent, to AIA entering into the Guarantee agreement with Gemcap and on behalf of Crop USA. (Movant Decl.

---

[1] Because the terms of the Parties' Settlement Agreement are confidential, the Term Sheet, as well as the transcript of the hearing in which the terms were discussed, (ECF No. 270), were placed under seal.

Case 2:13-cv-00270-RMP ECF No. 233 filed 02/13/18 PageID.1021 Page 4
Case 2:13-cv-05504-SJO-MAN Document 318 filed 02/13/15 Page 3 of 8 Page ID #:6233 of 9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 13-05504 SJO (MANx)    DATE: February 2, 2015

¶ 5; Movant Compl. ¶ 21.) Additionally, Movant did not receive notice of a shareholder meeting to approve the execution of the Guarantee. (Movant Decl. ¶ 6.) Finally, Movant states that she has never been asked to consent, nor would she consent, to the Settlement Agreement between the Parties, including AIA, which she alleges effectively renders her shares in AIA Services worthless. (Movant Decl. ¶¶ 5-6.)

In the Motion and accompanying exhibits, Movant argues the following. First, AIA's execution of the Guarantee Agreement violated AIA Services' amended articles of incorporation (the "Articles") because Crop USA is not a wholly owned subsidiary of AIA and therefore AIA Services could not execute a guarantee or incur indebtedness on Crop USA's behalf. (Mot. 1, 3-6; Movant Compl. ¶¶ 16, 18.) Second, even if the Guarantee was authorized under certain provisions of the Articles, the Guarantee is separately illegal because it was not approved at a meeting or in writing by all directors appointed to AIA Service's board of directors. (Mot. 6; *see* Movant Compl. ¶¶ 23-25.) In this vein, Movant argues that because she was blocked from exercising her right to appoint a director to the board, the board was not properly constituted, and any board actions taken during this time, including the execution of the Guarantee, were unlawful. (Mot. 6-7; Movant Compl. ¶ 24; *see also* Decl. of Paul D. Durant in Supp. of [Mot.] ¶¶ 4, 7, ECF No. 298-2.) Third, Gemcap was aware, or should have been aware through the exercise of reasonable due diligence, that AIA could not lawfully enter into the Guarantee Agreement. (Mot. 6; *see, e.g.,* Compl. ¶¶ 10, 20, 25.) Because the execution of the Guarantee does not comport with the parameters set out in the Articles, Movant argues that it also violates several provisions of the Idaho Code governing Idaho corporations, effectively rendering the Guarantee "illegal and unenforceable." (Mot. 3-4, 6-8; *see* Compl. ¶¶ 17, 23, 32.)

Additionally, Movant contends that as the sole preferred shareholder of AIA Services, she has a substantial interest in preventing the multimillion dollar Settlement Agreement from being entered against AIA Services and its subsidiary AIA Insurance based on the allegedly unlawful Guarantee Agreement. (*See* Mot. 1, 11-14; Compl. ¶¶ 14, 30.) She also argues that the Court should permit her to intervene in this action because her separate lawsuit challenging the legality of the Guarantee, filed in Idaho state court (the "Idaho Action"), was stayed on September 18, 2014, pending resolution of this matter. (Mot. 10, 12; Decl. of Roderick C. Bond in Supp. of [Mot.] ("Bond Decl.") ¶ 8, Ex. 6 4, ECF No. 291-2.)

II.    DISCUSSION

    A.    Legal Standard: Motion to Intervene

"[I]ntervention is the requisite method for a nonparty to become a party to a lawsuit." *United States ex rel. Eisenstein v. City of N.Y.,* 556 U.S. 928, 933 (2009) (citation omitted). Under

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: **CV 13-05504 SJO (MANx)**          DATE: **February 2, 2015**

Federal Rule of Civil Procedure 24 ("Rule 24"), there are two types of intervention: intervention of right and permissive intervention. See Fed. R. Civ. P. 24(a)-(b). Rule 24(a), which governs intervention of right, provides that:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). Rule 24(b), which applies to permissive intervention, states that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

