Case 2:18-cv-00270-BMR ECF No. 9-25 filed 09/18/18 PageID.1042 Page 1
Case 1:10-cv-00404-DCN-CWD Document 140-29 Filed 09/17/18 Page 1 of 82
of 67

**EXHIBIT 23**

**TO**

**DECLARATION OF ALYSON A. FOSTER**

**Docket No. 15-55332**

---

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

---

GEMCAP LENDING I, LLC, a Delaware limited liability company,

Plaintiff-Appellee,

and

CROP USA INSURANCE AGENCY, INC., an Idaho corporation; et al.,

Defendants-Appellees,

v.

Donna J. Taylor,

Intervenor-Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES, THE
HON. S. JAMES OTERO, UNITED STATES DISTRICT JUDGE, PRESIDING

---

### APPELLANT'S BRIEF

---

John H. Guin
Law Office of John H. Guin, PLLC
421 W. Riverside Ave., Suite 461
Spokane, WA 99201
Tel: (509) 747-5250
john@guinlaw.com
Attorney for Intervenor-Appellant

Roderick C. Bond
Roderick Bond Law Office, PLLC
601 108th Ave. NE, Ste. 1900
Bellevue, Washington 98004
Tel: (425) 591-6903
rod@roderickbond.com
Attorney for Intervenor-Appellant

---

# TABLE OF CONTENTS

**I.   JURISDICTIONAL STATEMENT** .................................................................1

A.   There Is a Basis for the District Court's Jurisdiction...........................................1

B.   There Is a Basis and Information Establishing this Court's Jurisdiction. ..........1

C.   The Filing Dates Establish that this Appeal Is Timely. ......................................3

**II.   ISSUES PRESENTED ON REVIEW** ........................................................3

**III.  ADDENDUM** ............................................................................................4

**IV.  STATEMENT OF THE CASE** .................................................................4

**V.   SUMMARY OF THE ARGUMENT** .......................................................16

**VI.  ARGUMENT** ...........................................................................................17

A.   The District Court Erred When It Refused to Address the Illegality of
AIA Services and AIA Insurance's Guarantee of the $10 Million Loan
for the Crop Entities and the Subsequent Settlement Agreement and this
Court Should Rule that Those Agreements Are Illegal and
Unenforceable Now. ..........................................................................................17

1.   The District Court Erred Because the Illegality of a Contract May Be
Raised at any Stage of the Litigation and the District Court Had a
Duty to Address the Issue *Sua Sponte*...........................................................17

2.   AIA Services and AIA Insurance's Guarantee of the $12 Million Loan
and the Settlement Agreement Are Illegal, Unenforceable and Void...........20

B.   The District Court Erred and Abused Its Discretion When It Refused to
Allow Donna Taylor to Intervene as a Matter of Right Because there
Can Never Be an Unreasonable Delay Asserting the Illegality of a
Contract Because Courts Have a Duty to Address the Issue *Sua Sponte*. ........26

- ii -

FOSTER DEC. EX. 23 pg. 2

1.  This Court Reviews the Timeliness of Donna Taylor's Motion to
    Intervene De Novo Because the District Court Failed to Enter
    Any Formal Findings of Fact as Required. ...................................26

2.  Even if the District Court's Order Constituted Formal Findings of Fact
    and Conclusions of Law Regarding Timeliness of Donna Taylor's
    Intervention, They Were Not Supported by the Record...............................27

3.  The District Court Erred and Abused Its Discretion When It Denied
    Donna Taylor's Motion to Intervene as a Matter of Right...........................29

a.  Donna Taylor's Motion Was Timely Under the Peculiar
    Circumstances Present Here. .........................................................30

i.  *The Stage of the Proceedings Is Irrelevant Because the Case Was Going
    to Remain Open Under the Terms of the Settlement Agreement*...................31

ii. *There Is No Prejudice to Gemcap, the CropUSA Entities, John
    Taylor, AIA Services or AIA Insurance.* ........................................33

iii. *Donna Taylor Had Justifiable Reasons for Delay and the Other
    Parties Should Not Benefit from the Illegality.* ...............................36

b.  Donna Taylor Has an Interest to Intervene...................................39

c.  Donna Taylor's Interests and the Interests of Other Shareholders Would
    Be Impacted if She Is Not Permitted to Intervene.........................40

d.  There Is No Dispute that the Purported Representation of AIA Services
    and AIA Insurance Is Wholly Inadequate. ...................................41

e.  Donna Taylor, as a Shareholder, Should Be Permitted to Intervene and
    She Is Supported by Other Shareholders.......................................42

C.  The District Court Erred and Abused Its Discretion When It Refused to
    Allow Donna Taylor to Permissively Intervene Because there Can Never
    Be an Unreasonable Delay Asserting the Illegality of a Contract Because
    Court's Have a Duty to Address the Issue *Sua Sponte*....................45

- iii -

Case 2:18-cv-00872-RMP on ECR No. 9-25 filed 08/19/19 PageID 1046 Page 5
Case: 18-cv-00872-RMP-CN/GWD Document 940-25 Filed 09/17 Page Page 5 of 67
of 67
(4 of 1709)

VII. CONCLUSION ........................................................................47

## TABLE OF AUTHORITIES

### CASES

*AmerisourceBergen Corp. v. Dialysist West, Inc.*,
    465 F.3d 946 (9th Cir. 2006) ...................................................17

*Asdourian v. Araj*,
    696 P.2d 95 (Cal. 1985)...........................................................22

*Beckman Industries, Inc. v. Int'l Ins. Co.*,
    966 F.2d 470 (9th Cir. 1992) ...................................................46

*Borkowski v. Fraternal Order of Police, Philadelphia Lodge No. 5*,
    155 F.R.D. 105 (E.D. Pa. 1994) ....................................... 44, 47

*Bovard v. American Horse Enterprises, Inc.*,
    247 Cal.Rptr. 340 (1988).........................................................19

*California Pacific Bank v. Small Business Administration*,
    557 F.2d 218 (9th Cir. 1977) ...................................................19

*Clark v. Utah Constr. Co.*,
    8 P.2d 454 (Idaho 1932) ..........................................................19

*Conrad v. Ace Property & Cas. Ins. Co.*,
    532 F.3d 1000 (9th Cir. 2008)..................................................17

*Consolidated Edison, Inc. v. Northeast Utilities*,
    2004 WL 35445 (S.D.N.Y. 2004) ....................................... 43, 44, 47

*Cuevas v. Barraza*,
    277 P.3d 337 (Idaho 2012) ........................................................1

FOSTER DEC. EX. 23 pg. 4

***Employee Staffing Servs., Inc. v. Aubry***,
   20 F.3d 1038 (9th Cir. 1994) ...............................................................26

***Farrell v. Whiteman***,
   200 P.3d 1153 (Idaho 2009) ................................................................18

***Fowler v. Cheirrett***,
   205 P.2d 502 (Idaho 1949) ..................................................................22

***Golconda Petroleum Corp. v. Petrol Corp.***,
   46 F.Supp. 23 (S.D. Cal. 1942) ...................................................... 44, 47

***Goldman v. Standard Ins. Co.***,
   341 F.3d 1023 (9th Cir. 2003) .............................................................17

***Gulfstream Aerospace Corp. v. Mayacamas Corp.***,
   485 U.S. 271, 108 S.Ct. 1133 (1988) .....................................................2

***Husain v. Olympic Airways***,
   316 F.3d 829 (9th Cir. 2002) ...............................................................27

***In re Watts***,
   298 F.3d 1077 (9th Cir. 2002) .............................................................17

***Ingram v. ACandS, Inc.***,
   977 F.2d 1332 (9th Cir. 1992) ...............................................................3

***Jeff D. v. Otter***,
   643 F.3d 278 (9th Cir. 2011) ........................................................ 26, 45

***League of United Latin Am. Citizens v. Wilson***,
   131 F.3d 1297 (9th Cir. 1997) .............................................................26

***Lim v. City of Long Beach***,
   217 F.3d 1050 (9th Cir. 2000) .............................................................27

***Marino v. Ortiz***,
   484 U.S. 301,  108 S.Ct. 586 (1988) ...................................................2, 3

- v -

**FOSTER DEC. EX. 23 pg. 5**

(6 of 1709)

Case 2:18-cv-00372-RMP on ECF No. 9-25 filed 08/19/19 PageID 848 Page 7
Case 18-cv-00372-RMP on GWD Document 940-25 Filed 09/17 Page 7 of 67
of 67

*May v. Herron*,
274 P.2d 484 (Cal. 1954)................................................................19

*Muth v. Educators Security Ins. Co.*,
170 Cal.Rptr. 849 (1981)...............................................................19

*Northwest Forest Resource Council v. Glickman*,
82 F.3d 825 (9th Cir. 1996) ............................................. 30, 39, 42, 46

*Orange Cnty. v. Air Cal.*,
799 F.2d 535 (9th Cir. 1986) ..........................................................34

*Pellegrino v. Nesbit*,
203 F.2d 463 (9th Cir. 1953) ........................................... 31, 40, 43

*Perry v. Schwarzenegger*,
630 F.3d 898 (9th Cir. 2011) ........................................... 26, 39, 45

*Phoenix Eng'g & Supply Inc. v. Universal Elec. Co.*,
104 F.3d 1137 (9th Cir. 1997) ........................................................28

*Prete v. Bradbury*,
438 F.3d 949 (9th Cir. 2006) ........................................... 26, 45

*Price v. Gurney*,
324 U.S. 100 65 S.Ct. 513, 89 L.Ed. 776 (1945) ..............................40

*Russell v. Soldinger*,
131 Cal.Rptr. 145 (1976)...............................................................19

*San Jose Mercury News v. United States District Court*,
187 F.3d 1096 (9th Cir. 1999) ........................................................45

*Shortel v. Evans-Ferguson Corp.*,
277 P. 519 (Cal. 1929).................................................................22

*Southwest Ctr. For Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001) ..........................................................17

FOSTER DEC. EX. 23 pg. 6

*Spangler v. Pasadena City Bd. of Ed.*,
  552 F.2d 1326 (9th Cir. 1977) ........................................................ 46, 47

*State of Utah v. American Pipe & Constr. Co.*,
  473 F.2d 580 (9th Cir. 1973) ..................................................................26

*Strauss v. Comm'r of the Soc. Sec. Admin.*,
  635 F.3d 1135 (9th Cir. 2011) ....................................................... 26, 45

*Taylor v. AIA Services Corp.*,
  261 P.3d 829 (Idaho 2011) ........................................................ 5, 18, 22

*Taylor v. Bell*,
  340 P.3d 951, 959-61 (Wa. Ct. App. 2014),
  *review denied*, 352 P.3d 188 (2015)....................................................5

*Taylor v. Riley*,
  336 P.3d 256 (Idaho 2014) ................................................................ 5, 19

*Trbovich v. United Mine Workers of America*,
  404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972) ...........................41

*U.S. v. City of Oakland, California*,
  958 F.2d 300 (9th Cir. 1992).................................................................2

*United States v. Alisal Water Corp.*,
  370 F.3d 915 (9th Cir. 2004).................................................................26

*United States v. State of Washington*,
  86 F.3d 1499 (9th Cir. 1996) ........................................................ 31, 36

*Venegas v. Skaggs*,
  867 F.2d 527 (9th Cir. 1989) ...............................................................46

*Wilderness Soc. v. United States Forest Service*,
  630 F.3d 1173 (9th Cir. 2011) ....................................................... 30, 39

*Wong v. Tenneco, Inc.*,
  702 P.2d 570 (Cal. 1985).......................................................................19

