1   JAMES B. KING, #8723
    MARKUS W. LOUVIER, #39319
2   Evans, Craven & Lackie, P.S.
    818 W. Riverside, Suite 250
3   Spokane, WA 99201-0910
    (509) 455-5200; fax (509) 455-3632
4   Attorneys for Defendant
    jking@ecl-law.com
5   mlouvier@ecl-law.com

6              UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF WASHINGTON
7

8   DALE L MIESEN, an individual who is a
    shareholder and who is also bringing this      Case No. 2:18-CV-270
    action on behalf of and/or in the right of
9   AIA Services Corporation and its wholly        DEFENDANTS JOHN
    owned subsidiary AIA Insurance, Inc.           MUNDING, KAREN
10                                                 MUNDING, MUNDING P.S.
                            Plaintiffs,            AND CRUMB AND
11                                                 MUNDING P.S.'S MOTION TO
    vs.                                            DISMISS PLAINTIFFS' FIRST
12                                                 AMENDED COMPLAINT

13  JOHN D. MUNDING and JANE DOE                   **ORAL ARGUMENT
    MUNDING, married individuals and the           REQUESTED**
    community property comprised thereof;
14  JOHN OR JANE DOES I-III, unknown
    individuals;    MUNDING,    P.S.,    a         Date and Time to Be Determined
15  Washington    Professional    Services         Upon Consultation With Counsel
    Corporation;    AIA    SERVICES
16  CORPORATION, an Idaho corporation
    and    a    nominal    defendant;    AIA
17  INSURANCE, INC.; an Idaho corporation
    and a nominal defendant;
18
                            Defendants.
19

20  MOTION TO DISMISS FIRST AMENDED COMPLAINT - 1

1    COME NOW Defendants John D. Munding, Karen Munding, and Crumb

2   & Munding, P.S., and Munding P.S. (collectively "Munding") pursuant to Fed. R.

3   Civ. P. 12(b)(1), (3), (6), and 23.1 move to dismiss the above-captioned action.

4   Munding's Motion is based upon the pleadings and files herein and ECF No. 7-9.

5                    **I.      INTRODUCTION**

6    Plaintiff Dale Miesen ("Miesen") is a minority shareholder of AIA Services

7   Corporation ("AIA Services"). He has sued Munding – a lawyer who represented

8   AIA in a California-based collection action. Munding never acted as Miesen's

9   attorney. Miesen sues Munding, AIA Services, and AIA Insurance, Inc. ("AIA

10   Insurance," together with AIA Services, "AIA Entities") as a "derivative

11   shareholder." Miesen is not a shareholder of AIA Insurance. ECF No. 10, ¶ 15-16.

12    Citing numerous deficiencies, Munding moved to dismiss Miesen's initial

13   Complaint (ECF No. 1). ECF No. 7. In response to Munding's Motion, Miesen

14   attempted to correct his Complaint to stave off dismissal. Miesen's efforts to re-

15   arrange his allegations and add speculative assertions do not cure the fundamental

16   defects in his claims:  (1) diversity jurisdiction cannot exist where AIA is both a

17   plaintiff and defendant, and (2) Plaintiffs failed to properly file a pre-suit notice of

18   claim pursuant to Fed. R. Civ. P. 23.1. Plaintiffs likewise failed to plead actionable

19   claims which are subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

20   MOTION TO DISMISS FIRST AMENDED COMPLAINT - 2

## II.     GENERAL FACTS

Munding represented the AIA Entities in a lawsuit in California. *See,* CV-13-05504 SJO MAN ("California Litigation"). The case settled in 2014 which resulted in entry of a judgment on April 12, 2015.[1] The facts giving rise to the California Litigation occurred before Munding represented the AIA Entities.

Miesen alleges that AIA Services' board of directors was improperly elected. ECF No. 10 at ¶ 21-28. The AIA Entities – prior to Munding's involvement and without his advice or involvement – procured lines of credit from a hard-money lender, GemCap. ECF No. 10 at ¶ 30-36. The loans totaled in excess of $10,000,000. Id. Miesen alleges the loan was improperly obtained and the proceeds were improperly spent. Id.