The Ninth Circuit has characterized Rule 24(a) as establishing a "four-fold test for intervention of right." *Blake v. Pallan,* 554 F.2d 947, 951 (9th Cir. 1977) (citations omitted). Thus, a movant seeking intervention as of right must show that: (1) the motion is timely; (2) the movant has a "significant protectable interest" relating to the property or transaction that is the subject of the action in which the movant seeks to intervene; (3) the disposition of the action may impair or impede the movant's ability to protect its interest; and (4) the existing parties may not adequately represent the movant's interest. *Donnelly v. Glickman,* 159 F.3d 405, 409 (9th Cir. 1998) (citation omitted). Although the courts "generally interpret the [Rule 24(a)(2)] requirements broadly in favor of intervention," *id.* (citation omitted), a court may deny a motion to intervene where the movant fails to demonstrate that his or her motion was timely. *See, e.g., Aleut Corp. v. Tyonek Native Corp.,* 725 F.2d 527, 529 (9th Cir. 1984); *Alaniz v. Tillie Lewis Foods,* 572 F.2d 657 (9th Cir. 1978). The permissive intervention standard under Rule 24(b) also requires that the movant show that her motion to intervene was timely filed. *See* Fed. R. Civ. P. 24(b); *Donnelly,* 159 F.3d at 412 (citing *Nw. Forest Res. Council v. Glickman,* 82 F.3d 825, 839 (9th Cir. 1996)). Additionally, under Rule 24(b), the movant must establish that its claims share a common question of law or fact with the main action and that the court has an independent basis for jurisdiction over the movant's claims. *See* Fed. R. Civ. P. 24(b); *Donnelly,* 159 F.3d at 412; *Nw. Forest Res. Council,* 82 F.3d at 839.

    B.    <u>Intervention of Right</u>

"To intervene as a matter of right, [Movant] must demonstrate that [her motion] to intervene [is] **timely** and that the requirements of [Rule 24(a)(2) are] met." *Aleut Corp.,* 725 F.2d at 529 (emphasis in original). The Ninth Circuit has repeatedly held that "[t]imeliness is 'the threshold requirement' for intervention as of right." *League of United Latin Am. Citizens v. Wilson (LULAC),*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  CV 13-05504 SJO (MANx)          DATE:  February 2, 2015

131 F.3d 1297, 1302 (9th Cir. 1997) (quoting *United States v. Oregon,* 913 F.2d 576, 588 (9th Cir.1990)); *see also Mgmt. Activities, Inc. v. United States,* 166 F.3d 343, 343 (9th Cir. 1998) (citation omitted).  Thus, if a court "find[s] that the motion to intervene was not timely, [it] need not reach any of the remaining elements of Rule 24."  *LULAC,* 131 F.3d at 1302 (quoting *United States v. Washington,* 86 F.3d 1499, 1503 (9th Cir. 1996)) (internal quotation marks omitted). When determining whether a motion to intervene is timely, the courts assess three criteria:  "(1) the stage of the proceedings; (2) whether the parties would be prejudiced; (3) the reason for any delay in moving to intervene." *Cabazon Band of Mission Indians v. Wilson,* 124 F.3d 1050, 1061 (9th Cir. 1997) (quoting *Nw. Forest Res. Council,* 82 F.3d at 836 (internal quotation marks omitted)); *see also Alaniz,* 572 F.2d at 659 (citations omitted).

    1.    Stage of Proceedings

"Although the length of the delay is not determinative, any substantial lapse of time weighs heavily against intervention."  *Washington,* 86 F.3d at 1503 (citation omitted).  Further, where there is some indication that the movant knew or should have known that the parties to the ongoing litigation would not adequately represent its interests, intervention following a final decision may be inappropriate.  *See, e.g., id.* at 1504-05 (holding that where the movant was "on notice that it might need to intervene to protect its interests," a motion to intervene filed after the district court issued its decision was not timely); *Orange Cnty. v. Air Cal.,* 799 F.2d 535, 538 (9th Cir. 1986) (finding that the movant's failure to move to intervene until after five years of litigation and the culmination of a settlement agreement weighed against a finding of timeliness).