- vii -

## STATUTES

**18 U.S.C. § 1332** ..................................................................................1

**28 U.S.C. § 1332** ..................................................................................1

**I.C. § 30-1-202** ......................................................................... 4, 21, 23

**I.C. § 30-1-206** ............................................................................ 4, 23

**I.C. § 30-1-301** ......................................................................... 4, 21, 23

**I.C. § 30-1-302** ......................................................................... 4, 21, 23

**I.C. § 30-1-801** ......................................................................... 4, 21, 23

## RULES

**Fed. R. App. P. 4** ................................................................................3

**Fed. R. Civ. P. 24** ...................................................... 27, 29, 44, 45, 46

**L.R. 52-3** ...........................................................................................27

## REGULATIONS

**CRPC 3-300** ......................................................................................38

**CRPC 3-310** ......................................................................................38

**CRPC 3-600** ......................................................................................38

FOSTER DEC. EX. 23 pg. 8

(9 of 1709)

Case 2:12-cv-00378-RMP   ECF No. 9-25   filed 09/18/18   PageID.1051   Page 10 of 67
Case 1:10-cv-00404-CWD   Document 466-23   Filed 03/13/20   Page 10 of 67

# I.  JURISDICTIONAL STATEMENT

Intervenor-Appellant Donna J. Taylor ("Donna Taylor") submits this Brief against the plaintiff Gemcap Lending I, LLC ("Gemcap") and the defendants AIA Services Corporation ("AIA Services"), AIA Insurance, Inc. ("AIA Insurance"), CropUSA Insurance Agency, Inc. and CropUSA Insurance Services (collectively the "Crop USA Entities"), and R. John Taylor ("John Taylor"):

### A.  There Is a Basis for the District Court's Jurisdiction.

This district court has jurisdiction over the parties based on diversity of citizenship.[1] **28 U.S.C. § 1332**; **18 U.S.C. § 1332(a)(1)**. (*See also* Excerpts of the Record "ER" 74-75, 1012.)

### B.  There Is a Basis and Information Establishing this Court's Jurisdiction.

This Court has jurisdiction for this appeal because the "denial of intervention as of right is an appealable final order." ***U.S. v. City of Oakland, California***, 958

---

[1] While Donna Taylor asserts that the courts have jurisdiction based on diversity of citizenship for purposes of this appeal, she does not concede that the district court has jurisdiction over AIA Services or AIA Insurance because those entities do not conduct business in California and the trial court's jurisdiction was improperly obtained through a contractual consent contained within the illegal guarantee. (ER 417-436, 433-34.) This is one more reason why the trial court erred by denying intervention because the judgments ultimately entered against AIA Services and AIA Insurance are void or, at a minimum, voidable—thus, it is never too late to intervene. (ER 1532-34.) *E.g., **Cuevas v. Barraza***, 277 P.3d 337, 341 (Idaho 2012) ("In order for a judgment to be void, there must generally be some jurisdictional defect in the court's authority to enter judgment, either because the court lacks personal jurisdiction...").

- 1 -

**FOSTER DEC. EX. 23 pg. 9**

F.2d 300, 301 (9th Cir. 1992) (citation omitted). (ER 1-8.) This Court also has jurisdiction if the three-part test under the collateral order exception is met:

> First, the order must "conclusively determine the disputed question." Second, the order must "resolve an important issue completely separate from the merits of the action." Third and finally, the order must be "effectively unreviewable on appeal from a final judgment." If the order at issue fails to satisfy any one of these requirements, it is not appealable under the collateral-order exception to § 1291.

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 276, 108 S.Ct. 1133, 1136-37 (1988) (citations omitted). As our Supreme Court recognized, "[w]e think the better practice is for such a nonparty to seek intervention for purposes of appeal; denials of such motions are, of course, appealable." *Marino v. Ortiz*, 484 U.S. 301, 304, 108 S.Ct. 586, 588 (1988).

Here, Donna Taylor has a right to appeal the order denying her request to intervene as a matter of right and permissively. (ER 1-8.) Moreover, this Court has jurisdiction because all three prongs of the collateral-order exception are met. The district court's order denying Donna Taylor's motion to intervene conclusively decided the issue of her intervention, the denial was separate and distinct from the merit of the lawsuit, and the order is unreviewable from a final judgment because she is not a party. Indeed, as our Supreme Court also noted, when a person is not a party to the underlying lawsuit and "failed to intervene for purposes of appeal, [he or she] may not appeal from the consent decree approving that lawsuit's settlement."

- 2 -

*Marino*, 484 U.S. at 303. This is precisely the problem Donna Taylor faced here, which is why she sought to intervene. (ER 1-8.) Thus, this Court has jurisdiction.

## C. The Filing Dates Establish that this Appeal Is Timely.

On February 2, 2015, the trial court entered the order denying Donna Taylor's Motion to Intervene.[2] (ER 1-8.) On March 3, 2015, Donna Taylor filed her Notice of Appeal. (ER 1515-28.) Thus, her appeal is timely. *See* **Fed. R. App. P. 4(a)(1)(A)**.

## II. ISSUES PRESENTED ON REVIEW

1. Did the district court err when it failed to address the illegality of AIA Services and AIA Insurance's Guarantee as required under both Idaho and California law and is this Court required to address the issue for the first time on appeal?

2. Are AIA Services and AIA Insurance's guarantees of the $10 million loan for the CropUSA Entities and the subsequent settlement agreement in the instant lawsuit illegal, unenforceable and void contracts as to AIA Services and AIA Insurance?

3. Does this Court review the district court's denial of Donna Taylor's motion to intervene the basis of timeliness de novo because the district court failed to enter any findings of fact?

---

[2] Minute orders are appealable orders. ***Ingram v. ACandS, Inc.***, 977 F.2d 1332, 1337-39 (9th Cir. 1992).

- 3 -

4.      Assuming *arguendo* that the district court's minute order constituted formal findings of fact, did the district court err and/or abuse its discretion when it found that Donna Taylor's motion to intervene was untimely, especially when it is *never* too late to raise the issue of illegality and the district court had a duty to do so *sua sponte*?

5.      Did the district court err and/or abuse its discretion by denying Donna Taylor's motion to intervene as a matter of right?

6.      Did the district court err and/or abuse its discretion by denying Donna Taylor's permissive motion to intervene?

## III.  <u>ADDENDUM</u>

Attached in an Addendum to this Brief are the following Idaho statutes: (a) **I.C. § 30-1-202**; (b) **I.C. § 30-1-206**; (c) **I.C. § 30-1-301** (d) **I.C. § 30-1-302**; and (e) **I.C. § 30-1-801**.

## IV. <u>STATEMENT OF THE CASE</u>

This appeal arises out of an illegal guarantee by AIA Services and AIA Insurance of a $10 million loan for the CropUSA Entities. (ER 416-36, 329-531.) This nefarious conduct and malfeasance is nothing new, however—nor are the illegal loan guarantees—as Donna Taylor and Dale Miesen, another common shareholder of AIA Services, have a derivative action pending in U.S. District Court in Idaho asserting various similar tort claims, which is presently on appeal before

- 4 -

**FOSTER DEC. EX. 23 pg. 12**

(13 of 1709)

Case 2:18-cv-00372-DMR   ECF No. 9-25   filed 09/18/19   PageID.1055   Page 13 of 14
Case 2:18-cv-00372-DMR   Document 9-25   filed 09/17   Page 13 of 67

this Court under Docket No. 14-56484 from a *Colorado River* stay entered at the request of John Taylor in the U.S. District Court of Idaho (albeit Donna Taylor maintains the stay was erroneously entered).[3] (ER 1436-37, 1442-79, 1501.)

AIA Services and its wholly owned subsidiary, AIA Insurance, are Idaho corporations primarily engaged in administering health insurance policies (but not in California). (ER 76-77 ¶10, 254 ¶10, 1157-73, 1310, 1405.) John Taylor[4] has purported to act as the CEO, President, and Chairman of the Board of AIA Services. (ER 1310-11, 1405.) John Taylor later utilized AIA Services and AIA Insurance as a platform to fund other businesses, including the CropUSA Entities. (ER 1310, 1405-6, 1442-79.) *See also* **Taylor v. AIA Services Corp.**, 261 P.3d 829, 844 (Idaho 2011) (noting the allegations that John Taylor and others had "unlawfully transferred millions of dollars from AIA Services to another entity, CropUSA.").

Since 1995, AIA Services has had three classes of shares issued and outstanding: (1) Series A Preferred Shares, which have a $10 stated value per share,

---

[3] This stay prevented Donna Taylor and Dale Miesen from amending their complaint in Idaho to name Gemcap as a defendant in that lawsuit.

[4] John Taylor is Donna Taylor's former brother-in-law. (ER 1406.) Notably, he is also an attorney licensed in the state of Idaho and he is well-aware of the illegality doctrine, having successfully asserted it himself—his acts and business decisions have resulted in litigation that has brought bread to many attorneys. (ER 409-10, 1436-37, 1443-96, 1498-1501.) *E.g.,* **Taylor v. AIA Services Corp.**, 261 P.3d 829 (Idaho 2011); **Taylor v. Riley**, 336 P.3d 256 (Idaho 2014); **Taylor v. Bell**, 340 P.3d 951, 959-61 (Wa. Ct. App. 2014), ***review denied***, 352 P.3d 188 (2015).

- 5 -

plus interest, with the highest payment priority (Donna Taylor is the sole Series A Preferred Shareholder); (2) Series C Preferred Shares, which have a stated value of $10 per share, plus accrued dividends, with the next highest payment priority; and (3) Common Shares, which cannot be repurchased or receive any dividends until the Series A and C Shares are fully paid, including accrued interest and dividends. (ER 1157-73, 1407, 1433-38, 1500.) Donna Taylor has not received a single payment on the mandatory redemption of her Series A Preferred Shares since May 30, 2008. (ER 1286, 1433-35.)

From 2011 through the present time, AIA Services had not fully redeemed all of Donna Taylor's Series A Preferred Shares, it was in arrears to its payments to Donna Taylor, and it was in arrears in the payment of over $1 million in dividends owed to the Series C Preferred Shares held by the employees in AIA Services' 401(k) Plan. (ER 1161-66 §§ 4.2.9-10, 1168 §4.3.3, 1188 n.5-6.) In other words, common shareholders, including John Taylor as the majority common shareholder, had no right to any distributions until the Series A Preferred Shares had been fully redeemed and the over $1 million in dividends paid on the Series C Preferred Shares held by the 401(k) Plan. (*Id*.) In addition, AIA Services and its wholly owned subsidiaries were prohibited from guaranteeing any loans for any entities which were not wholly owned subsidiaries and were bound by numerous other restrictive

- 6 -

FOSTER DEC. EX. 23 pg. 14

(15 of 1709)

Case 2:18-cv-00372-BMR on ECF No. 8-25 filed 09/18/18 PageID 1057 16
Case 1:18-cv-00364-BMR CN-GWD Document 940-29 Filed 09/17 Page 16 of 16
of 67

covenants set forth in AIA Services' amended articles of incorporation. (*Id.*) The CropUSA Entities were not wholly owned subsidiaries of AIA Services from 2011 through the present time, so no loans could be guaranteed for them. (*Id.*; ER 1186-87 n.3.)

Under the terms of AIA Services' amended articles of incorporation, AIA Services was also obligated to appoint Donna Taylor's designee of her choice to the board of directors, which was intentionally refused by John Taylor. (ER 1161 §4.2.8, 1436, 1441, 1498-99.) Despite having continuously demanded for her board designee to be appointed to AIA Services' board since 2009, John Taylor and the other insiders refused to honor her unqualified right through the present time. (*Id.*; ER 1436, 1441, 1498-1501.)