The loans went unpaid and GemCap sued AIA to recover the loan principal, costs, interest, and fees. ECF No. 9, Exh. 1. Munding was hired by the AIA Entities to represent them in the California Litigation. *Munding Decl.,* ¶ 4, 8, 17-18. Munding has at all relevant times been licensed to practice law in California. *Munding Decl.,* ¶ 4. The lawsuit exclusively involved claims based upon California law and was litigated in the United States District Court for the Central

---

[1] *See,* 2:13-CV-05504-SJO-MAN ECF No. 324.

MOTION TO DISMISS FIRST AMENDED COMPLAINT - 3

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1    District of California. *Munding Decl.,* ¶ 8-10.

2        Mr. Munding defended the litigation up to, and into, trial. Id. at ¶ 8-12. The

3    discovery, client interactions, mediation, trial, and settlement occurred in

4    California and Idaho. Id. On the first day of trial the case resolved in the Honorable

5    Judge James S. Otero's chambers in California. Id. at ¶ 12-14. The only alleged

6    "damage" or "injury" to the AIA Entities is the settlement and/or fees incurred in

7    connection with the California Litigation. Miesen alleges no individualized harm.

8        Miesen – through his attorney Mr. Bond – has overtly threatened to sue

9    Munding since at least 2014. Id. at ¶ 15-16. Over four (4) years after his threats

10   and the settlement, and over three (3) years after the judgment was entered in the

11   California Litigation, Miesen sued Munding via Bond.

12                    **III.    AUTHORITIES AND ARGUMENTS**

13   **A.    Plaintiffs' claims must be dismissed where they failed to submit a
          legally sufficient pre-litigation demand.**

14

15       A corporation is a distinct legal entity from its shareholders. *Swope v.*

16   *Swope,* 112 Idaho 974, 739 P.2d 273 (1987). Authority to manage the business and

     affairs of a corporation is vested in the board of directors, not in its shareholders.

17   IC § 30-29-801. This includes the authority to commence, defend, and control

18   actions on behalf of the corporation. Id., *Weatherhead v. Griffin,* 123 Idaho 697,

19   851 P.2d 993 (Idaho 1992), *See Also,* ECF No. 10,

20   MOTION TO DISMISS FIRST AMENDED COMPLAINT - 4

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

Exhibit B, pg. 7 at 4.4 ("Powers"). Because a corporation exists as a separate legal entity, the shareholders have no direct cause of action or right of recovery against those who have harmed it. *McCann v. McCann,* 152 Idaho 809, 275 P.3d 824 (Idaho 2012). Shareholders may only bring a derivative suit to enforce the corporation's rights when the board of directors fails to do so. *Id.*

A derivative action is distinguishable from an individual action. Idaho Courts have described a derivative action as follows:

> A stockholder's derivative action is an action brought by one or more stockholders of a corporation to enforce a corporate right or remedy a wrong to the corporation in cases where the corporation, because it is controlled by the wrongdoers or for other reasons fails and refuses to take appropriate action for its own protection.

*McCann,* 152 Idaho at 814.

In order for a shareholder to advance a derivative action on any claim, a proper demand under I.C. § 30-29-741 must be provided to the corporation. In *Orrock v. Appelton,* 147 Idaho 613, 213 P.3d 398 (2009), the Supreme Court explained the important policy underlying the demand requirement:

> To prevent abuse of [shareholder derivative suit] … equity courts establish as a precondition for the suit that the shareholder demonstrates that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions" *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95-96 (1991) (quoting *Ross v. Bernhard*, 396 U.S. 531, 534 (1970). The demand requirement affords the directors an opportunity to exercise their reasonable business judgment. *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 533 (1984). The function

MOTION TO DISMISS FIRST AMENDED COMPLAINT - 5

1    of the demand doctrine in delimiting the respective powers of the individual

2    shareholder and of the directors to control corporate litigation clearly is a

matter of "substance", not procedure. *Kamen*, 500 U.S. at 96-97.

3    *Orrock*, 147 Idaho at 618, 213 P.3d. at 403.