Here, Movant filed the instant Motion to Intervene on January 8, 2015, (*see generally* Mot.), approximately eighteen months after the lawsuit was filed on July 30, 2013, and four months after this matter settled on September 15, 2014.  (*See generally* Compl.; Trial Mins.)  This substantial lapse in time weighs against granting the Motion.  *See Washington,* 86 F.3d at 1503.  Further, facts alleged by both the Parties and Movant indicate that Movant has known that the Parties were not likely to adequately represent her interests since as early as August 30, 2013.  (*See* Taylor Decl. ¶ 10, Ex. D, ECF No. 296-2 (email from Movant's counsel inquiring whether AIA's counsel would advise this Court of the illegality argument); *see also* Bond Decl. ¶ 9 (Movant's counsel, by monitoring this matter via the electronic docket on PACER, knew that the Parties had failed to advise the Court of Movant's illegality claim); Movant Decl. ¶ 10 (Movant's counsel has "consistently objected to the Guarantee" and conveyed these objections to the Parties' counsel).)

    2.    Prejudice

Courts have found prejudice where belated intervention by a third party threatened to "upset the delicate balance" the parties have achieved, *see Oregon,* 913 F.2d at 585, 589, or unravel a

CASE NO.: <u>CV 13-05504 SJO (MANx)</u>     DATE: <u>February 2, 2015</u>

settlement already reached. *See Orange Cnty.,* 799 F.2d at 538. As indicated, the remaining Parties to this action settled this matter on September 15, 2014, (*see generally* Trial Mins.), and any lingering matters addressed to this Court have involved finalizing the Settlement Agreement. On this basis, the Court finds that intervention following settlement, which did not occur until more than a year after this lawsuit was initiated, would likely prejudice the Parties. *See Orange Cnty.,* 799 F.2d at 538.

### 3. Reason for Delay

To prevail on her Motion, Movant "must convincingly explain [her] delay in filing [the] motion to intervene." *See id.* "Delay is measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties, not the date it learned of the litigation." *Washington,* 86 F.3d at 1503 (citation omitted). Here, Movant evidenced an awareness that her interests may not be adequately protected by the Parties in August 2013 when her attorney asked AIA's counsel whether he would be raising the illegality argument before this Court. (*See* Taylor Decl. ¶ 10, Ex. D.) This inquiry regarding the litigation suggests that Movant was aware of the risks of failing to intervene to protect her interests. *See Washington,* 86 F.3d at 1505 (citing *Oregon,* 913 F.2d at 589). Further, Movant's counsel's objections to the Parties' failure to raise this issue also suggest that Movant was aware that her alleged interest may not have been adequately protected in the ongoing litigation. (*See* Movant Decl. ¶ 10; *see also* Bond Decl. ¶ 9.) Overall, the thirteen-month delay between Movant's inquiry about whether AIA would raise the illegality argument and the Parties' settlement, coupled with Movant's monitoring of this matter via PACER, demonstrate that Movant lacks a meritorious reason for her delay in filing the instant Motion to Intervene. *See Orange Cnty.,* 799 F.2d at 538; *Washington,* 86 F.3d at 1503.

Without proffering a convincing reason for her delay in filing the instant Motion, (*see generally* Mot.; Reply, ECF No. 298), Movant nonetheless argues that her Motion to Intervene is timely because her claims of illegality and unenforceability may be raised at any time. (Reply 3-4.) Under Idaho law "[t]he illegality of a contract . . . can be raised at any stage in the litigation," including on appeal, and courts have a "duty to raise the issue of illegality *sua sponte*." *Trees v. Kersey,* 138 Idaho 3, 6 (2002) (citations omitted). Further, Idaho courts may not enforce an illegal contract. *Wernecke v. St. Maries Joint Sch. Dist. No. 401,* 147 Idaho 277, 281 (2009) (citation omitted). Similarly, under California law, "[w]henever a court becomes aware that a contract is illegal, it has a duty to refrain from entertaining an action to enforce the contract," *Bovard v. Am. Horse Enters., Inc.,* 201 Cal. App. 3d 832, 838 (1988) (citations omitted), as well as a "duty *sua sponte* to raise the issue [of illegality]." *Cal. Pac. Bank v. Small Bus. Admin.,* 557 F.2d 218, 223 (9th Cir. 1977) (citation omitted). Based on these general principles, Movant argues that her Motion to Intervene is timely. (Reply 4.) This argument is unavailing.