In 2011, John Taylor began negotiating with Gemcap, a California based hard-money lender, regarding a possible loan for the CropUSA Entities. (ER 1310-11.) Those negotiations resulted in Gemcap entering into a loan agreement with the CropUSA Entities on November 23, 2011. (ER 293 ¶48, 543 ¶48, 1311.) Initially, Gemcap lent the CropUSA Entities $5,000,000 with AIA Services and AIA Insurance guaranteeing $1,113,930 of that loan. (*Id.*; ER 286 ¶29, 540 ¶29, 1317-25.)

- 7 -

(16 of 1709)

Case 2:18-cv-00370-BMR... ECF No. 8-25... filed 09/18/18... PageID.1058... Page 17 of 67
Case 1:18-cv-00504-REP... CV-GWD... Document 990-29... Filed 09/17/18... Page 16 of 67

In 2012, the line-of-credit was increased to $10,000,000 with AIA Services and AIA Insurance's guarantee being expanded to the entire sum owed. (*Id.*; ER 286-87 ¶31, 541 ¶31.) Specifically, on October 1, 2012, AIA Services and AIA Insurance entered into a guarantee through which they guaranteed the entire sums owed by the CropUSA Entities, including fees and costs, and pledged all of their assets as security ("Guarantee"). (ER 417-36, 1313, 1375-94.) The Certificate of Executive Officer executed in connection with the original guarantee in 2001 included a copy of AIA Services' applicable amended articles of incorporation—thus, Gemcap was fully aware of the prohibition of the guarantee. (ER 1327-47.) Neither John Taylor nor either of the AIA entities sought Donna Taylor's consent or shareholder approval for the Guarantee and it was expressly prohibited by AIA Services' amended articles of incorporation—articles that Gemcap was provided at the time of the original guarantee. (ER 1161-66, 1313, 1327-47, 1334-39, 1433-35, 1500-01.)

On July 16, 2013, Gemcap provided written notice of default to John Taylor, the CropUSA Entities, AIA Services and AIA Insurance. (ER 443-43.) On July 29, 2013, Gemcap provided yet another written notice of default to the CropUSA Entities and their counsel, Quarles & Brady, and to John Taylor, AIA Services and

- 8 -

FOSTER DEC. EX. 23 pg. 16

(17 of 1709)

Case 2:18-cv-00372-RMP  ECF No. 9-25  filed 09/18/18  PageID.1050  Page 17
Case 2:18-cv-00372-RMP/GWD  Document 990-25  Filed 09/17/18  Page 18 of 67
of 67

AIA Insurance.[5] (ER 447-49, 450-53.) However, they all failed to cure the defaults.

On July 30, 2013, Gemcap filed suit against John Taylor, the CropUSA Entities, AIA Services, AIA Insurance and other parties asserting various contract and tort claims (including fraud and conversion) pertaining to the over $8,600,000 that it lent to the CropUSA Entities. (ER 74-232, 277-531.) On July 31, 2013, Gemcap obtained a TRO against the CropUSA Entities prohibiting them from transferring or utilizing any of the crop insurance commissions. (ER 233-40.) That order was later converted to a preliminary injunction, which expanded the ruling to include the defendant Diversified Services, Inc. ("Diversified") (who was holding certain crop commissions). (ER 241-250.)

On August 29, 2013, attorney John Munding ("Munding") appeared and filed an answer for all of the defendants, except Diversified. (ER 251-70.) Munding pleaded a number of affirmative defenses and appeared to be actually representing the interests of AIA Services and AIA Insurance. (ER 268-70.) On August 30, 2013, Donna Taylor's Idaho counsel, Mr. Bond, sent an email to Munding, purported attorney for AIA Services and AIA Insurance, requesting that he advise the court of Donna Taylor's "interests in the money and property illegally pledge[d] by AIA

---

[5] Gemcap has filed suit against the CropUSA Entities' attorneys at Quarles & Brady alleging fraud and claims unrelated to the illegal Guarantee. (ER 1579.)

FOSTER DEC. EX. 23 pg. 17

(18 of 1709)

Case 2:18-cv-00372-RMP   ECF No. 8-25   filed 09/18/18   PageID.1060   page 19 of 67
Case 1:18-cv-00372-RMP/GWD   Document 58-0-25   Filed 09/17/18   Page 19 of 67

Services and AIA Insurance." (ER 1425) On September 17, 2013 (presumably in response to Mr. Bond's email (ER 1425)), Munding acknowledged in the Notice of Interested Parties that he was aware of Donna Taylor's interests as being the sole "Series A Preferred" Shareholder in AIA Services. (ER 273.)

On November 1, 2013, the district court entered a scheduling order and set the matter for trial commencing on September 16, 2014. (ER 532.)

On February 14, 2014, certain of the defendants were dismissed for lack of jurisdiction.[6] On June 17, 2014 (less than 3 months prior to trial), Munding filed a request for approval for new counsel to substitute in as attorneys for John Taylor. (ER 578-79.) In connection with that request, John Taylor moved for a continuance of the trial date. (ER 48.) On July 3, 2014, the district court approved the request for substitution on the condition that there was no delay to the trial date. (ER 580.) On July 25, 2014, the district court denied John Taylor's motion for summary judgment and in doing so "address[ed] the frivolousness of [John] Taylor's arguments." (ER 584, 581-91.) On August 6, 2014, the district court granted summary judgment to Diversified, thereby later resulting in judgment being entered in its favor. (ER 592-

---

[6] For those same reasons, the district court did not have jurisdiction over AIA Services and AIA Insurance but for the illegal consent to jurisdiction contained in the illegal Guarantee because AIA Services and AIA Insurance did not conduct any business in California. (ER 433-34.)

- 10 -

FOSTER DEC. EX. 23 pg. 18

601, 670-72.)

Meanwhile, on July 21, 2014, Donna Taylor and two other common shareholders of AIA Services, Dale Miesen and Paul Durant, filed a Verified Complaint in Idaho state court against Gemcap, AIA Services and AIA Insurance seeking injunctive and declaratory relief regarding AIA Services and AIA Insurance's illegal Guarantee of the $10 million loan for the CropUSA Entities. (ER 1234-46, 1292-95, 1436-38, 1498-1501.)

On August 18, 2014, the parties filed a Joint Trial Witness List, Joint Exhibit List, and contentions of fact and law; and, despite the fact that the parties were aware of the lawsuit in Idaho, no witnesses, exhibits or information was identified or disclosed to the district court to address the illegality of AIA Services and AIA Insurance's Guarantee. (ER 602-669.) On September 2, 2014, Gemcap, John Taylor, the CropUSA Entities, AIA Services and AIA Insurance filed their Pretrial Exhibit Stipulations and their Joint Statement of the case. (ER 673-97.) Once again, not a single one of the parties or their attorneys showed candor to the district court by advising it of AIA Services and AIA Insurance's illegal Guarantee. (*Id*.) No disclosures were made regarding the illegality of the Guarantee in either their Trial Briefs filed one week later or at the Pretrial Conferences. (ER 698-721.)

- 11 -

(20 of 1709)

Case 2:18-cv-00372-BMR... ECF No. 9-25 filed 09/18/18 ... PageID-1062 Page 21
Case 2:18-cv-00372-... GWD Document 998-25 Filed 09/17/... Page 21 of 67
of 67

On September 15, 2014 (the first day of trial), the district court was advised that "this matter has resolved itself." (ER 722, 722-23.) "Counsel advise[d] the Court that the parties had entered into a confidential written settlement" and "Counsel places the general terms of the settlement agreement on the record…" (ER 722.) The district court approved the settlement agreement ("Settlement Agreement") without confirming whether AIA Services' shareholders had approved it, including Donna Taylor as the sole Series A Preferred Shareholder with priority over all other shareholders. (ER 1434-38, 1498-1501.) In addition, there is nothing in the record to demonstrate that the Settlement Agreement was properly determined by the district court to be confidential and that its terms would be kept secret from AIA Services' shareholders. (ER 9-73, 722-23.)

On September 18, 2014, Donna Taylor, Dale Miesen and Paul Durant's lawsuit filed in Idaho state court to have the Guarantee declared illegal was stayed. (ER 1295.) Donna Taylor's attorney, not being licensed in California, could do nothing but complain to the attorneys purportedly representing AIA Services and AIA Insurance. (ER 1071-73, 1438.) Donna Taylor did not have the resources to hire a California law firm to engage in expensive out-of-state litigation. (ER 1073-74.)

On October 21, 2014, Gemcap filed an ex-parte application and declaration for entry of a judgment against the CropUSA Entities for $12,126,534.61 (based on

- 12 -

FOSTER DEC. EX. 23 pg. 20

the Settlement Agreement), the defendants responded and the district court denied the motion, however, the filings and order revealed certain terms of the so-called confidential Settlement Agreement. (ER 722-51.)

On January 6, 2015, Donna Taylor's counsel, Mr. Bond, was able to persuade John Guin to assist Donna Taylor in intervening in the instant lawsuit, despite her lack of financial resources. (ER 1503-4, 1073-74.) Indeed, as pointed out by another shareholder, "Donna Taylor has selflessly attempted to make things right for all of us shareholders." (ER 1500.) On January 8, 2015, Donna Taylor moved to intervene and raised the issue of the illegality of the Guarantee and Settlement Agreement. (ER 752-1508.) Donna Taylor submitted evidence and explanations for the delay in intervening, including a declaration by one of the many other shareholders who have been harmed by John Taylor and his associates. (ER 781-1008, 1068-1295, 1432-1508.)

On January 9, 2015, the district court entered an order stating that other confidential terms were resolved and that a transcript must be ordered. (ER 1032.)

On January 16, 2015, Gemcap responded by submitting no reasonable explanation as to why it accepted AIA Services and AIA Insurance's Guarantee of the $10 million and Gemcap actually confirmed that it had a copy of the relevant portions of AIA Services' amended articles of incorporation when Gemcap accepted

- 13 -

(22 of 1709)

Case 2:18-cv-00372-BMR  ECF No. 8-25  filed 08/18/18  PageID.1064  Page 23
Case 1:18-cv-00342-CW-BMR  Document 990-29  Filed 09/17/18  Page 22
of 67

the Guarantee. (ER 1296-1394.) On that same day, the purported counsel for AIA

Services and AIA Insurance submitted a joint opposition along with the Crop

Entities and John Taylor. (ER 1395-1426.) Donna Taylor submitted a reply, together

with supporting declarations, to rebut the contentions of Gemcap, AIA Services,

AIA Insurance and the CropUSA Entities. (ER 1427-1508.)

On January 27, 2015, the district court concluded that a hearing was not

necessary for the motion to intervene (Docket. No. 300). (ER 64.) On February 2,

2015, the district court denied Donna Taylor's motion to intervene on the basis that

it was untimely. (ER 1-8.) The district court did not enter any findings of fact or

conclusions of law. (ER 1-8, 9-73.) This timely appealed followed. (ER 1515-28.)

Subsequently, the district court entered judgments against AIA Services, AIA

Insurance, and the CropUSA Entities in the amount of $12,126,534.61, but

dismissed John Taylor from the lawsuit without prejudice (even though John Taylor

had personally guaranteed the $10 million loan as well (ER ),[7] through stipulations.

(ER 1525-38.) After the district court filed a notice regarding the failure to prosecute

the remaining claims (Docket No. 326), Gemcap, the CropUSA Entities, John

Taylor, AIA Services, and AIA Insurance filed a joint statement regarding the status

---

[7] There is no dispute that John Taylor placed his interests over those of AIA
Services and AIA Insurance by obligating them to an over $12 million judgment,
while he escaped without a judgment. (ER 1532-38.)