4    In addition to the demand requirement, Fed. R. Civ. P. 23.1(a) imposes

5    heightened pleading requirements when "one or more shareholders of a

6    corporation…bring a derivative action to enforce a right that the corporation or

7    association may properly assert but had failed to enforce." Under this standard, the

8    complaint must "state with particularity: (A) any effort by the plaintiff to obtain

9    the desired action from the directors or comparable authority and, if necessary,

10   from the shareholders or members; and (B) the reasons for not obtaining the action

11   or not making the effort." Fed. R. Civ. P. 23.1(b)(3); *see also Potter v. Hughes*,

12   546 F.3d 1051, 1056 (9th Cir. 2008) (explaining that a plaintiff is able to bring a

13   shareholder derivative lawsuit if: (1) the plaintiff owned shares in the corporation

14   at the time of the disputed transaction; and (2) the plaintiff alleged with

15   particularity the efforts, if any, made by the plaintiff to obtain the action the

16   plaintiff desires from the directors). This requirement operates as a threshold to

17   ensure that plaintiffs exhaust intracorporate remedies so that courts may  properly

18   focus on the motivations fueling a board's decision rather than the decision's

19   merits. *See Iron Workers Local No. 25 Pension Fund ex rel. Monolithic Power*

20   MOTION TO DISMISS FIRST AMENDED COMPLAINT - 6

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

*Sys., Inc. v. Bogart*, 2012 WL 2160436, at *2 (N.D. Cal. 2012).

The Complaint at issue alleges that two demand letters were served upon the Board of Directors of AIA, but does not attach either. The operative demand is dated June 13, 2016. It consists of 11 pages and 44 paragraphs of demands against over 20 individuals, law firms, and attorneys. As to Munding, it states:

> 16. "…all possible claims against…Crumb & Munding…and any other law firm…"
> 22. "…all possible claims against John Munding…"

The Board of Directors declined to take any action in response. A demand letter "**must state facts, not mere general conclusions**." *McCann*, 61 P.3d at 592. A demand letter must (1) identify the alleged wrongdoers; (2) describe the factual basis for the allegations; (3) describe the harm caused to the corporation; and (4) describe the request for relief. *See, Levner v. Saud*, 903 F. Supp. 452, 456 (S.D.N.Y. 1994), aff'd 61 F. 3d 8 (2nd Cir. 1995); *Seidel v. Allegis Corp.,* 702 F. Supp. 1409, 1412 (N.D. Ill. 1989).

It is impossible to tell what legal claims are contemplated by the demand letter. It is vague and ambiguous with respect to the actual firm providing legal services, the dates upon which legal services where performed, the actual legal services performed, the legal claims to be asserted and the actual actions or amounts for which redress is sought. See Paragraph 16, June 23, 2016 letter.

MOTION TO DISMISS FIRST AMENDED COMPLAINT - 7

1    Paragraph 16 of the June 13, 2016 was legally insufficient and cannot be a basis

2    to pursue the claims alleged in the complaint.

3        In Paragraph 22 of the letter the factual basis for harm allegedly caused to

4    AIA are stated as arising from the defense provided by the Defendants in the

5    "California Lawsuit" and "improperly failing to assert that the guarantees and the

6    settlement agreements entered into by AIA were not authorized and were thus

7    illegal or ultra-vires..." The same deficiencies exist.

8    **B.    Diversity jurisdiction does not exist.**

9        To establish subject matter jurisdiction pursuant to diversity of citizenship

10    the party asserting jurisdiction must show: (1) complete diversity of citizenship

11    among opposing parties, and (2) an amount in controversy exceeding $75,000. 28

12    U.S.C. § 1332(a); *Hertz Corp. v. Friend,* 559 U.S. 77, 130 S.Ct. 1181 (2010).

13        Plaintiffs contend that diversity jurisdiction exists over this lawsuit pursuant

14    to 28 U.S.C. § 1332(a)(1) "because the amount in controversy presently exceeds

15    $1,000,000 and this action is between citizens of different states." ECF No. 10, pg.

16    1, at Section I, Paragraph 1. Plaintiffs' jurisdictional assertions are incorrect in that

17    diversity is *not* complete where the AIA Entities – each independently asserted to

18    be Idaho residents – are both plaintiffs and defendants. In revising their Complaint

19    in an attempt to defeat Defendants' Motion to Dismiss, Plaintiffs vaguely re-

20    MOTION TO DISMISS FIRST AMENDED COMPLAINT - 8

classified the AIA Entities as defendants only. They now assert the AIA Entities "are not, and could not be, named as plaintiffs or nominal plaintiffs." ECF No. 10 at pg. 6 ¶ 18. However, Plaintiffs unambiguously name the AIA Entities as plaintiffs in the caption of their Complaint. Miesen seeks to recover for the corporations. Id. They assert that AIA Services and AIA Insurance are "also" defendants. Id. Plaintiffs assert this action is brought *on behalf of* AIA. Id. at 17.