Case 2:18-cv-00270-RMB-MJN ECF No. 2-22, filed 02/13/18 PageID.1038 Page 8 of 9
Case 2:13-cv-05504-SJO-MAN Document 30 Filed 02/02/15 Page 7 of 8 Page ID #:6237

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 13-05504 SJO (MANx)            DATE: February 2, 2015

First, the mere fact that either Movant or the Court may raise the issue of illegality to preclude the enforcement of a contract does not necessitate the conclusion that Movant has the right to intervene to assert her illegality claim in this Court; it is Rule 24 that sets out the requirements for intervention of right in the federal courts. *See* Fed. R. Civ. P. 24(a). Second, only two of the cases Movant cites to support the proposition that she may raise her illegality claim in this forum, (*see* Reply 3-4), include even passing references to intervention. In *Taylor v. AIA Servs. Corp.,* 151 Idaho 552 (2011), the defendant's 401(k) Profit Sharing Plan (the "Plan") intervened in order to argue that the stock redemption agreement which the plaintiff sought to enforce was unlawful. 151 Idaho at 558. There, the Supreme Court of Idaho rejected the plaintiff's argument that the defendants and the Plan were barred from asserting illegality because they were not the intended beneficiaries of the statute which rendered the stock redemption agreement unlawful. *See id.* at 563-64. *Taylor* did not involve a motion to intervene, or discuss the showing the Plan was required to make in order to intervene in the matter. In *Muth v. Educators Sec. Ins. Co.,* 114 Cal. App. 3d 749 (1981), the California Court of Appeals held that an insolvent corporation could not unilaterally deny its creditors any recourse for collecting on a debt owed by the corporation. 114 Cal. App. at 757-58. In remanding to the trial court, the *Muth* court stated that certain parties may "be permitted to intervene in the action if they or any of them shall so elect." *Id.* at 762. Like *Taylor,* *Muth* did not outline the requirements for intervention, either permissive or as of right. Further, the California statute governing intervention, like Rule 24, requires that an application to intervene be timely filed. *Compare* Cal. Civ. Proc. Code § 387(a), *with* Fed. R. Civ. P. 24.

Finally, Movant cites *Pellegrino v. Nesbit,* 203 F.2d 463 (9th Cir. 1953), for the proposition that "[i]ntervention should be allowed even after a final judgment where it is necessary to preserve some right which cannot otherwise be protected." 203 F.2d at 465-66 (citations omitted). (*See* Mot. 12.) Here, Movant seeks to intervene in order secure declaratory and injunctive relief based on her allegations that the Guarantee is unlawful and unenforceable. (*See generally* Mot; Movant Compl.) However, Movant has already instituted the Idaho Action to enforce these claims, (*see* Bond Decl. ¶ 6, Ex. 4), and will more than likely be able to pursue them once the Idaho court learns that this Court is not the proper forum for Movant to raise such issues. Thus, the argument that Movant will be unable to preserve her rights if she is not permitted to intervene is unpersuasive.

    C.    <u>Permissive Intervention</u>

As indicated, Rule 24(b), which applies to permissive intervention, also requires that Movant show that her Motion to Intervene was timely filed. *See* Fed. R. Civ. P. 24(b)(1); *Donnelly,* 159 F.3d at 412 (citing *Nw. Forest Res. Council,* 82 F.3d at 839). For the reasons stated with regard to intervention of right under Rule 24(a), the Court finds that Movant has failed to show that her Motion to Intervene was timely filed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 13-05504 SJO (MANx)          DATE: February 2, 2015

Further, "[e]ven if an applicant satisfies [the requirements of Rule 24(b)], the district court has discretion to deny permissive intervention." *Donnelly,* 159 F.3d at 412 (citing *Orange Cnty.,* 159 F.3d at 539; *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir.1977)). "In exercising its discretion, the district court must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Donnelly,* 159 F.3d at 412 (citing Fed. R. Civ. P. 24(b)(2); *Venegas v. Skaggs,* 867 F.2d 527, 530 (9th Cir. 1989), *aff'd on other grounds, Venegas v. Mitchell,* 495 U.S. 82 (1990)). Here, the instant lawsuit has settled and further litigation in this forum would prejudice the Parties by disrupting the settlement achieved in this Court. *See Orange Cnty.,* 799 F.2d at 538. Further, Movant may seek relief in an alternative forum by requesting that the Idaho court lift the stay in the Idaho Action in light of this Order. Accordingly, Movant's Motion to Intervene is **DENIED.**

III.    RULING

For the aforementioned reasons, the Court **DENIES** the Motion.

IT IS SO ORDERED.