- 14 -

FOSTER DEC. EX. 23 pg. 22

of the remaining defendants. (ER 67, 1539-42.)

On May 4, 2015, the parties clarified that "[a]lthough a dismissal without prejudice of the fraud claim against Defendant R. John Taylor was entered by the Court, there are remaining claims pending against Mr. Taylor, over which this Court continues to have jurisdiction." (ER 1544.) In other words, it was clarified that the instant case will remain pending. (*Id*.) In response, the district court allowed the filing of a motion and declarations under seal regarding the issue. (ER 1546-47.) On May 26, 2015, the district court entered an order confirming that claims were still pending against John Taylor. (ER 1548-50.) This order confirmed what Donna Taylor did not know regarding the confidential settlement agreement—that the instant case would not be concluded when she moved to intervene. (*Id*.)

On August 17, 2015, the district court refused to allow the enjoined funds to be disbursed to Gemcap after a so-called sale of the collateral had purportedly occurred and the district court dissolved the preliminary injunction. (ER 1551-62.) Gemcap filed a notice of appeal from that decision and disclosed yet another lawsuit it was pursuing against the law firm that had represented the CropUSA Entities for the $10 million loan. (ER 1563-79.) However, that appeal does not impact the instant appeal or the illegality of the Guarantee and Settlement Agreement as to AIA Services and AIA Insurance which are the subject of the instant appeal. (ER 1551-

FOSTER DEC. EX. 23 pg. 23

(24 of 1709)

Case 2:18-cv-00372-BMR CV EOF No. 8-25 filed 08/18/18 no PageID 1066 25 Page 25
Case 1:18-cv-00047-CV/GWD Document 5-8 Filed 09/17 Page Page 256 of 67
of 67

79.)

## V. <u>SUMMARY OF THE ARGUMENT</u>

Irrespective of whether the district court erred or abused its discretion when it denied Donna Taylor's motion to intervene, it had a duty to address the illegality of the Guarantee and Settlement Agreement *sua sponte* because the illegality doctrine could be raised at any stage of the litigation and it erred by refusing to do so and by refusing to find those agreements were illegal, unenforceable and void as to AIA Services and AIA Insurance. This Court should follow the illegality doctrine and rule that the Guarantee and Settlement Agreement are illegal, unenforceable and void contracts as to AIA Services and AIA Insurance.

The district court erred and abused its discretion by denying Donna Taylor's motion to intervene, as a matter of right and permissively, on the basis of timeliness because it is never too late for any party to assert the illegality doctrine and courts have a duty to address the issue *sua sponte*; there is no prejudice to the remaining defendants because the case is still not final and they were all aware of the illegality of the Guarantee; she has a reasonable explanation for delay because she filed suit in a different forum and did not have the financial resources to hire a California law firm; and she meets the other requirements of intervention as a matter of right and permissively.

- 16 -

Thus, this Court should reverse the district court and order that Donna Taylor be permitted to intervene. In the alternative, this Court need only address and rule that the Guarantee and Settlement Agreement are illegal and unenforceable contracts, which will render the remaining portions of this appeal moot.

## VI. <u>ARGUMENT</u>[8]

**A.** <u>The District Court Erred When It Refused to Address the Illegality of AIA Services and AIA Insurance's Guarantee of the $10 Million Loan for the Crop Entities and the Subsequent Settlement Agreement and this Court Should Rule that Those Agreements Are Illegal and Unenforceable Now.[9]</u>

**1. The District Court Erred Because the Illegality of a Contract May Be Raised at any Stage of the Litigation and the District Court Had a Duty to Address the Issue _Sua Sponte_.**

The district court erred when it disregarded _stare decisis_ when it refused to address the illegality of the Guarantee and the Settlement Agreement and it had a duty to raise the issue _sua sponte_. Indeed, it is well-settled under Idaho and

---

[8] When considering a motion to intervene, "a district court is required to accept as true the non-conclusory allegations made in support of an intervention motion." **_Southwest Ctr. For Biological Diversity v. Berg_**, 268 F.3d 810, 819 (9th Cir. 2001).

[9] The district court's interpretation and meaning of contract provisions are questions of law reviewed de novo. **_Conrad v. Ace Property & Cas. Ins. Co._**, 532 F.3d 1000, 1004 (9th Cir. 2008). The district court's interpretation of state contract law is also reviewed de novo. **_AmerisourceBergen Corp. v. Dialysist West, Inc._**, 465 F.3d 946, 949 (9th Cir. 2006). This Court must determine the meaning the state's highest court would give to state law. **_Goldman v. Standard Ins. Co._**, 341 F.3d 1023, 1027 (9th Cir. 2003). Whether _stare decisis_ applies is a question of law reviewed de novo. **_In re Watts_**, 298 F.3d 1077, 1079 (9th Cir. 2002).

- 17 -

California law that illegality may be raised for the first time on appeal.[10]

The illegality doctrine is a well-settled principle of law under both Idaho and

California law. Under Idaho law,

> 'An illegal contract is one that rests on illegal consideration consisting of any act or forbearance which is contract to law or public policy,' and such a contract is 'illegal and unenforceable.' *Farrell v. Whiteman*, 146 Idaho 604, 609, 200 P.3d 1153, 1158 (2009). '[W]hen the consideration for a contract explicitly violates a statute, the contract is illegal and unenforceable.' In *Trees v. Kersey*, we explained:
>
>> The illegality of a contract … can be raised at any stage in litigation. **The Court has the duty to raise the issue of illegality *sua sponte*.** Whether a contract is illegal is a question of law for the court to determine from all the facts and circumstances of each case. An illegal contract is one that rests on illegal consideration of any act or forbearance which is contrary to law or public policy. The general rule is that a contract prohibited by law is illegal and unenforceable. A contract which is made for the purpose of furthering any matter or thing prohibited by statute is void. This rule applies on the ground of public policy to every contract which is founded on a transaction prohibited by statute. The Idaho Court of Appeals has suggested that where a statute intends to prohibit an act, it must be held that its violation is illegal, without regard to the reason of the inhibition or to the ignorance of the parties as to the prohibiting statute.

*Taylor v. AIA Services Corp.*, 261 P.3d at 841-42 (citation omitted) (emphasis added). To confirm, the illegality of a contract may not be waived and "may be raised

---

[10] It is unnecessary to conduct a choice of law analysis because Idaho and California law are in accord regarding the illegality doctrine.

- 18 -

Case 2:18-cv-00872-RMP ECF No. 9-25 filed 09/18/19 PageID.1960 Page 27 of 28
Case 1:19-cv-03040-CMP-CN-GWD Document 9-25 Filed 09/17 Page 28 of 67

(27 of 1709)

at any stage of the litigation, ***including for the first time on appeal***." *Taylor v. Riley*, 336 P.3d at 262 (citation omitted) (emphasis added); ***Clark v. Utah Constr. Co.***, 8 P.2d 454, 460 (Idaho 1932).

The same holds true under California law, "[w]henever a court becomes aware that a contract is illegal, it has a duty to refrain from entertaining an action to enforce the contract." ***Bovard v. American Horse Enterprises, Inc.***, 247 Cal.Rptr. 340, 343 (1988). "'No principal is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out…'" ***Wong v. Tenneco, Inc.***, 702 P.2d 570, 576 (Cal. 1985) (citation omitted). In other words, whether illegality is pled or not, when a court discovers a fact indicating illegality of a contract, it must instigate an inquiry on its own motion. ***Russell v. Soldinger***, 131 Cal.Rptr. 145, 150 (1976) (citation omitted); ***May v. Herron***, 274 P.2d 484, 486 (Cal. 1954); ***California Pacific Bank v. Small Business Administration***, 557 F.2d 218, 223 (9th Cir. 1977) (stating that a party cannot estop another from raising illegality of contract and the court "has a duty *sua sponte* to raise the issue"). As in Idaho, illegality can be addressed for the first time on appeal under California law. ***Muth v. Educators Security Ins. Co.***, 170 Cal.Rptr. 849, 856 (1981); ***LaFortune v. Ebie***, 102 Cal.Rptr. 588, 589 (1972); *Stone v. Lobsien*, 247 P.2d 357, 361 (Cal. 1952).

- 19 -

(28 of 1709)

Case 2:18-cv-00372-BMR cv EGR No. 8-25 cr filed 08/18/18 no RagaiD 1979 29
Case 1:18-cv-00365-REP Document 990-28 Filed 09/17/18 Page 29 of 67
of 67

Here, the district court erred because once Donna Taylor raised the illegality of AIA Services and AIA Insurance's Guarantee of the $10 million loan for the CropUSA Entities, the district court had a duty to address the issue and to do so *sua sponte*. (ER 1-8, 752-1032, 1039-1295, 1427-1508.) AIA Services and AIA Insurance are Idaho corporations and Gemcap, a savvy hard-money lender, improperly accepted a Guarantee from them and a pledge of all of their real and personal property within Idaho with full knowledge of the amended articles of incorporation. (ER 1305-94.) As discussed in Section A(2) below, the Guarantee violated AIA Services' amended articles of incorporation (an issue conceded by Gemcap and the other defendants) and, consequently, violated numerous Idaho statutes. The Guarantee is illegal.

As a result, the Settlement Agreement entered into, which flowed from that illegal Guarantee, is also illegal and unenforceable as to AIA Services and AIA Insurance. (ER 722-23.) Thus, the district court erred by not addressing the illegality of the Guarantee and the Settlement Agreement. This Court should follow Idaho and California law and address the illegality for the first time on appeal.

## 2. AIA Services and AIA Insurance's Guarantee of the $12 Million Loan and the Settlement Agreement Are Illegal, Unenforceable and Void.

As Gemcap was well aware when it requested copies of AIA Services' amended articles of incorporation in connection with the loans, under Idaho law,

- 20 -

FOSTER DEC. EX. 23 pg. 28

AIA Services and AIA Insurance may only engage in lawful activities that are authorized by their articles of incorporation. AIA Services and AIA Insurance's Guarantee violated four separate Idaho statutes and thus, the Guarantee and the Settlement Agreement entered into in furtherance of that Guarantee are both illegal, unenforceable and void contracts as to AIA Services and AIA Insurance.

Under Idaho law, "[a]ll corporate powers shall be exercised by or under the authority of…its board of directors, *subject to any limitation set forth in the articles of incorporation*." **I.C. § 30-1-801(2)** (emphasis added). "The articles of incorporation may set forth…Provisions not inconsistent with the law regarding…Managing the business and regulating the affairs of the corporation, Defining, *limiting and regulating the powers of the corporation, its board of directors, and shareholders*…" **I.C. § 30-1-202(2)(b)(ii)-(iii)** (emphasis added). Under Idaho law, "Every corporation incorporated under this chapter has the purpose of engaging in any lawful business *unless a more limited purpose is set forth in the articles of incorporation*." **I.C. § 30-1-301(1)** (emphasis added). Under Idaho law, "*Unless its articles of incorporation provide otherwise*, every corporation…has the same powers as an individual to do all things necessary…to make contracts and guarantees…" **I.C. § 30-1-302(7)** (emphasis added).[11]

---

[11] These Idaho Code Sections are all attached as an Addendum to this Brief.