Plaintiffs' attempts to re-characterize the AIA Entities' status do not result in diversity jurisdiction. While Plaintiffs attempt to conclusively characterize the actions of AIA as "antagonistic" and thereby avoid the AIA Entities' designation as plaintiffs, they fail to offer facts which support such a claim.

In addition, AIA Insurance Services and AIA Insurance are separate entities, both located in Idaho. Plaintiffs must establish that **complete** diversity exists between the entities. Critically, Miesen is **not** a shareholder of AIA Insurance. *See,* ECF No. 10 at ¶ 4. He has no right to bring a claim on behalf of AIA Insurance, Inc. Absent complete diversity this matter should be dismissed.

**C.    Plaintiffs' claims are barred by res judicata.**

Miesen, through Mr. Bond, also brought suit Idaho seeking to invalidate the judgment entered in GemCap's favor in the California litigation. As has been recently been explained by GemCap in its Motion for Summary Judgment, **four**

MOTION TO DISMISS FIRST AMENDED COMPLAINT - 9

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1  efforts have been made to invalidate GemCap's judgment. GemCap asserts

2  Miesen's claims are barred by res judicata. The reasoning of GemCap's assertions

3  are applicable to Miesen's claims against Munding. *See,* ECF No. 8; *Louvier*

4  *Affidavit Exhibits O, N and Foster Declaration with Exhibits filed in Idaho case.*

5  **D.    California law should apply to Plaintiffs' claims.**

6  A federal court sitting in diversity applies the choice-of-law rules of its

7  forum state to determine which substantive law controls. *Atl. Marine Const. Co.*

8  *v. U.S. Dist. Ct. for W. Dist. Of Tex.,* 134 S.Ct. 568, 582 (2013). Washington uses

9  a two-step approach to choice-of-law questions. *Kelley v. Microsoft Corp.,* 251

10 F.R.D. 544, 550 (W.D. Wash. 2008). First, courts determine whether an actual

11 conflict between Washington and other applicable state law exists.[2] *Id.* A conflict

12 exists when the various states' laws could produce different outcomes on the same

13 legal issue. *Id.* If a conflict exists, courts then determine the forum or fora that

14 have the "most significant relationship" to the action. *Id.*

15 Under the most significant relationship test, the Court must determine which

16 state has the most significant relationship to the cause of action. *See, e.g. Kelley*

17 *v. Microsoft Corp.,* 251 F.R.D. 544, 551 (W.D. Wash. 2008). The Court must first

18 _____

[2] Conflict of law clearly exists. At a minimum, different statutes of limitation apply to legal malpractice claims.
19 *See,* Ca. Civ. Proc. Code Sec. 340.6 and RCW 4.16.080(3). Washington's Consumer Protection Act (RCW 19.86) is vastly different than California's version (Ca. Civ. Proc. Code Sec. 1780).

MOTION TO DISMISS FIRST AMENDED COMPLAINT - 10

20

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

evaluate the contacts with each interested jurisdiction. *Future Select Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.,* 180 Wn.2d 954, 968 (2014). The approach is not merely to count contacts, but rather to consider which contacts are the most significant and determine where these contacts are found. *Id.* Second, the Court must evaluate the interests and public policies of potentially concerned jurisdictions. *Id. (citing Southwell v. Winding Transp. Inc.,* 101 Wn.2d 200, 204 (1984). The extent of the interest of each potentially interested state should be determined on the basis, among other things, of the purpose sought to be achieved by their relevant local law rules and the particular issue involved. *Id.*

The alleged legal malpractice relates to Defendants' representation of AIA with respect to the complaint filed in California federal court, where all claims asserted in the complaint were governed by California law, where all actions complained of took place before the California federal court, including the Settlement Agreement governed by California law. Munding's only role in representing AIA related to the California Litigation. *Munding Decl., ¶* 17-18.