- 21 -

FOSTER DEC. EX. 23 pg. 29

As explained in Section A(1) above, contracts that violate statutes are illegal and unenforceable under both Idaho and California law, as are any agreements entered into in furtherance of the original illegal contract. ***Taylor v. AIA Services Corp.***, 261 P.3d at 841-42, 847 ("A contract which is made for the purpose of furthering any matter or thing prohibited by statute is void"); ***Asdourian v. Araj***, 696 P.2d 95, 105 (Cal. 1985) ("a contract made in violation of a regulatory statute is void.").

Moreover, "[a] new promise based on an illegal, invalid consideration cannot validate the original transaction or any part of it…[and] [t]he courts cannot lend their aid to enforcement of a claimed indebtedness based entirely on an illegal consideration." ***Fowler v. Cheirrett***, 205 P.2d 502, 505 (Idaho 1949); ***Shortel v. Evans-Ferguson Corp.***, 277 P. 519, 521 (Cal. 1929) ("Release from or cancelation of an illegal or void contract can never be valid consideration…'Modification or abandonment of an illegal contract by mutual agreement cannot be a lawful consideration for a new contract'") (citation omitted). Simply put, "an illegal contract is against public policy, and any release promising not to assert illegality is also against public policy and is void as a document in furtherance of the illegal contract." ***Taylor v. AIA Services Corp.***, 261 P.3d at 847.

- 22 -

(31 of 1709)

Case 2:18-cv-00372-BMR-CN ECF No. 9-25 filed 09/18/18 PageID.1072 Page 32
Case 1:18-cv-00264-REB Document 19-25 Filed 09/17/18 Page 32 of 67
of 67

Here, the Guarantee violated numerous Idaho statutes.[12] **I.C. § 30-1-202(2)(b)(ii)-(iii)**; **I.C. § 30-1-301(1)**; **I.C. § 30-1-302(7)**; **I.C. § 30-1-801(2)**. AIA Services' amended articles of incorporation, which are subject to Idaho law since it is an Idaho corporation, could not be clearer and they were adopted to prevent precisely the type of malfeasance and mischief at issue here. (ER 1157-1173, 1432-39.)

> [AIA Services] will not, and will not permit any of its Subsidiaries to, directly or indirectly, create, incur, assume, guaranty or otherwise become or remain directly liable with respect to, any Indebtedness, except...

(ER 1161 § 4.2.9(c).) None of the exceptions apply to AIA Services and AIA Insurance's Guarantee of the $10 million loan for the CropUSA Entities. (ER 1162-63.) In addition, the financial covenants in the amended articles of incorporation separately barred the Guarantee of the $10 Million loan:

> Neither the corporation nor any Subsidiary will incur any new Indebtedness (other than Indebtedness permitted by Section 4.2.9(c)(xi) of this Articles Fourth) if, at the time of incurring such Indebtedness, the ratio of Consolidated Long Term Debt to Consolidated Net Worth exceeds, or such additional Indebtedness would cause such ratio to exceed 3.6 to 1.0.

---

[12] The Guarantee also violated AIA Services' bylaws as there is no way a $10 million loan for the CropUSA Entities could "reasonably be expected to benefit the corporation." (ER 1370 § 14.1.) **I.C. § 30-1-206(2)**. Indeed, the illegal Guarantee has resulted in a $12,126,534.61 judgment being entered against AIA Services and AIA Insurance, but not John Taylor (even though he guaranteed the loan too). (ER 1532-33, 1537-38, 408-415.)

- 23 -

(32 of 1709)

Case 2:18-cv-00372-BMR... ECF No. 8-25... filed 09/18/18... PageID 1974... Page 33
Case 1:19-cv-08040-GBW-CN/GWD... Document 1940-29... Filed 09/17... Page... Page 33 of 67
of 67

(ER 1165 §4.2.9(j).) The definition of "Indebtedness" as applied to the above restrictions includes:

> (a) all indebtedness for borrowed money…(c) notes payable and drafts accepted representing extensions of credit whether or not representing obligations for borrowed money…(e) all indebtedness secured by a Lien…

(ER 1166.) The definition of "Lien" means:

> [A]ny lien, mortgage, pledge, security interest, charge or encumbrance of any kind (including any conditional sale or other title retention agreement, any lease in the nature thereof, and any agreement to give a security interest.

(ER 1166.) As applied to the restrictions in Section 4.2.9, the definitions of all applicable terms do not provide an exception for AIA Services and AIA Insurance's Guarantee to Gemcap. (ER 1161-66.) Moreover, CropUSA Insurance Agency and CropUSA Insurance Services were not subsidiaries of AIA Services when the Guarantee was entered into, so no exception in that regard applies. (ER 1186-87 n.3, 1179-1213.) From 2010 through the present, AIA Services' financial condition, as defined in the amended articles of incorporation, barred the Guarantee of the $10 Million loan.[13] (ER 1179-1213.)

---

[13] There is no way that Gemcap did not review AIA Services' financial statements prior to entering into the Guarantee with it.

- 24 -

Lastly, none of the restrictive covenants in Section 4.2 of AIA Services' amended articles of incorporation could be waived unless Donna Taylor consented and she never provided such consent nor was she ever asked. (ER 1167 §4.2.12, 1286-88, 1432-39, 1497-1501.) Significantly, Gemcap requested, as part of the lending documents, a Certificate of Chief Executive Officer from John Taylor attaching AIA Services' amended articles of incorporation and bylaws. (ER 1309-94, 1327-94.) Gemcap knew precisely what it was doing and chose to take the risks.

Accordingly, the original Limited Guarantee and the Guarantee violated numerous provisions of Idaho Code and, therefore, is illegal, unenforceable and void. (ER 1317-25, 1375-94.) For these same reasons, the so-called "confidential" Settlement Agreement, which is an agreement entered into in furtherance of the illegal Guarantee, is also illegal, unenforceable and void as to AIA Services and AIA Insurance. (ER 722-23.) Finally, to the extent that there were other agreements entered into as a furtherance of the illegal Guarantee, those agreements are also illegal. This Court may reverse on those issues alone, irrespective of whether this Court affirms the order denying Donna Taylor's motion to intervene. (ER 1-8.)

///

///

- 25 -

(34 of 1709)

Case 2:18-cv-00372-RMP   ECF No. 9-25   filed 08/18/18   PageID.1076   Page 35
Case: 18-cv-00372-RMP   Document 9-25   Filed 09/17   Page 35 of 67
of 67

**B. The District Court Erred and Abused Its Discretion When It Refused to Allow Donna Taylor to Intervene as a Matter of Right Because there Can Never Be an Unreasonable Delay Asserting the Illegality of a Contract Because Courts Have a Duty to Address the Issue *Sua Sponte*.[14]**

**1. This Court Reviews the Timeliness of Donna Taylor's Motion to Intervene De Novo Because the District Court Failed to Enter Any Formal Findings of Fact as Required.**

Because the district court failed to enter any findings of fact, this Court reviews de novo the denial of Donna Taylor's motion to intervene. (ER 1-8.)

Although the district court's determination whether an application to intervene is timely is generally reviewed for an abuse of discretion, this Court reviews the timeliness issue de novo when *no* findings of fact are entered. *Alisal Water Corp.*, 370 F.3d at 918-19; *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (explaining that a one sentence order was not sufficient). *See also State of Utah v. American Pipe & Constr. Co.*, 473 F.2d 580, 582 (9th Cir. 1973) ("the court handed down a decision denying intervention, which

---

[14] The district court's decision regarding intervention as a matter of right is reviewed de novo. *Perry v. Schwarzenegger*, 630 F.3d 898, 903 (9th Cir. 2011); *Prete v. Bradbury*, 438 F.3d 949, 953 (9th Cir. 2006); *United States v. Alisal Water Corp.*, 370 F.3d 915, 918 (9th Cir. 2004). Whether the legal requirements of Rule 24(a) have been met is reviewed de novo. *Employee Staffing Servs., Inc. v. Aubry*, 20 F.3d 1038, 1042 (9th Cir. 1994).

An abuse of discretion occurs when the court makes an error of law, does not apply the correct law or rests its decision on a clearly erroneous finding of a material fact. *Jeff D. v. Otter*, 643 F.3d 278, 283 (9th Cir. 2011); *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1137 (9th Cir. 2011).

- 26 -

**FOSTER DEC. EX. 23 pg. 34**

was followed by formal findings of fact, conclusions of law and order, from which order this appeal is taken."). Findings of fact must be separately numbered, in chronological order and make no references to the pleadings. **L.R. 52-3**.

Here, while the district court entered a reasoned minute order (rather than a one sentence order entered in *League of United Latin Am. Citizens*), it nonetheless failed to enter any formal findings of fact or conclusions of law when it denied Donna Taylor's motion to intervene. (ER 1-8, 9-73.) Although Fed. R. Civ. P. 24 is silent as to whether findings of fact are required, it makes sense why the failure to enter formal findings results in this Court reviewing the record and the district court's decision de novo—the order denied Donna Taylor any right to participate or appeal any other rulings in the case. The failure to enter formal findings of fact results in this Court reviewing the district court's decision regarding the timeliness of intervention de novo. (ER 1-8, 9-73.)

### 2. Even if the District Court's Order Constituted Formal Findings of Fact and Conclusions of Law Regarding Timeliness of Donna Taylor's Intervention, They Were Not Supported by the Record.[15]

_____

[15] Conclusions of law are reviewed de novo. **Husain v. Olympic Airways**, 316 F.3d 829, 835 (9th Cir. 2002). Mixed questions of law and fact are also reviewed de novo. **Lim v. City of Long Beach**, 217 F.3d 1050, 1054 (9th Cir. 2000). A mixed question of law and fact exists when there is no dispute as to the facts or the rule of law and the only question is whether the facts satisfy the legal rule. **Id.** The court reviews adopted findings with close scrutiny, even though review remains to be for

- 27 -

The district court erred and abused its discretion by finding that Donna Taylor's intervention was untimely because the only parties remaining in the lawsuit were directly involved with the illegal Guarantee and they cannot derive a benefit from it. Moreover, as explained in Section B(3) below, the evidence and circumstances did not warrant a finding of untimeliness.

Rather than repeat the authorities set forth in Sections A(1)-(2) above, Donna Taylor incorporates them by reference herein. The bottom line is that the district court cannot aid the parties in carrying out the terms of an illegal contract and no parties may derive a benefit from the illegal contract.

Here, the district court found that Donna Taylor's intervention was untimely because it was late in the proceedings, the remaining parties would be prejudiced because they had settled the case, and Donna Taylor did not have a valid reason for delay. (ER 1-8.) The district court erred and abused its discretion in making those findings because it is aiding Gemcap and the remaining defendants from benefiting from the illegal Guarantee and allowing them to enter into a so-called confidential Settlement Agreement in furtherance of that illegal Guarantee. This is a classic example of clear error. The district court had a duty to address the illegality once it

---

clear error. *Phoenix Eng'g & Supply Inc. v. Universal Elec. Co.,* 104 F.3d 1137, 1140 (9th Cir. 1997).

- 28 -

was brought to its attention by Donna Taylor and none of the other remaining parties to the appeal were showing candor to the district court in regards to the issue. Thus, Donna Taylor was the only party willing to supply the district court with the information it required to address the illegality of the Guarantee and Settlement Agreement. It was clear error for the district court to cast her aside. Moreover, for the reasons explained in Section B(3) below, the district court's findings were not supported by the substantial evidence under the circumstances here. (ER 1-8.)

### 3. The District Court Erred and Abused Its Discretion When It Denied Donna Taylor's Motion to Intervene as a Matter of Right.

The district court erred and abused its discretion by denying Donna Taylor's motion to intervene as a matter of right because she was timely, there could be no prejudice and the matter is still pending so any delay was meaningless. (ER 1-8.)