To determine which of two or more conflicting laws apply, "Washington courts use the methodology outlined in the Restatement (Second) of Conflicts of Laws § 6 (1971)." *Experience Hendrix,* L.L.C v. *HendrixLicensing.com,* LTD 766 F. Supp. 2d 1122, 1132 (W.D. Wash. 2011). The Restatement instructs courts to

MOTION TO DISMISS FIRST AMENDED COMPLAINT - 11

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

look to the state that has "the most significant relationship to the occurrence and the parties" of any tort claim. Restatement § 145(1). The "especially relevant contacts" to be considered include:

1. The place where the injury occurred;

2. The place where the conduct causing the injury occurred;

3. The domicile, residence, nationality, place of incorporation and place of business of the parties;

4. The place where the relationship between the parties is centered.

The first § 145(1) factor, the place of injury, supports application of California law. The injury alleged is premised upon an omitted defense in the California litigation, which resulted in a final judgement and court approval.

Most courts applying § 145 agree that negligent behavior in litigation injures the client in the forum state of the court, regardless of the client's presence in the state. See *Patton v. Cox*, 276 F.3d 493, 497 (9th Cir.2002) (considering the location of a quasi-judicial proceeding as the "most persuasive" factor in choice-of-law analysis); *ACE Am. Ins. Co. v. Sandberg, Phoenix & Von Gontard, PC*, 900 F.Supp.2d 887, 896 (S.D.Ill.2012) (place of litigation controlled: "[t]he gist of this action is that [defendant] bungled the defense of the case"); *Foulke v. Dugan*, 187 F.Supp.2d 253, 257 (E.D.Pa.2002) (injury resulting from legal malpractice was having case dismissed, and that injury occurred

MOTION TO DISMISS FIRST AMENDED COMPLAINT - 12

*Evans, Craven & Lackie, P.S.*

818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1   where litigation was pending); *In re Kaiser Grp. Int'l, Inc.,* Adversary No. 09–

2   52317–MFW, 2010 WL 3271198, at \*5 (Bankr.D.Del. Aug. 17, 2010), *David B.*

3   *Lilly Co., Inc. v. Fisher*, 18 F.3d 1112, 1119–20 (3d Cir.1994).

4          The second factor of where the conduct causing the injury occurred favors

5   application of California law. The Defendants performed legal services for AIA in

6   California. The case was pending before the United States District Court for

7   Central District of California, all pleadings were filed in that Court under

8   Defendant's California bar license, the majority of discovery and meetings took

9   place in California, all hearings were in California, and the trial occurred in

10  California. CV-13-05504, ECF No. 272. The Settlement Agreement, which serves

11  as the gravamen of the complaint, was negotiated in California with the assistance

12  of presiding Judge Otero. Settlement was reached and approved in Judge Otero's

13  courtroom. The subsequent judgement was entered by Judge Otero against AIA.

14  The only damage - the settlement/judgment – occurred in California. California

15  has a strong interest in regulating attorney conduct in courts within its borders.

16         The third factor of §145, weighs heavily in favor of California. At worst, it

17  is neutral in favor of *Idaho*, not Washington. The Defendants are residents of the

18  state of Washington but the alleged torts were not committed in Washington. AIA

19  is an Idaho corporation. AIA and the Defendants all have contacts with California.

20  MOTION TO DISMISS FIRST AMENDED COMPLAINT - 13

The fourth factor of § 145, the center of relationship of the parties, also supports application of California law. No actions were taken by the Defendants in the representation of AIA other than in the California litigation. The choice of law test, however, looks for the state with the most significant relationship to the claim; the test thus focuses not on the magnitude of the relationship between the parties, but on the state where the relevant relationship existed and that state's interest in the claim. *See Bryant v. Silverman,* 703 P.2d 1190, 1195 (Ariz.1985). The engagement of Defendants was for the sole purpose of providing a defense to the claims in the California litigation. Defendants did not represent AIA in Washington or Idaho. The Settlement was reached in California and governed by California law. The Settlement Agreement resulted in a valid final judgement entered by the California Federal Court under California law. Each of the § 145 factors either supports application of California law or is neutral (with Idaho).