Intervention as a matter of right is governed by Fed. R. Civ. P. 24, which provides in pertinent part:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
> . . . .
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

**Fed. R. Civ. P. 24(a)**. Courts apply a four-part test when analyzing a motion to intervene under Rule 24(a)(2):

- 29 -

(38 of 1709)

Case 2:18-cv-00872-RMP ECF No. 8-25 filed 09/18/18 PageID.1080 Page 39 of 67
Case 1:15-cv-00842-TCW Document 99-23 Filed 09/17/18 Page 39 of 67

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc. v. United States Forest Service*, 630 F.3d 1173, 1177 (9th Cir. 2011) (citation omitted); *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996). When applying these requirements, courts usually "follow 'practical and equitable considerations' and construe the Rule 'broadly in favor of proposed intervenors.'" *Wilderness Soc.*, 630 F.3d at 1179 (citation omitted). Broad construction exists "because '[a] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts.'" *Id.* (citation omitted). The district court erred and abused its discretion when it denied Donna Taylor's motion to intervene. (ER 1-8, 752-1032, 1039-1295, 1427-1508.)

### a. *Donna Taylor's Motion Was Timely Under the Peculiar Circumstances Present Here*.

Courts use "three criteria in determining whether a motion to intervene is timely: (1) the stage of the proceedings; (2) whether the parties would be prejudiced; and (3) the reason for any delay in moving to intervene." *Northwest Forest*, 82 F.3d at 836-37). "In determining the timeliness of such a motion a court should consider not only the period of time that has passed, but also the circumstances contributing

FOSTER DEC. EX. 23 pg. 38

(39 of 1709)

Case 2:18-cv-00372-RMP   ECF No. 9-25   filed 09/18/18   PageID.1081   Page 40 of 67
Case 1:19-cv-03642-CN/EWD   Document 55-0   Filed 09/17   Page 40 of 67

to the delay." ***Pellegrino v. Nesbit***, 203 F.2d 463, 465 (9th Cir. 1953). "Intervention should be allowed even after a final judgment where it is necessary to preserve some right which cannot otherwise be protected." ***Id.*** Donna Taylor will address each of the three criteria in turn and demonstrate why the district court erred.

### i. The Stage of the Proceedings Is Irrelevant Because the Case Was Going to Remain Open Under the Terms of the Settlement Agreement.

The lapse of time is wholly irrelevant because Donna Taylor is only challenging AIA Services and AIA Insurance's Guarantee, the case is not over under the terms of the Settlement Agreement, and the remaining parties were all involved in the illegal contract and carrying out its objectives. Consequently, the district court erred and abused its discretion in finding that "[t]his substantial lapse of time weighs against granting the Motion." (ER 5.)

"Although the length of the delay is not determinative, any substantial lapse of time weighs heavily against intervention." ***United States v. State of Washington***, 86 F.3d 1499, 1503 (9th Cir. 1996).

Here, the lapse in time for intervening is irrelevant because the lawsuit was already resolved and there would not be a trial or a final judgment entered anytime

- 31 -

in the foreseeable future.[16] (ER 722-23, 1537-38, 1548-50.) The district court knew this when it denied Donna Taylor's motion, but she did not. The determination of these issues only involves Gemcap, AIA Services and AIA Insurance. More specifically, the lapse of time is irrelevant here because:

- As explained in Sections A(1)-(2) above, the illegality doctrine may be raised at any stage of the litigation and courts may not assist parties in carrying out the terms of an illegal contract. Indeed, courts have a duty to raise the issue *sua sponte*—even for the first time on appeal.

- The Settlement Agreement did not include terms that the entire lawsuit was to be settled. (ER 722-23.) In fact, the fraud claims against John Taylor were dismissed without prejudice and the remaining claims were held in abeyance with the district court retaining jurisdiction. (ER 1548-50.)

- The sole issue is whether AIA Services and AIA Insurance's Guarantee is illegal and, if so, then the so-called confidential Settlement Agreement is also illegal *only* as to them. (ER 722-23, 1375-94.) At this juncture, the judgments against AIA Services and AIA Insurance are not even final nor were they intended to be under the terms of the confidential Settlement

---

[16] Notably, Donna Taylor did not have the luxury of knowing the terms of the so-called confidential Settlement Agreement when she intervened, unlike the district court and the other parties. (ER 722-23.)

- 32 -

(41 of 1709)

Case 2:18-cv-00372-BMR... ECF No. 8-25 filed 09/18/18 ... PageID 1082 ...42
Case 1:18-cv-00042-CW-GWD ... Document 19-2 Filed 09/17... Page 42 of 67
of 67

Agreement. (ER 722-23, 1532-33.) Indeed, part of the terms of the settlement was that Gemcap "agrees not to execute on the stipulated judgment as to Defendants AIA Insurance, Inc. and AIA Services Corporation until Plaintiff has completed judgment collection efforts as specified in the formal settlement documentation." (ER 1510.) Once again, the district court knew this, but Donna Taylor did not.

- AIA Services and AIA Insurance are merely guarantors, albeit illegal ones. (ER 1375-94.) The illegality and unenforceability of the Guarantee, the Settlement Agreement or the judgments as to them will not impact the liability and judgments against the CropUSA Entities or Gemcap's ability to seek further recourse against John Taylor. (ER 1532-38, 1548-50.) It is likely that Gemcap may still pursue claims against John Taylor. (*Id.*)

Accordingly, the district court erred and abused its discretion when it found that the lapse of time weighed against Donna Taylor. (ER 5.) This is especially true since the district court was fully aware of the terms of the so-called Confidential Settlement Agreement, while Donna Taylor was not privy to any of those terms. (ER 722-23.)

### ii. There Is No Prejudice to Gemcap, the CropUSA Entities, John Taylor, AIA Services or AIA Insurance.

There is simply no prejudice to any of the remaining parties to this case if Donna Taylor is permitted to intervene.

- 33 -

As the district court noted, courts have held that intervention may be denied if it were to "upset the delicate balance" the litigants have achieved or impact a settlement already reached. ***Orange Cnty. v. Air Cal.***, 799 F.2d 535, 538 (9th Cir. 1986). (ER 5-6.)

Here, there is no prejudice whatsoever and the district court erred and abused its discretion when it found that "intervention following settlement, which did not occur until more than a year after this lawsuit was initiated, would likely prejudice the parties." (ER 6.) The district court's findings are untenable:

- As explained in Sections A(1)-(2) above, a court may not lend aid to parties to an illegal contract nor can a court allow parties to execute documents in furtherance of an illegal contract. Thus, the district court is violating the illegality doctrine by denying intervention and refusing to address the illegality of the Guarantee and the Settlement Agreement as to AIA Services and AIA Insurance.

- AIA Services and AIA Insurance could not be prejudiced if the $12,126,534.61 judgments entered against them are vacated. (ER 1532-34.) To the contrary, they would benefit from intervention because they should have no liability to Gemcap.

- While John Taylor cut himself a deal notwithstanding his undivided

- 34 -

(43 of 1709)

Case 2:18-cv-00372-BMR   ECF No. 9-25   filed 09/18/18   PageID 1085   Page 44
Case 1:19-cv-00372-CN-GWD   Document 990-25   Filed 09/17   Page Page 43 of 67
of 67

duty of loyalty to AIA Services and AIA Insurance, he guaranteed the $10 million loan and was the person who purportedly signed the Guarantee on behalf of the AIA entities, albeit illegally. (ER 1375-94.) He deserves to pay the entire $12 million.

- As explained in Sections A(1)-(2) above, Gemcap was fully aware of the restrictions under AIA Services' amended articles of incorporation and bylaws when it entered into the original Guarantee. (ER 1308-94.) Thus, Gemcap is responsible for any prejudice, but there can be none because it knew precisely what it was doing.

- The CropUSA Entities cannot be prejudiced because the $10 million loan was made to them. (ER 277-531.) They deserve to have judgments entered against them and Donna Taylor's intervention would in no way disturb those judgments. (*Id*.; ER 1534-36.)

- The remaining defendants have all been dismissed, so there can be no prejudice to them. (ER 562-577, 670-72.)

- The real prejudice is to Donna Taylor and the scores of other shareholders of AIA Services, who have been neglected and ignored by John Taylor and his henchmen. (ER 1188 n.6, 1234-84, 1432-1501.)

As such, there is no prejudice to any of the parties remaining in the instant case.

- 35 -

FOSTER DEC. EX. 23 pg. 43

(44 of 1709)

Case 2:18-cv-00372-BMR  ECF No. 9-25   filed 09/18/19   PageID.1086   Page 45
Case 1:16-cv-00424-CW-GWD   Document 350-23   Filed 09/17/18   Page 45 of 67
of 67

They were all directly or indirectly involved in the illegal Guarantee and they should have to bear the responsibility for getting AIA Services and AIA Insurance involved. The district court abused its discretion in this regard and has prejudiced other shareholders.

### iii.  Donna Taylor Had Justifiable Reasons for Delay and the Other Parties Should Not Benefit from the Illegality.

Donna Taylor had reasonable explanations for any delay and she had actually filed suit in Idaho to protect her rights and those of other shareholders.

"Delay is measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties, not the date it learned of the litigation." ***Washington***, 86 F.3d at 1503 (citation omitted).

The district court erred and abused its discretion when it found that Donna Taylor had no "meritorious reason for her delay" and that she would "more than likely be able to pursue [her claims] once the Idaho court learns that this Court is not the proper forum." (ER 6-7.) The district court simply ignored the facts.

- Once again, as discussed in Sections A(1)-(2) above, the district court improperly allowed the other parties to obtain a benefit from the illegal Guarantee and Settlement Agreement. It was not Donna Taylor's obligation to bring the illegality to the district court's attention, but once she did, the district court had a duty to address it.

- 36 -

(45 of 1709)

Case 2:18-cv-00372-BMR  ECF No. 9-25  filed 09/18/18  PageID 1887  Page 45 of 67
Case 1:16-cv-00442-CWD  Document 590-29  Filed 09/17  Page 46 of 65  46
of 67

- Initially, AIA Services and AIA Insurance asserted a number of affirmative defenses and it appeared that their counsel may actually properly defend the corporations. (ER 251-276.) Donna Taylor's Idaho counsel was not licensed to practice in California so he could not assist her. (ER 1071-74.)

- By the time it became clear that the purported counsel for AIA Services and AIA Insurance was breaching his undivided duty of loyalty to the corporations, Donna Taylor filed an action in Idaho state court against Gemcap, AIA Services and AIA Insurance to have the Guarantee and Settlement Agreement declared illegal as to AIA Services and AIA Insurance. (ER 602-13, 628-49, 679-97, 1234-84, 1292-95.) However, on September 18, 2014, the Idaho court granted a stay at the request of Gemcap, AIA Services and AIA Insurance because they asserted that the issue would be resolved in the district court.[17] (ER 1072, 1295.)

- The district court penalized Donna Taylor for not having the financial resources to hire a California law firm to intervene sooner. (ER 1073-74.) As mentioned on page 1 n.1, the district court only had jurisdiction

---

[17] Notably, AIA Services and AIA Insurance were purportedly represented by John Taylor in that lawsuit. (ER 1292.) Even Mr. Munding recognized that he was in over his head by that time.

- 37 -

(46 of 1709)

Case 2:18-cv-00372-BMR   ECF No. 8-25   filed 09/18/18   PageID 1988   Page 47
Case 1:19-cv-00342-CN-GWD   Document 99-23   Filed 09/17/18   Page 46 of 67
of 67

over AIA Services and AIA Insurance through the illegal consent provision contained within the illegal Guarantee. (ER 1375-94, 1391-92.) Yet, Donna Taylor was expected to spend her last penny hiring a California law firm? Through her attorney, she was able to find Mr. Guin, who agreed to assist her, filing the intervention days after he was retained. (ER 1502-08.)