Finally, Washington law is logically inappropriate. Plaintiffs claim that Munding committed legal malpractice (and violated a fiduciary duty – a claim which operates under a similar framework). The standard of care applicable lawyers is specific to the State of Washington. *See,* WPI 107.04; *Hizey v. Carpenter*, 119 Wn.2d 251, 260–61, 830 P.2d 646 (1992). Rules of Professional Conduct are likewise adopted by specific states. If Washington law were

MOTION TO DISMISS FIRST AMENDED COMPLAINT - 14

determined to apply, the standard of care would be defined as what a Washington lawyer, practicing in California (with a California license, in California litigation) would do under the same or similar circumstances.

**E.     Plaintiff Miesen's claims are time barred under California law.**

After determining California law applies to this case, the Court determines the appropriate statute of limitations under the Uniform Conflict of Law - Limitations Act. RCW 4.18.020 provides that the law of the chosen state applies.

The applicable statute of limitations for all claims derivative of alleged legal malpractice is governed by California Code of Civil Procedure Section 340.6, which provides that in any action against attorney for a wrongful act or omission, "arising in performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered the facts constituting the wrongful act or omission…". Cal. Code Civ. Proc. §340.6 Under Section 340.6, the applicable limitations period begins to run as soon as "the plaintiff suspects or should suspect that his injury was caused by wrongdoing." *Jolly v. Eli Lilly & Co.,* 44 Cal. 3d. 1103, 1110 (1988).  The California Supreme Court has previously stated, "The statute of limitations for legal malpractice actions commences on the entry of adverse judgment or final or of dismissal." *Laird v. Blacker*, 828 P. 2d 691, 696 (Cal.1992); *Tchorbadjian v.*

MOTION TO DISMISS FIRST AMENDED COMPLAINT - 15

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

*Western Home Ins. Co.,* 39 Cal App. 4th 1211, 1219 (1995) (The actual injury occurs in litigation malpractice when the malpractice results in an adverse judgment or settlement in the underlying action). Furthermore, subjective belief is irrelevant to the question of whether action has been sustained. *Britton v. Girard;* 235 Cal App. 4th 721, 733 (2015) (The fact of injury or damage need not be recognized or noticed by the plaintiff). In this case, the Settlement Agreement was approved by the Court at the first day of trial on September 15, 2014. *See,* 2:13-CV-05504 SJO MAN at ECF 272.  An adverse judgment was entered by the Court on April 12, 2015. 2:13-CV-05504-SJO-MAN at ECF No. 324.  Attorney Bond and his client shareholders had notice of this event: Miesen sued GemCap in July of 2014 in a verified complaint seeking to set aside the loans and vacating any settlements. ECF No. 7 at K.

The statute of limitations is not dependent upon actual discovery but is based on a "reasonable person" standard.  "The test is whether the plaintiff has information of circumstances sufficient to put a reasonable person on inquiry or has the opportunity to obtain knowledge from sources open to his or her information." *McGee v. Weinberg* 97 Cal. App. 3d 798, 803 (1979).  Plaintiff does not need to consult with an attorney or know the legal basis for his claims to trigger the statute. *Gutierrez v. Mofid*, 39 Cal. 39 892, 89 (1985); McGee, supra, 97 Cal.

MOTION TO DISMISS FIRST AMENDED COMPLAINT - 16

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

App.3d at 803 ("The statute of limitations is not tolled by belated discovery of legal theories, as distinguished from belated discovery of facts."). As stated by the California Supreme Court: "We look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." *Fox v. Ethicon Endo-Surgery, Inc.* 35 Cal. 4th 797, 807 (2005).

In this case, Plaintiffs and their counsel knew about the transactions with GemCap, the litigation in California, the settlement, and judgment:

- On 8/31/2013, Mr. Bond wrote: "GemCap should not have lent the money in the first place and it [sic] improper to do so." *Louvier Aff. at A.*

- On 2/17/2014 Bond wrote: I've been monitoring the California lawsuit and I don't see any pleadings or filings in which you are seeking invalidate AIA's illegal guarantee…All of these acts are in violation of AIA's articles of incorporation and a clear breach of John Taylor and the other AIA's directors' and officers' fiduciary duties…" *Id. at Exhibit B.*