- The district court erroneously fixates on the August 30, 2013 email from Donna Taylor's Idaho counsel to the purported counsel for AIA Services and AIA Insurance. (ER 1425.) In that email, Mr. Bond requested that Mr. Munding advise the district court of Donna Taylor's interests. (*Id.*) Ironically, approximately two weeks later, Mr. Munding did advise the district court that Donna Taylor was the sole Series A Preferred Shareholder. (ER 273.)

- While Donna Taylor's Idaho counsel reached out to the various attorneys, the district court failed to recognize that the attorneys representing AIA Services, AIA Insurance, Gemcap, John Taylor and the CropUSA Entities owed duties of candor and disclosure to the court. (ER 1071-74.) *See* **CRPC 3-300**, **3-310**, **3-600**.

- 38 -

Accordingly, once again, the district court erred and abused its discretion when it found that Donna Taylor had no reasonable explanation for the delay—she had taken action in Idaho. Having established that the district court erred and abused its discretion in its analysis as to the timeliness of Donna Taylor's motion to intervene, this Court should reverse the district court and order it to allow her to intervene.

While the district court did not address any of the remaining factors, Donna Taylor will demonstrate how she meets the burden with regard to those factors.

### b. *Donna Taylor Has an Interest to Intervene.*

"Rule 24(a)(2) does not require a specific legal or equitable interest." *Wilderness Soc.*, 630 F.3d at 1179. Instead, the "interest" test is a practical guide to resolving lawsuits by involving as many interested parties as may be compatible with efficiency and due process. *Id.* Generally, the interest at issue need only be protectable under some law and there is a relationship between the protected interest and the claims in the lawsuit. *Id.*; *Northwest Forest*, 82 F.3d at 837. An interest for purposes of intervention is adequate if the intervenor "'will suffer a practical impairment of its interests as a result of the pending litigation.'" *Wilderness Soc.*, 630 F.3d at 1179 (citation omitted).

In this case, Donna Taylor is the sole Series A Preferred stockholder in AIA Services. (ER 1286-88, 1432-41, 1161-71.) The restrictive covenants in AIA

- 39 -

Services' amended articles of incorporation were adopted to protect her interests and only she can waive or consent to any modifications. (ER 1167, 1433-34.) She has not received a single payment since May 30, 2008, despite having priority over all other shareholders. (*Id.*; ER 1159-67.) As a result, she has a substantial interest in ensuring that the compelling and dispositive defenses of illegality and enforceability of contract are fully presented. *See **Price v. Gurney***, 324 U.S. 100, 105, 65 S.Ct. 513, 89 L.Ed. 776 (1945) (stating that "if a corporation has a defense to an action against it and is not asserting it, a stockholder may intervene and defend on behalf of the corporation.") She is also supported by other shareholders. (ER 1234-46, 1497-1501, 1069.) In addition, she has an interest in preventing future ultra vires actions by AIA Services' insiders, in the form of committing to a significant financial obligation by way of settlement, when the board of directors is not properly constituted. Such action would constitute a further violation of Donna Taylor's rights as a preferred shareholder of AIA Services.

### c. *Donna Taylor's Interests and the Interests of Other Shareholders Would Be Impacted if She Is Not Permitted to Intervene.*

A corporation's failure to diligently prosecute a claim or defense which presents substantial and important questions of law can adversely impact a shareholder's interest, justifying intervention by the shareholder. ***Pellegrino***, 203 F.2d at 468. In this case, the failure by AIA Services and AIA Insurance to raise

- 40 -

**FOSTER DEC. EX. 23 pg. 48**

illegality and unenforceability defenses constitutes a failure to diligently defend against Gemcap's claims. (ER 602-13, 628-49, 679-97.) The failure to raise these defenses has resulted in a judgment being entered against the AIA corporations, which would be fatal to them if Gemcap is permitted to execute. (ER 1509-11, 1532-34.) It is crystal clear that John Taylor put his interests above those of AIA Services and AIA Insurance. (*Id.*; ER 1529-31, 1537-38, 1548-40.) In addition, any negotiated settlement entered into by an improperly constituted board of directors, which commits the AIA companies to future liability based on the illegal Guarantee, causes further injury to Donna Taylor's interest as the sole Series A Preferred shareholder. (ER 722-23.)

### d. *There Is No Dispute that the Purported Representation of AIA Services and AIA Insurance Is Wholly Inadequate.*

Where an individual member of a group or organization establishes doubt about the adequacy of representation by a lawyer for the entire group, intervention as a matter of right is appropriate. ***Trbovich v. United Mine Workers of America***, 404 U.S. 528, 538-39, 92 S.Ct. 630, 636 (1972). To determine whether an intervening party's interest is adequately protected, courts consider "(1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary

- 41 -

elements to the proceedings that other parties would neglect." *Northwest Forest*, 82 F.3d at 838. The intervenor does not have to show that representation "will be" inadequate; rather, the intervenor need only show that representation "may be" inadequate. *Id.*

In this case, the illegality of the Guarantee is a dispositive defense available to AIA Services and AIA Insurance, yet both companies have failed to assert the defense in any fashion. As explained above, counsel for AIA Services and AIA Insurance abandoned the corporations in order to facilitate a settlement that resulted in an over $12 million judgment against them, while John Taylor walks. (ER 602-13, 628-49, 679-97, 1509-11, 1529-34, 1537-38, 1548-40.) Again, a corporation's failure to assert a material defense equates to inadequate representation of a shareholder's interest. This is a classic example of case in which intervention should be permitted after judgment is entered.

### e. *Donna Taylor, as a Shareholder, Should Be Permitted to Intervene and She Is Supported by Other Shareholders.*

Courts have consistently held that shareholders should be permitted to intervene in actions involving corporations, where the shareholder's interests can be adversely affected or where the corporations are failing to diligently prosecute or defend an action. This is precisely the case here. (ER 1432-1501.)

- 42 -

In **Pellegrino v. Nesbit**, *supra*, a shareholder who held only two shares of stock was allowed to intervene as a matter of right, after entry of a judgment denying relief against corporate officers for violations of the Securities and Exchange Act of 1934. **Pellegrino**, 203 F.2d at 465. The stockholder asserted his right to intervene in order to appeal the judgment. **Id.** In reversing the district court and sustaining the stockholder's motion to intervene, as a matter of right, the Ninth Circuit stated that the corporation's decision not to appeal the judgment constituted a failure to diligently prosecute the claims against the officers, particularly when the correctness of judgment presented substantial and important questions of law. **Id.** at 467.

In **Consolidated Edison, Inc. v. Northeast Utilities**, 2004 WL 35445 (S.D.N.Y. 2004), the district court allowed a shareholder to intervene, as a matter of right and permissively, in a breach of contract case between a target corporation and an acquiring corporation following a failed merger. **Consolidated Edison**, 2004 WL 35445 at *5-7. The court found that the shareholder's interests "could be impaired by any obligations or judgments reached in this litigation." **Id.** at *6. The court allowed the intervention even though litigation had been pending for two years, finding that the relevant issues had only "recently crystalized." **Id.** The court also found no prejudice to the existing parties, as intervention would allow all issues regarding the transaction to be litigated in one forum and would avoid conflicting

- 43 -

determinations. ***Id.***

In ***Golconda Petroleum Corp. v. Petrol Corp.***, 46 F.Supp. 23 (S.D. Cal. 1942), a shareholder of the plaintiff corporation, suiting for oil royalties, was allowed to intervene because the boards of both corporations were controlled by same people, and as a result of this mutual control, the board of directors for the plaintiff corporation planned to dismiss the action against the defendant corporation. ***Golconda***, 46 F.Supp. at 24-25. In this situation, the district court determined the shareholder had "clearly" established a right to intervene in light of the corporation's failure to diligently prosecute the claim. ***Id.*** at 25-26; *see also* ***Borkowski v. Fraternal Order of Police, Philadelphia Lodge No. 5***, 155 F.R.D. 105, 108 (E.D. Pa. 1994) (50% stockholder allowed to intervene as a matter of right and permissively to dismiss the lawsuit, which required his approval before filing, because "he had a vested interest in the property and potential liabilities" of the corporation).

In this case, Donna Taylor has presented the necessary facts to establish that she has a substantially protectable interest, as the sole Series A Preferred shareholder of AIA Services, to ensure that the AIA corporations avail themselves of clear defenses, which facts compel her intervention in this action. **Fed. R. Civ. P. 24 (a)(2)**.

- 44 -

FOSTER DEC. EX. 23 pg. 52

## C. __The District Court Erred and Abused Its Discretion When It Refused to Allow Donna Taylor to Permissively Intervene Because there Can Never Be an Unreasonable Delay Asserting the Illegality of a Contract Because Court's Have a Duty to Address the Issue *Sua Sponte*.__[18]

The district court erred and abused its discretion when it denied Donna Taylor's motion for permissive intervention for the same reasons it denied her motion as a matter of right. *See supra* at 17-44. (ER 1-8.) Permissive Intervention is governed by Fed. R. Civ. P. 24(b), which provides in pertinent part:

> (1) In General. On timely motion, the court may permit anyone to intervene who:
> . . . .
> (B) has a claim or defense that shares with the main action a common question of law or fact.
> . . . .
> (3) Delay or Prejudice. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

**Fed. R. Civ. P. 24(b)**.

A court "may permit" a moving party to intervene if the moving party "has a claim or defense that shares with the main action a common question of law for fact."

---

[18] Although a district court's decision concerning permissive intervention is generally reviewed for an abuse of discretion, review is de novo when the decision involves an underlying legal determination. ***Perry***, 630 F.3d at 905-06; ***Prete***, 438 F.3d at 954 n.6; ***San Jose Mercury News v. United States District Court***, 187 F.3d 1096, 1100 (9th Cir. 1999).

An abuse of discretion occurs when the court makes an error of law, does not apply the correct law or rests its decision on a clearly erroneous finding of a material fact. ***Jeff D.***, 643 F.3d 278; ***Strauss***, 635 F.3d at 1137.

- 45 -

(54 of 1709)

Case 2:18-cv-00372-RMP ECF No. 8-25 filed 09/18/18 PageID #806 Page 55
Case 2:18-cv-00342-RMP/GWD Document 940-29 Filed 09/17 Page 555 of 55
of 67

**Fed. R. Civ. P. 24(b)(1)(B)**. On a motion for permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights" when exercising the court's discretion. **Fed. R. Civ. P. 24(b)(3)**.

Whether to grant a motion for permissive intervention is a matter of discretion with the court. *Beckman Industries, Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 472 (9th Cir. 1992); *Venegas v. Skaggs*, 867 F.2d 527, 529-30 (9th Cir. 1989); *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977). Rule 24(b) gives the district court discretion "to determine the fairest and most efficient method of handling a case." *Venegas*, 867 F.2d at 530 (citation omitted).

A court may grant permissive intervention if three conditions are met: "(1) the movant must show an independent ground for jurisdiction; (2) the motion must be timely; and (3) the movant's claim or defense and the main action must have a question of law and fact in common." *Venegas*, 867 F.2d at 529; *Beckman*, 966 F.2d at 473; *Northwest Forest*, 82 F.3d at 839. A court "should evaluate whether the movant's 'interests are adequately represented by existing parties.'" *Venegas*, 867 F.2d at 530 (citation omitted). Judicial economy is also a relevant consideration on a motion for permissive intervention. *Id.* at 531. In addition, a court may consider the nature and extent of the intervenor's interest, standing to raise relevant legal

- 46 -

issues, the legal position being advanced and its relation to the case, and whether intervention will significantly contribute to the development of the underlying factual issues and to "the just and equitable adjudication of the legal questions presented." *Spangler*, 552 F.2d at 1329.