- On 8/13/2014, Bond wrote to Munding: I have noticed that AIA has paid attorneys' fees to you in recent filings in the California case. **While my clients are taking action in Nez Perce County District Court to have the guarantee declared illegal (something you should have asserted and filed a dispositive motion on long ago), I wanted to give you the fair heads up that my clients will be serving a derivative demand upon the boards of AIA Services and AIA insurance to assert legal malpractice claims against you. The damages would include, but not be limited to, disgorgement of fees and any damages sustained by AIA Services or AIA Insurance in that case."** *Id. at Exhibit E.*

Indeed, on July 21, 2014, Miesen, along with two others filed a Verified Complaint for Declaratory Relief and Injunctive Relief. Id. at K. They alleged:

MOTION TO DISMISS FIRST AMENDED COMPLAINT - 17

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1

- GemCap entered into security agreements and guarantees. *Id. at ¶* 13.

2

- John Taylor had no authority to enter the guarantee for GemCap. *Id. at 14.*

3

- The guarantee and settlement agreements should be declared "unlawful, illegal, void, and unenforceable." *Id. at 37.*

4

5       Mr. Bond wrote to Mr. Munding, attaching a copy of the complaint, stating,

6   "I can tell you that my clients are not happy that they are doing your job." ECF

7   No. 7 at *Exhibit D.* Mr. Bond asserted that he received a copy of the settlement

8   agreement which was dated effective September 15, 2014 in December of 2015.

9   Id., *Exhibit L, pg. 3.* The fact of the settlement was publicly available on September

10  14, 2014. Id., *Exhibit F.* Shortly after entry of the settlement agreement, one of

11  Mr. Bond's clients, Donna Taylor, sought to intervene in the California Litigation.

12  Id., *Exhibit H.* Her motion was denied as untimely, among other reasons.

13       Plaintiff Miesen and his counsel were on notice of the potential claims

14  against Defendants and were under a legal duty to investigate and file any claim

15  they wished to assert against Defendants within one year.

**F.      Plaintiffs' equitable claims must be dismissed.[3]**

16

17

18  _____

[3] All of Miesen's state law claims brought under Washington law including: breach of fiduciary duty (¶ 96-102) "aiding and abetting breach of fiduciary duty," (¶ 107-111) legal malpractice (¶ 112-116), fraudulent concealment (¶ 103-106) Consumer Protection Act (¶ 117-121), declaratory judgment (¶ 122-124), and equitable indemnification (¶ 125-127) fail where there is no proof or statement that such acts took place in Washington, or that Washington has jurisdiction over California torts.

19

*Evans, Craven & Lackie, P.S.*

20  MOTION TO DISMISS FIRST AMENDED COMPLAINT - 18

818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

Plaintiffs request "equitable relief" without specifying an equitable claim or how the facts of this case support the same. ECF No. 10 at ¶ 125-127. Absent any such facts or law in support of their claim, it should be dismissed.

**G.    Plaintiffs' "aiding and abetting" is not supported by Washington law.**

Plaintiffs assert a claim for "aiding and abetting a breach of fiduciary duty." ECF No. 10 at ¶ 107-111. This claim does not appear to have any legal support under Washington law and therefore, should be dismissed.

**H.    The declaratory judgment claim is a request for an advisory opinion.**

Plaintiffs assert that Munding violated several unspecified "duties" and Rules of Professional Conduct. ECF No. 10 at ¶ 123. Plaintiffs fail to assert any justiciable controversy concerning the same. Advisory opinions do not present a justiciable controversy are not the proper subject of declaratory judgment actions. *To-Ro Trade Shows v. Collins,* 144 Wn.2d 493, 26 (2001). As to "duties" and RPC violations, it bears repeating: Munding had no relationship with Miesen.

**I.    Plaintiffs failed to plead fraudulent concealment.**

There are two ways to plead fraudulent concealment or misrepresentation: (1) by pleading and proving the nine elements of fraud or (2) showing that the defendant breached an affirmative duty to disclose a material fact. *Stiley v. Block,* 130 Wn.2d 486, 515–16, 925 P.2d 194 (1996). Absent an affirmative duty

MOTION TO DISMISS FIRST AMENDED COMPLAINT - 19

to disclose material facts, a defendant's silence does not constitute fraudulent concealment/misrepresentation. *Favors v. Matzke,* 53 Wn.App. 789, 796, 770 P.2d 686, *rev. denied,* 113 Wn.2d 1033, 784 P.2d 531 (1989).