The reasons previously set forth in Sections A(1)-(2) and B(2)-(3) above in support of Donna Taylor's intervention as a matter of right also justify a determination that Donna Taylor should be permitted to intervene. *See, e.g., Consolidated Edison*, at *7 (stating that permissive intervention by shareholder would be appropriate, even if there were no right to intervention); *Golconda*, 46 F.Supp. at 25-26; *Borkowski*, 155 F.R.D. at 110-11 (finding that shareholder established grounds for permissive intervention in addition to mandatory intervention). This Court should reverse and allow her to permissibly intervene.

## VII.  CONCLUSION

For the reasons articulated above, this Court should reverse the district court and remand this case with instructions to allow Donna Taylor to intervene. In addition or in the alternative, this Court should address the illegality of the Guarantee and confidential Settlement Agreement and hold that those agreements are illegal and unenforceable as to AIA Services and AIA Insurance, and further order the judgment vacated against them.

- 47 -

DATED this 8ᵗʰ day of September, 2015.

LAW OFFICES OF JOHN H. GUIN   RODERICK BOND LAW OFFICE, PLLC


By:___/s/ *John H. Guin*_____     By:___ */s/ Roderick C. Bond*_____
    John H. Guin                       Roderick C. Bond
    Attorney for Appellant             Attorneys for Appellant

- 48 -

**FOSTER DEC. EX. 23 pg. 56**

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.　　This brief complies with the type-volume limitation of Fed. R. App. P. (32)(a)(7)(B) because it contains 11,302 words, according to the Word Count feature in the Microsoft Word 2013 software, excluding the parts of the brief exempted by Fed. R. App. P. (32)(a)(7)(B)(iii).

2.　　This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 software in Times New Roman, 14 point, Font.

DATED this 8th day of September, 2015.

LAW OFFICES OF JOHN H. GUIN　RODERICK BOND LAW OFFICE, PLLC


By:___/s/ *John H. Guin*_____　　　By:___*/s/ Roderick C. Bond*_____
　　John H. Guin　　　　　　　　　　　Roderick C. Bond
　　Attorney for Appellant　　　　　　　Attorneys for Appellant

- 49 -

## STATEMENT OF RELATED CASES

There are two related cases pending in this Court:

1.    ***Gemcap Lending I, LLC v. Crop USA Insurance Agency, Inc., et al.***, Docket No. 15-56267. That appeal arises from the same underlying case as the instant appeal, but it involves the appeal of an order dissolving the preliminary injunction.

2.    ***Donna J. Taylor v. Hawley Troxell Ennis & Hawley LLP, et al.***, Docket No. 14-56484. That appeal involves five of the same parties to the instant appeal, but relates to lifting a *Colorado River* stay and the refusal to bifurcate certain claims. The plaintiff in the instant appeal, Gemcap Lending I, LLC, is not a party to that case, although the complaint from the instant case was submitted as more proof of illegal activities under the direction of R. John Taylor and other control parties.

DATED this 8th day of September, 2015.

LAW OFFICES OF JOHN H. GUIN   RODERICK BOND LAW OFFICE, PLLC


By:___/s/ *John H. Guin*_____        By:____/s/ *Roderick C. Bond*_____
      John H. Guin                               Roderick C. Bond
      Attorney for Appellant                 Attorneys for Appellant


- 50 -

FOSTER DEC. EX. 23 pg. 58

ADDENDUM

TO

APPELLANT'S BRIEF

West's Idaho Code Annotated
  Title 30. Corporations
    Chapter 29. General Business Corporations
      Part 2. Incorporation

I.C. § 30-29-202

Formerly cited as ID ST §30-1-202

§ 30-29-202. Articles of incorporation

Currentness

(1) The articles of incorporation must set forth:

(a) A corporate name for the corporation that satisfies the requirements of sections 30-21-301 and 30-21-302(a), Idaho Code;

(b) The number of shares the corporation is authorized to issue;

(c) The information required by section 30-21-404(a), Idaho Code; and

(d) The name and address of each incorporator.

(2) The articles of incorporation may set forth:

(a) The names and addresses of the individuals who are to serve as the initial directors;

(b) Provisions not inconsistent with law regarding:

(i) The purpose or purposes for which the corporation is organized;

(ii) Managing the business and regulating the affairs of the corporation;

(iii) Defining, limiting and regulating the powers of the corporation, its board of directors, and shareholders;

(iv) A par value for authorized shares or classes of shares;

(v) The imposition of personal liability on shareholders for the debts of the corporation to a specified extent and upon specified conditions;

(c) Any provision that under this chapter is required or permitted to be set forth in the bylaws;

(d) A provision eliminating or limiting the liability of a director to the corporation or its shareholders for money damages for any action taken, or any failure to take any action, as a director, except liability for:

(i) The amount of a financial benefit received by a director to which he is not entitled;

(ii) An intentional infliction of harm on the corporation or the shareholders;

(iii) A violation of section 30-29-833, Idaho Code; or

(iv) An intentional violation of criminal law; and

(e) A provision permitting or making obligatory indemnification of a director for liability, as defined in section 30-29-850(5), Idaho Code, to any person for any action taken, or any failure to take any action, as a director, except liability for:

(i) Receipt of a financial benefit to which he is not entitled;

(ii) An intentional infliction of harm on the corporation or its shareholders;

(iii) A violation of section 30-29-833, Idaho Code; or

(iv) An intentional violation of criminal law.

(3) The articles of incorporation need not set forth any of the corporate powers enumerated in this chapter.

(4) Provisions of the articles of incorporation may be made dependent upon facts objectively ascertainable outside the articles of incorporation in accordance with section 30-29-120(2), Idaho Code.

**Credits**
Added by S.L. 2015, ch. 243, § 57, eff. July 1, 2015.

I.C. § 30-29-202, ID ST § 30-29-202
Current through end of the 2015 First Regular and First Extraordinary Sessions of the 63rd Legislature

**End of Document**　　　　　　　　　　　　　　© 2015 Thomson Reuters. No claim to original U.S. Government Works.

West's Idaho Code Annotated
   Title 30. Corporations
      Chapter 29. General Business Corporations
        Part 2. Incorporation

I.C. § 30-29-206
Formerly cited as ID ST §30-1-206

§ 30-29-206. Bylaws

Currentness

(1) The incorporators or board of directors of a corporation shall adopt initial bylaws for the corporation.

(2) The bylaws of a corporation may contain any provision for managing the business and regulating the affairs of the corporation that is not inconsistent with law or the articles of incorporation.

**Credits**
Added by S.L. 2015, ch. 243, § 57, eff. July 1, 2015.

Notes of Decisions (5)

I.C. § 30-29-206, ID ST § 30-29-206
Current through end of the 2015 First Regular and First Extraordinary Sessions of the 63rd Legislature

End of Document

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

West's Idaho Code Annotated
    Title 30. Corporations
        Chapter 29. General Business Corporations
            Part 3. Purposes and Powers

I.C. § 30-29-301
Formerly cited as ID ST § 30-1-301

§ 30-29-301. Purposes

Currentness

(1) Every corporation incorporated under this chapter has the purpose of engaging in any lawful business unless a more limited purpose is set forth in the articles of incorporation.

(2) A corporation engaging in a business that is subject to regulation under another statute of this state may incorporate under this chapter only if permitted by, and subject to all limitations of, the other statute.

**Credits**

Added by S.L. 2015, ch. 243, § 58, eff. July 1, 2015.

Notes of Decisions (1)

I.C. § 30-29-301, ID ST § 30-29-301
Current through end of the 2015 First Regular and First Extraordinary Sessions of the 63rd Legislature

**End of Document**                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

FOSTER DEC. EX. 23 pg. 63

West's Idaho Code Annotated
    Title 30. Corporations
        Chapter 29. General Business Corporations
            Part 3. Purposes and Powers

I.C. § 30-29-302
Formerly cited as ID ST § 30-1-302

§ 30-29-302. General powers

Currentness

Unless its articles of incorporation provide otherwise, every corporation has perpetual duration and succession in its corporate name and has the same powers as an individual to do all things necessary or convenient to carry out its business and affairs, including without limitation power:

(1) To sue and be sued, complain and defend in its corporate name;

(2) To have a corporate seal, which may be altered at will, and to use it, or a facsimile of it, by impressing or affixing it or in any other manner reproducing it;

(3) To make and amend bylaws, not inconsistent with its articles of incorporation or with the laws of this state, for managing the business and regulating the affairs of the corporation;

(4) To purchase, receive, lease, or otherwise acquire, and own, hold, improve, use, and otherwise deal with real or personal property, or any legal or equitable interest in property wherever located;

(5) To sell, convey, mortgage, pledge, lease, exchange, and otherwise dispose of all or any part of its property;

(6) To purchase, receive, subscribe for, or otherwise acquire; own, hold, vote, use, sell, mortgage, lend, pledge, or otherwise dispose of; and deal in and with shares or other interests in, or obligations of, any other entity;

(7) To make contracts and guarantees, incur liabilities, borrow money, issue its notes, bonds, and other obligations, which may be convertible into or include the option to purchase other securities of the corporation, and secure any of its obligations by mortgage or pledge of any of its property, franchises or income;

(8) To lend money, invest and reinvest its funds, and receive and hold real and personal property as security for repayment;

(9) To be a promoter, partner, member, associate or manager of any partnership, joint venture, trust or other entity;

FOSTER DEC. EX. 23 pg. 64     Addendum

(10) To conduct its business, locate offices, and exercise the powers granted by this chapter within or without this state;

(11) To elect directors and appoint officers, employees, and agents of the corporation, define their duties, fix their compensation, and lend them money and credit;

(12) To pay pensions and establish pension plans, pension trusts, profit-sharing plans, share bonus plans, share option plans, and benefit or incentive plans for any or all of its current or former directors, officers, employees and agents;

(13) To make donations for the public welfare or for charitable, scientific, or educational purposes;

(14) To transact any lawful business that will aid governmental policy;

(15) To make payments or donations, or do any other act, not inconsistent with law, that furthers the business and affairs of the corporation.

**Credits**
Added by S.L. 2015, ch. 243, § 58, eff. July 1, 2015.

Notes of Decisions (22)

I.C. § 30-29-302, ID ST § 30-29-302
Current through end of the 2015 First Regular and First Extraordinary Sessions of the 63rd Legislature

---

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

| West's Idaho Code Annotated |
| Title 30. Corporations |
| Chapter 29. General Business Corporations |
| Part 8. Directors and Officers |

I.C. § 30-29-801

Formerly cited as ID ST § 30-1-801

§ 30-29-801. Requirement for and duties of board of directors

Currentness

(1) Except as provided in section 30-29-732, Idaho Code, each corporation must have a board of directors.

(2) All corporate powers shall be exercised by or under the authority of, and the business and affairs of the corporation managed by or under the direction of, its board of directors, subject to any limitation set forth in the articles of incorporation or in an agreement authorized under section 30-29-732, Idaho Code.

**Credits**

Added by S.L. 2015, ch. 243, § 63, eff. July 1, 2015.

Notes of Decisions (2)

I.C. § 30-29-801, ID ST § 30-29-801

Current through end of the 2015 First Regular and First Extraordinary Sessions of the 63rd Legislature

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.