Plaintiffs concede that they cannot plead fraud because he has "not yet discovered them." ECF No. 10 ¶ 104. Plaintiffs assert that Munding did not disclose facts concerning the California Litigation to the Plaintiffs. Yet, Plaintiffs fail to identify any obligation on the part of Munding to disclose facts to the AIA Entities which were not disclosed to his clients during his representation.

**J.    Plaintiffs' Consumer Protection Act claims must be dismissed.**

To prevail in a private actions brought under the CPA, the plaintiff must assert: (1) the defendant has engaged in an unfair or deceptive act or practice, (2) in trade or commerce, (3) that impacts the public interest, (4) the plaintiff has suffered injury in his or her business or property, and (5) a causal link exists between the unfair or deceptive act and the injury suffered. *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 131 Wn.2d 133, 149, 930 P.2d 288, 296 (1997).

First, to affect the "trade" or "commerce" the act at issue must affect people in the State of Washington. There is no allegation this has or will occur. *See,* RCW 19.86.010(2). Miesen is a resident of Texas. The AIA Entities are Idaho residents.

Second, there is no specific allegation of a "deceptive" act by Munding.

MOTION TO DISMISS FIRST AMENDED COMPLAINT - 20

Third, with respect to legal malpractice claims, Washington law holds that the provision of legal services does not fall within the definition of "trade or commerce," except as those services relate to the "entrepreneurial aspects" of the practice of law. *Short v. Demopolis*, 103 Wn.2d 52, 60-61, 691 P.2d 163 (1984). Entrepreneurial aspects of legal practice are limited to how the price of legal services is determined, billed, and collected and the way a law firm obtains, retains, and dismisses clients. *Short*, 103 Wn.2d at 61. Claims for attorney malpractice and negligence are not subject to the CPA, since those claims go to the competence and strategy of lawyers, not to entrepreneurial aspects of law. Id.

Fourth, Plaintiffs' CPA claim should also be dismissed because there is no allegation that Munding's conduct impacts the public interest. To prove this factor, Plaintiff must show a "real and substantial potential for repetition, as opposed to a hypothetical possibility of an isolated unfair or deceptive act" being repeated *Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 604-05 (2009).

Based on the plain language of RCW 19.86.120, the only acts that could support a CPA claim are those acts which occurred *after* August 21, 2014 are time-barred. Plaintiffs fail to allege any action by Mr. Munding after August 21, 2014.

MOTION TO DISMISS FIRST AMENDED COMPLAINT - 21

818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1  DATED this 23rd day of October, 2018.

2  By _____/s/ Markus W. Louvier_____
   MARKUS W. LOUVIER, #39319
3  JAMES B. KING, #6732
   Attorneys for Munding Defendants
4  Evans, Craven & Lackie, P.S.
   818 W. Riverside Ave., Ste. 250
5  Spokane, WA 99201
   (509) 455-5200
6  (509) 455-3632 facsimile
   mlouvier@ecl-law.com
7  jking@ecl-law.com

8

9

10

11

12

13

14

15

16

17

18

19

20  MOTION TO DISMISS FIRST AMENDED COMPLAINT - 22

1

## CERTIFICATE OF SERVICE

2

3        I hereby certify that on October 23rd 2018, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF System which will send

4    notification of such filing to the following:

5

6    **Counsel for Plaintiffs**
     Roderick C. Bond
     Roderick Bond Law Office, PLLC
7    601 108th Avenue NE, Suite 1900
     Bellevue, Washington 98004
8    rod@roderickbond.com

9

10

11                        By _____ /s/ Markus W. Louvier _____
                          MARKUS W. LOUVIER, #39319
12                        Attorney for Defendant
                          Evans, Craven & Lackie, P.S.
13                        818 W. Riverside Ave., Ste. 250
                          Spokane, WA 99201
14                        (509) 455-5200
                          (509) 455-3632 facsimile
15                        mlouvier@ecl-law.com

16

17

18

19

20   MOTION TO DISMISS FIRST AMENDED COMPLAINT - 23